```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

THE BANK OF TOKYO MITSUBISHI
UFJ, LTD.,

              Plaintiff,

         v.                            17 CV 8691 (SHS)

MARIA VULLO,
                                       Conference
              Defendant.

------------------------------x

                                       New York, N.Y.
                                       November 9, 2017
                                       5:30 p.m.

Before:

         HON. SIDNEY H. STEIN

                                       District Judge




         APPEARANCES


SULLIVAN & CROMWELL LLP
     Attorneys for Plaintiff
BY:  RICHARD C. PEPPERMAN, II
     BETH NEWTON


MICHAEL COYNE
     General Counsel
     The Bank of Tokyo Mitsubishi UJF, Ltd.


NATHANIEL DORFMAN
MEGAN PRENDERGAST
     Attorneys for Defendant
```

1           (Case called)

2           THE COURT:  Good afternoon.  I met Mr. Pepperman and
3   Ms. Newton earlier today when they came to my chambers with the
4   following papers, having filed the complaint: a declaration of
5   Mr. Coyne, declaration of Mr. Pepperman, memorandum in support
6   of a motion for a temporary restraining order and preliminary
7   injunction.  The complaint is in here somewhere, yes, attached
8   to the declaration of Mr. Pepperman as Exhibit A, along with
9   the order to show cause for a preliminary injunction and
10  temporary restraining order.

11          I explained that I had essentially a full day of
12  conferences today and I was not going to do anything without
13  the other side present because I don't grant ex parte TROs
14  except in extraordinary circumstances as set forth in my
15  individual rules.  I asked Mr. Pepperman to speak with his
16  adversary and for you to come in at 5:30.

17          I read these papers.  I read the order.  I have read
18  the various letters.  Mr. Pepperman, what you do you want to
19  tell me?

20          MR. PEPPERMAN:  Your Honor, we have what we believe is
21  good news for the Court.  I don't believe, your Honor, that we
22  require any judicial relief today.  As the Court suggested,
23  when I returned to my office, I called my adversary Mr. Dorfman
24  at the DFS.  Mr. Dorfman informed me that the OCC had not
25  advised the DFS that the conversions and the grants of the

1  federal licenses had become effective.

2        THE COURT: In other words, the Department of
3  Financial Services of New York had not yet received the OCC
4  letters that are attached as Exhibit A and Exhibit B to one of
5  the papers you gave me?

6        MR. PEPPERMAN: Your Honor, the DFS had received the
7  letter that was marked as Exhibit A to Mr. Coyne's declaration.
8  The DFS had not received the letter from the OCC that is marked
9  as Exhibit B.

10        THE COURT: Let me look. Exhibit A is a conditional
11  approval. Exhibit B says this constitutes final approval.

12        MR. PEPPERMAN: The OCC had not sent the DFS the
13  letter that is marked as Exhibit B. Now that the DFS has seen
14  that letter and also seen the letter from the OCC last night
15  that is attached as Exhibit D to Mr. Coyne's declaration, the
16  DFS is now aware that the conversions and the federal licenses
17  have become effective.

18        As a result, Mr. Dorfman represented to me earlier
19  today that the DFS has no intention of attempting to continue
20  to exercise supervisory or visitorial powers over the bank. If
21  that is true, your Honor, then plaintiff withdraws its request
22  for an emergency TRO. That representation would eliminate the
23  concern we had about paragraph 1 of the DFS's order of
24  yesterday.

25        THE COURT: Let me look at paragraph 1. It's

1   Exhibit C?

2            MR. PEPPERMAN:  Yes.

3            THE COURT:  What it says is, "All supervision activity
4   of the department shall continue, not limited to the ongoing
5   examination."  Am I reading the right section?

6            MR. PEPPERMAN:  Yes.  It is the part at the end,
7   "unless and until any such conversion of an OCC license becomes
8   legally effective."  Now that they have been informed by the
9   OCC that the conversions and the licenses have become
10  effective, they have represented that the DFS does not intend
11  to continue to conduct supervisory activity.  That eliminates
12  what was the concern that prompted us to seek emergency
13  expedited relief.

14           THE COURT:  Doesn't that eliminate the basis of the
15  litigation?

16           MR. PEPPERMAN:  It does not, your Honor.  We continue
17  to believe that the DFS's November 8th order, Exhibit 8,
18  continues to present a live case or controversy: specifically,
19  paragraphs 3 and 5.

20           THE COURT:  Let me look at them.  3 says, "The order
21  of the Department of Financial Services states that plaintiffs
22  remain subject to supervisory enforcement activities (conduct
23  occurring during the time period of its license from the
24  department)."  Your position just on 3, I take it what you are
25  telling me is you don't think they have the ability to subject

1    your client to supervisory enforcement activities for conduct
2    that occurred during the period of the DFS license, is that
3    right?
4             MR. PEPPERMAN:  Correct, your Honor.
5             THE COURT:  That's 3.  Now we'll go to 5.  What is
6    your problem with 5?
7             MR. PEPPERMAN:  Paragraph 5 states that in order for
8    the conversion to be carried out, the bank and its branches
9    need to be in full compliance with section 605 of the New York
10   Banking Law.  We strongly disagree with that.  Section 605 of
11   the New York Banking Law deals with state license branches or
12   banks that are in liquidation.  It does not apply to
13   conversions.  So we disagree with that as well.
14            Having spoken to Mr. Dorfman, your Honor --
15            THE COURT:  I was just going to say I would think you
16   would want to talk to your adversary.  Maybe they have no
17   intention of taking the position that it applies to somebody
18   who is not in liquidation.
19            MR. PEPPERMAN:  Your Honor, that is what I wanted to
20   say.  Based on our discussions so far, there is no emergency
21   that requires judicial relief now.  As I told Mr. Dorfman,
22   following today's hearing I intend to continue to discuss this
23   order with them.  Our hope is that we can submit a stipulated
24   order to the Court that also will resolve our request for a
25   preliminary injunction.

