UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BANK OF TOKYO-MITSUBISHI UFJ, LTD., <br><br> Plaintiff, <br><br> v. <br><br> MARIA VULLO, in her official capacity as Superintendent Financial Services of the New York State Department of Financial Services, <br><br> Defendant. | Civil Action No. 1:17-cv-08691 |

## DECLARATION OF MICHAEL F. COYNE

I, Michael F. Coyne, hereby declare under penalty of perjury that the following is true and correct:

1. I am the General Counsel and senior legal officer for the Americas of Mitsubishi UFJ Financial Group, Inc. ("MUFG") and an Executive Officer of MUFG and of Plaintiff The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("BTMU"). This declaration is based on my personal knowledge, and I would be competent to testify to the following facts if called upon to do so.

**MUFG's U.S. Operations**

2. MUFG is a bank holding company incorporated under the Companies Act of Japan and the holding company for BTMU and other companies engaged in a wide range of banking and financial services activities. MUFG is also one of the largest foreign banking organizations in the United States. MUFG conducts its extensive U.S. banking operations

principally through its operating subsidiaries BTMU, MUFG Union Bank, N.A. ("MUB"), and Mitsubishi UFJ Trust and Banking Corporation ("MUTB").

3. BTMU is MUFG's primary global commercial banking subsidiary. BTMU provides a broad range of domestic and international banking and other financial services to its global customer base. In the United States, BTMU engages in business through MUB, a federally-licensed national bank subsidiary with its principal operations on the West Coast, and through branch and agency offices located in California, Illinois, New York, and Texas, as well as representative offices located in California, Georgia, Kentucky, Minnesota, New Jersey, Washington State, and Washington, D.C. BTMU conducts extensive U.S. business through its two branch offices in New York (collectively, "BTMU NY").

4. MUTB is a major trust bank in Japan and provides trust and banking services to meet the financing and investment needs of corporate and institutional clients located in Asia, the United States, and Europe. MUTB conducts business in the United States through a single New York branch ("MUTB NY").

**BTMU's and MUTB's Conversion Applications and the DFS's Response**

5. On October 30, 2017, BTMU and MUTB filed with the Office of the Comptroller of the Currency ("OCC") applications to convert all of their state-licensed branches in New York, Illinois, and California to federally-licensed branches, and to convert BTMU's two state-licensed agency offices in Texas to federally-licensed agency offices.

6. BTMU and MUTB sought to convert these licenses in an effort to simplify and enhance the effectiveness and efficiency of the supervisory and regulatory framework applicable to their U.S. operations. BTMU has had a long-standing regulatory relationship with the OCC through MUB, BTMU's national bank subsidiary, which, collectively with its

predecessor entities, has long been licensed and regulated by the OCC.  In addition, beginning in 2014, BTMU integrated management oversight of MUB and BTMU's U.S. operations, including BTMU NY, under the management oversight of BTMU's Executive Committee for the Americas.  Additionally, all employees of BTMU's branches and agencies are now employees of MUB; the operations of BTMU's branches and agencies and of MUB are managed in a coordinated manner; BTMU's governance structure now includes dedicated senior executive officers responsible for managing all of its U.S. operations, including its branches, agencies, and MUB; and pursuant to the Federal Reserve's enhanced prudential standards, BTMU now must meet consolidated risk management standards at the combined U.S. operations level.  This integrated management framework for BTMU's entire U.S. banking footprint will be enhanced and made more efficient and effective by the consolidation of its regulatory oversight under the supervision of the OCC.

7.    On October 31, 2017, the day after filing their conversion applications with the OCC, BTMU and MUTB notified their state regulators of the applications, including the New York State Department of Financial Services ("DFS"), which previously regulated BTMU NY and MUTB NY.  On November 3, 2017, the OCC publicized the conversion applications on its website.

8.    On November 7, 2017, the OCC conditionally approved the conversion applications.  Attached hereto as Exhibit A is a true and correct copy of a letter from Stephen A. Lybarger, Deputy Comptroller for Licensing of the OCC, to me, dated November 7, 2017, memorializing the OCC's conditional approval of the applications (the "OCC Decision Letter"). The OCC Decision Letter provides, in relevant part, as follows:  "Upon the effective date of the conversions [*i.e.*, November 7, 2017], **the Federal licenses for the Federally-licensed**

***BTMU/MUTB Branches and Agencies supersede and replace the state licenses of the BTMU/MUTB Branches and Agencies previously operated at such locations, and the Federally-licensed BTMU/MUTB Branches and Agencies shall not be subject to the visitorial powers of the state authority by which each of their predecessors was licensed prior to the conversions***." (Exhibit ("Ex.") A at 5 (emphasis added).)  The OCC Decision Letter provides further that the conversions "may be effected immediately." (*Id.* at 7.)