1            If we have a disagreement, your Honor, I would propose
2    that the parties jointly submit to the Court a proposed
3    briefing schedule on the preliminary injunction motion.  But,
4    as I said, my hope would be to work out with the Department of
5    Financial Services a stipulated order that would resolve our
6    concerns about the November 8th order.
7            THE COURT:  There may be less here than meets the eye.
8    Things are moving fast, so I understand everyone needs time.
9    Have you talked with the defendants about whether or not they
10   intend to pursue what is in paragraph 3, that is, continued
11   investigation and prosecution of any violation of the banking
12   law or financial services law?
13           I assume the core of it is their investigation looking
14   into clearing activities in connection with Iranian, Sudanese,
15   and Myanmar parties.  But now that the OCC is taking this over,
16   as I understand the OCC order, if I understood it correctly,
17   the licensing is dependent upon the bank's consenting to OCC
18   looking at that issue as well.
19           MR. PEPPERMAN:  Correct, your Honor.  The condition is
20   that the bank enter into a consent order with the OCC that
21   contains the same substantive requirements as the prior DFS
22   consent orders.
23           THE COURT:  What I would say to that is that I am
24   raising that maybe New York has no intention of continuing its
25   investigation of those issues.  Obviously, I don't know.

1    MR. PEPPERMAN:  Your Honor, you are correct that this
2 is moving very quickly.  I spoke with Mr. Dorfman by phone.  He
3 and I arrived at the courthouse this afternoon early and we
4 spoke at length out in the hallway.  I advised him of what I
5 had intended to report to the Court.  I said that I believed
6 that we continued to have a controversy with respect to the
7 order and identified specifically for him paragraphs 3 and 5.
8 We agreed that we would continue to talk about those.
9    THE COURT:  Mr. Dorfman, what I'm suggesting is there
10 is maybe less here than meets the eye.
11    MR. DORFMAN:  We certainly agree with that.  I
12 understand, though, what plaintiff's position is.  He had
13 requested an opportunity to consult with the department about
14 what our current intent is regarding his client, and that if we
15 can't resolve it without judicial intervention, we would agree
16 to a briefing schedule and submit it to the Court for
17 consideration on their preliminary injunction, which is
18 agreeable to us.  The only point I would add is that the
19 department will not exercise supervisory powers over BTMU while
20 the OCC's license is in effect.
21    THE COURT:  Say that again more loudly, please.
22    MR. DORFMAN:  While we have agreed to not exercise any
23 supervisory authority over the bank while the OCC license is in
24 effect, we want to reserve all rights that we have to challenge
25 that conversion and license before the Court or another court.

1             THE COURT:  Separate issue.  If you are talking about
2  challenging the conversion, at least on my reading of these
3  papers, that does not arise under these papers.
4             MR. DORFMAN:  It does not.  We just want to make sure
5  we reserved our right to do so.
6             THE COURT:  All right.
7             MR. DORFMAN:  Thank you.
8             THE COURT:  I think, Mr. Pepperman, there is nothing
9  for the Court to do.  I am going to file the papers you
10  submitted.  They will be docketed and filed.  I will file the
11  order to show cause as a docket and file as unsigned.
12             If the parties are going to continue with the
13  litigation, you can agree upon a schedule for the preliminary
14  injunction and submit it to me.  If the parties don't intend to
15  continue with the litigation, they can file a stipulation of
16  discontinuance.
17             As a matter of fact, there has been no answer, so I
18  think under 401(a) you can do it yourself.  Then the Court
19  needs to sign off on it.  And if the parties intend to continue
20  the litigation but can't agree on a schedule for a preliminary
21  injunction, you can present that to me for resolution.
22             As a fail-safe, I'm going to set a pretrial conference
23  here just so this doesn't fall between the stools, and I'll
24  bring you back.  When do the parties propose?  It makes no
25  difference to me.  Talk to each other.

1              MR. PEPPERMAN:  Your Honor, I was going to suggest in
2     a month.  I think things are moving quickly.
3              THE COURT:  That's all right with me.  Defendant, is
4     that all right?
5              MR. DORFMAN:  Agreed.  Thank you.
6              THE COURT:  Okay.  December 7th, 11:30 a.m., pretrial
7     conference.
8              MR. DORFMAN:  Thank you.
9              MR. PEPPERMAN:  Thank you, your Honor.
10             THE COURT:  Thank you all.
11             (Adjourned)
12
13
14
15
16
17
18
19
20
21
22
23
24
25