9. Also on November 7, 2017, the OCC granted final approval of MUFG's conversion applications, including the applications of BTMU NY and MUTB NY.  Attached hereto as Exhibit B is a true and correct copy of a letter from Mr. Lybarger to Stephen Cummings, CEO for the Americas of MUFG, memorializing the OCC's final approval of the conversions (the "OCC Final Approval Letter").  The OCC Final Approval Letter reiterates that the conversions were "effective November 7, 2017." (Ex. B at 1.)  In addition, on November 7, 2017, after receiving the OCC Decision Letter and the OCC Final Approval Letter, MUFG informed the DFS of the OCC's final approval of the conversions.

10. On November 8, 2017, the DFS issued an administrative order purporting to order BTMU and BTMU NY, "effective immediately," to submit to the continued supervisory authority of the DFS (the "DFS Order").  A true and correct copy of the DFS Order is attached hereto as Exhibit C.

11. The DFS Order provides (i) that "[a]ll supervision activity of the [DFS] shall continue uninterrupted and unimpeded, including, but not limited to, the ongoing examination of the New York Branch currently being conducted by the [DFS], unless and until any such conversion to an OCC license becomes legally effective (should that event occur)"; (ii) that BTMU and BTMU NY "shall comply with all New York laws, regulations, orders and

-4-

agreements, including, but not limited to, all reporting and record keeping requirements"; (iii) that BTMU and BTMU NY "remain subject to all supervisory and enforcement activities, including the investigation and prosecution of any violations of the [New York] Banking Law or the [New York] Financial Services Law, for any conduct occurring during the time period of its license from the [DFS]"; (iv) that BTMU and BTMU NY must "preserve all documents and information in their possession, custody or control that pertain, directly or indirectly," to specified matters, including "the affairs, operations or business of the New York Branch"; and (v) that "[u]nless and until any conversion of the license issued by the [DFS] to the Bank to a Federal branch shall become legally effective, and only in the event that such conversion becomes legally effective, the Bank and the New York Branch shall then carry out such conversion in a manner that is in full compliance with" New York law. (Ex. C at 3–4.)

12. On November 8, 2017, in response to the DFS Order, the OCC reconfirmed that the license conversions became effective as of November 7, 2017, divesting the DFS of authority over BTMU NY and MUTB NY. In a November 8, 2017 letter to Shirin Emami, the Executive Deputy Superintendent of Banking of the DFS (the "November 8 OCC Letter"), Morris R. Morgan, the Senior Deputy Comptroller of Large Bank Supervision of the OCC, stated that the OCC had received a copy of the DFS Order, and advised the DFS that BTMU NY's and MUTB NY's "conversion[s] from state to federal license[s] legally became effective on November 7, 2017." Mr. Morgan further informed the DFS that "[b]ecause the conversion has been completed, the NYDFS is no longer the supervisor for the Branches and may no longer assert visitorial authority with respect to their operations." A true and correct copy of the November 8 OCC Letter is attached hereto as Exhibit D.

**Immediate and Severe Harm That Will Result from DFS Action**

13. BTMU will suffer severe and irreparable harm as a result of the DFS Order absent immediate relief.

14. In light of the OCC's approval of BTMU NY's conversion applications and the issuance of federal branch licenses to BTMU NY, BTMU NY is now licensed by the OCC and subject to its exclusive regulatory authority.  The DFS Order attempts to put BTMU NY in an untenable position by forcing it to violate federal law and the binding instructions that it has received from the OCC.  Under the terms of the OCC Decision Letter, BTMU NY "*shall not be subject to the visitorial powers of the [DFS].*"  (Ex. A at 5 (emphasis added).)  Yet the DFS Order purports to instruct BTMU NY to remain subject to the DFS's jurisdiction, providing, among other things, that "[a]ll supervision activity of the [DFS] shall continue uninterrupted and unimpeded, including, but not limited to, the ongoing examination of [BTMU NY] currently being conducted by the [DFS]," and that BTMU NY "remain[s] subject to all supervisory and enforcement activities" of the DFS.

15. The DFS Order effectively orders BTMU NY to violate the terms of the OCC Decision Letter because BTMU NY cannot comply with the former without violating the latter.  If BTMU NY submits to the continued supervision of the DFS—including by sharing documents or information with the DFS, permitting DFS officers to enter BTMU NY premises for examination purposes, or otherwise permitting the DFS to conduct examination activities—then BTMU NY will be in violation of the OCC's order providing that BTMU NY's state licenses have been superseded and that the DFS no longer has any visitorial powers over it.

16. The DFS's conduct since BTMU NY's license conversions became effective underscores the untenable position in which BTMU finds itself.  On November 8, 2017,

BTMU NY employees allowed three DFS examiners to enter BTMU NY premises, for the purpose of retrieving their personal belongings.  Once on the premises, two of those examiners refused to leave the building for the remainder of the day.  Unless the DFS is enjoined from continuing to engage in such conduct, BTMU NY will suffer severe and irreparable harm.

I declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Dated:  November 8, 2017

Dana Point, California

_____
Michael F. Coyne