```
                   UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK

In re:                                  :
                                            Docket #1:17-cv-08691-
 THE BANK OF TOKYO-MITSUBISHI           : SHS
 UFJ, LTD.,
                                        :
              Plaintiff,
                                        :
   - against -
                                        :
 VULLO,                                   New York, New York
                                        : December 7, 20107
              Defendant.
--------------------------------------- :

                      PROCEEDINGS BEFORE
                THE HONORABLE SIDNEY H. STEIN,
               UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For Plaintiff:          COVINGTON & BURLING, LLP
                        BY:  ROBERT A. LONG, JR., ESQ.
                        850 10th Street, N.W.
                        Washington, D.C.  20001
                        202-662-6000

                        SULLIVAN & CROMWELL, LLP
                        BY:  RICHARD C. PEPPERMAN, II, ESQ.
                             BETH D. NEWTON, ESQ.
                        125 Broad Street
                        New York, New York 10004
                        212-558-3493




Transcription Service:  Carole Ludwig, *Transcription Services*
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service
```

APPEARANCES - CONTINUED:

For the Defendant:         NEW YORK STATE ATTORNEY GENERAL
                           BY:  CHARLES F. SANDERS, ESQ.
                           120 Broadway
                           New York, New York 10271
                           812-361-4263

                           NEW YORK STATE DEPARTMENT OF FINANCIAL
                             SERVICES
                           BY:  NATHANIEL J. DORFMAN, ESQ.
                           One Commerce Plaza
                           Albany, New York 12260-1000
                           518-473-4824

**INDEX**

**E X A M I N A T I O N S**

| **Witness** | **Direct** | **Cross** | **Re-Direct** | **Re-Cross** |
|---|---|---|---|---|
| None | | | | |

**E X H I B I T S**

| **Exhibit Number** | **Description** | **ID** | **In** | **Voir Dire** |
|---|---|---|---|---|
| None | | | | |

```
 1                    PROCEEDINGS                          4
 2          THE CLERK:  Bank of Tokyo v. Maria Vullo, 17 civil
 3  8691.  Counsel, please state your names for the record.
 4          MR. RICHARD PEPPERMAN:  Rick Pepperman from
 5  Sullivan & Cromwell on behalf of the plaintiff, Bank of
 6  Tokyo-Mitsubishi.
 7          MS. BETH D. NEWTON:  Beth Newton, also from
 8  Sullivan & Cromwell on behalf of the plaintiff.
 9          MR. ROBERT LONG:  And Robert Long from Covington &
10  Burling, also on behalf of the plaintiff, your Honor.
11          HONORABLE SIDNEY H. STEIN (THE COURT):  Good
12  morning.
13          MR. CHARLES SANDERS:  Charles F. Sanders, S-a-n-d-
14  e-r-s from the New York State Office of the Attorney
15  General here for the New York State Department of Financial
16  Services.
17          MR. NATHANIEL DORFMAN:  And Nathaniel Dorfman with
18  the Department of Financial Services, as well.  Good
19  morning, your Honor.
20          THE COURT:  Good afternoon.  Please be seated.
21          First thing is it was brought to my attention that
22  the papers underlying the request for a Temporary
23  Restraining Order and Order to Show Cause bringing on the
24  Motion for Preliminary Injunction were not publicly filed.
25  I filed the unsigned document, but the public record really
```

```
 1                         PROCEEDINGS                          5
 2   should reflect what -- the papers supporting that
 3   determination by me.  So, plaintiff, you should do that.
 4           MR. PEPPERMAN:  We've been in contact with your
 5   courtroom deputy, and we will file them this afternoon,
 6   your Honor.
 7           THE COURT:  Excellent.  Now, yesterday or the day
 8   before, there was a stipulation which I signed providing
 9   for defendant to answer or move in response to the amended
10   complaint by January 31, so that's in place.  I've read the
11   amended complaint, and I think we have a way of going
12   forward.
13           Plaintiff, why don't you bring me up to date just
14   so I understand what's happened since we last met.
15           MR. PEPPERMAN:  Yes, your Honor.  Two things, I
16   think, merit bringing the Court up to speed on.  The
17   first --
18           THE COURT:  And I should say we're recording this;
19   it's being taped electronically, so you're aware of that.
20   Go ahead.
21           MR. PEPPERMAN:  Okay.  Thank you, your Honor.
22           The first is that the plaintiff has decided to
23   withdraw its motion for a preliminary injunction.  We had
24   decided to do that for two reasons.  First, in view of the
25   Department of Financial Services' representation that it
```

```
 1                        PROCEEDINGS                              6
 2   will not exercise any supervisory authority over BTMU
 3   while the bank's federal licenses are in effect.  We
 4   believe that the exigent circumstances that warranted
 5   interim relief have been addressed.
 6             And, second, your Honor, we believe that the
 7   issues raised by our amended complaint are pure issues of
 8   law that do not raise disputed factual questions.  So we
 9   believe that those issues can be promptly resolved through
10   motion practice after the defendant responds to our
11   complaint.  And if we're going to promptly resolve these
12   issues finally through motion practice, it didn't seem to
13   make sense to go through the drill of briefing and arguing
14   those issues on an interim basis in the context of a
15   motion for a preliminary injunction.
16             THE COURT:  All right, if the record doesn't
17   already reflect it, then part of the resulting order from
18   today's conference will be that the plaintiff is
19   withdrawing its motion for a preliminary injunction.
20             Next.
21             MR. PEPPERMAN:  And then the second thing I'd
22   like to bring the Court up to speed on, the Court noted
23   the proposed schedule that we submitted yesterday and that
24   the Court entered that provides that the defendant's
25   response date is January 31, 2018.  The reason for what
```

2   might be viewed as a bit longer than usual response period
3   to the amended complaint is two-fold.  The first is,
4   obviously, that Mr. Sanders and his colleagues at the New
5   York Attorney General's Office, plus Mr. Dorfman and his
6   colleagues at the Department of Financial Services, wanted
7   adequate time to study the amended complaint and the
8   issues raised by it, and we do have the intervening
9   holiday period.  So the extra time seemed appropriate.
10              THE COURT:  It didn't bother me.
11              MR. PEPPERMAN:  And second, and, you know,
12  equally relevant in following up on the discussion we had
13  with the Court when we were last here on November 9, we've
14  agreed with the New York Attorney General's Office and the
15  Department of Financial Services that between now and
16  January 31, we'll continue to discuss the case and see if
17  there's a way for the parties to resolve their legal
18  disagreement in a manner that won't require further
19  assistance from the Court.
20              THE COURT:  All right, well, you've just pressed
21  two buttons.  One is the parties are discussing
22  settlement, and the other was a motion is withdrawn.  So
23  you clearly know how to talk to a judge.
24              All right.  Let's hear from the defense.
25              MR. SANDERS:  Good morning and good afternoon,

```
 1                      PROCEEDINGS                            8
 2   your Honor.  As far as what Mr. Pepperman said, yes, we
 3   are in agreement.  They indicated they were withdrawing
 4   the motion for the preliminary injunction.  And also, we
 5   are going to further discuss this matter.  We've already
 6   had a preliminary discussion; we will continue to see
 7   where we are.
 8              Under the circumstances, having just received
 9   the amended complaint and the documents annexed thereto, I
10   cannot opine as to whether or not that, you know, if we
11   answer or if we move -- well, if we move, there wouldn't
12   be a need as far as to -- to go forward as far as with any
13   other matters, but --
14              THE COURT:  I'm sorry, say that again?  I'm not
15   sure --
16              MR. SANDERS:  I said if we choose to move, then
17   we will let the parties know.  But if we answer, I don't
18   know at this point as to whether or not that we can just
19   go forward on just what the record is at this time because
20   we have not had an opportunity to review and assess
21   documents.  We have just received by means of the amended
22   complaint further documents as far as a review.  But,
23   again, we are willing to cooperate; and if motion practice
24   is appropriate, we will engage with that with counsel.
25              THE COURT: All right.  But tell me what the
```

```
 1                        PROCEEDINGS                              9
 2   state of play is as of now.  Does the Department of
 3   Financial Services still take the position -- and this is
 4   without prejudice to how it works out here -- still take
 5   the position that it has the ability to investigate the
 6   Bank of Tokyo for actions taken prior to its conversion to
 7   a federal bank in November?
 8             MR. DORFMAN:  At this point, your Honor, I would
 9   say the answer is yes.
10             THE COURT:  All right.  And I need -- because
11   this is a declaratory judgment action -- so my focus, I
12   think, should be on the imminence of injury, imminence
13   (indiscernible) I guess of injury, are you free to say
14   whether there's any such investigation underway at this
15   point?
16             MR. DORFMAN:  Let's just say there will be no
17   further investigation going forward as far as on the
18   matter because, again, the charter has been as far as
19   filed with the Office of the Comptroller of the Currency.
20   However, there are still pending matters that still need
21   to be addressed as far as under the consent decrees that
22   have been entered into between the Bank of Tokyo and DFS,
23   and all those matter, to my knowledge, have not been
24   finalized as of yet.  And, therefore, that's part of the
25   discussion that we will have as far as with counsel to see
```

2  if that can be remedied during the interim, which would

3  bypass as far as further litigation before this Court, and

4  alternatively, resolved as far as administratively,

5  therefore no need for your further as far as involvement.

6              If we can't then, let's just say, your Honor,

7  that we would respond accordingly as far as --

8              THE COURT:  All right, but let me see if I

9  understand what you're saying.  To your knowledge, there's

10 no ongoing -- no further investigation will be taking

11 place in regard to let me call it preconversion

12 activities.  The conversion was either November 7 or

13 November 8, if I'm not mistaken.  Am I right about that

14 representation?

15             Mr. Dorfman, you can speak directly, if you

16 prefer.  It's really -- it's whatever you gentlemen wish.

17             MR. DORFMAN:  So I think the issue is with the

18 word "investigation."  We are taking no active effort to

19 exercise supervisory or visitorial powers against the

20 bank.  We do have, though, a file that was developed prior

21 to the conversion that we are evaluating.  So I guess, you

22 know, the question of whether enforcement action is going

23 to be taken is still an open question.  We can represent

24 that we will not do anything extra-judicially.  So, you

25 know, if enforcement action is taken, it will be through,

```
 1                      PROCEEDINGS                          11
 2   you know, this court or another court and not through an
 3   administrative or visitorial or supervisory process.
 4              THE COURT:  Now, Mr. Sanders was talking about
 5   consent decrees which were entered into prior to the
 6   conversion date.  What's the position of the DFS in regard
 7   to those?  If you don't know, don't make a representation.
 8   I don't want anything that you feel uncomfortable with.
 9              MR. DORFMAN:  So up until the day of the OCC
10   conversion taking place, DFS was acting under those
11   consent orders with the bank.  And, again, there is a file
12   of preconversion conduct that was discovered, evaluated,
13   between the timing of that last consent order and the date
14   of conversion that we are still evaluating.  I mean, we're
15   not taking steps to investigate or discover more conduct
16   from that period, but we do have a, you know, a rather
17   thick file that we're evaluating what to do with.
18              THE COURT:  All right, well, it seems to me that
19   both of those, that that's certainly an area for the
20   discussions with the bank between now and January 31.
21              MR. DORFMAN:  Correct.
22              THE COURT:  All right.  Mr. Pepperman, your
23   amended complaint raises an issue, I believe, in regard to
24   New York Banking Law Section 605.  What are you seeing
25   there?
```

```
 1                       PROCEEDINGS                        12
```

 2          MR. PEPPERMAN:  Well, your Honor, that is a
 3 component of the issue that we believe that the defendant
 4 has raised as to the validity of the federal licenses
 5 issued by the OCC.  The defendant has presented two
 6 different categories of challenges to those licenses.  The
 7 first is under state law, particularly Section 605 of the
 8 New York Banking Law, and that was raised in Paragraph 3
 9 of the order that the DFS entered on November 8.  And I
10 believe that's Exhibit D to our amended complaint.  So
11 Section 605 is a component of what has been to date the
12 DFS's challenge to the validity of the federal licenses.
13          I mean, the second bucket of challenges are
14 those under federal law which were raised in the
15 defendant's November 13 letter to the OCC.
16          Your Honor, if I may go back to just one thing,
17 just as I think I'd be remiss if I didn't raise this.  I
18 mean, we came into court this morning comfortable with our
19 position that interim relief from this court was going to
20 be unnecessary at least between now and January 31.  I'm a
21 bit concerned by Mr. Dorfman's statement that the
22 Department reserves the right to commence an enforcement
23 action, I think as he put it, in this court or another
24 court.  I mean, I think if they really do, if the
25 Department intends to bring such an enforcement action,

```
 1                         PROCEEDINGS                          13
 2   particularly before a different judge and in a different
 3   court between now and January 31, that might --
 4             THE COURT:  Well, I understand.  I didn't hear
 5   that at all.  Besides, it was a lawyer reserving his
 6   right; that's all he was doing.
 7             MR. DORFMAN:  Well, your Honor, the only thing
 8   that I'd ask -- and I'm happy after this conference to
 9   discuss this with Mr. Sanders and Mr. Dorfman -- is if the
10   Department intends to do that, I mean, we would like some
11   modest degree of notice of that.
12             THE COURT:  I think as a courtesy, I see no
13   reason why they wouldn't do that.
14             Defense?
15             MR. DORFMAN:  I have no issue, no problem as far
16   as having that continued discussion.
17             THE COURT:  All right.  Thank you.
18             Again, I think all that Mr. Dorfman was doing
19   was what he said he was doing; he's reserving his right.
20             Now, in terms of the issue of the validity of
21   the federal license, what's the imminence of the risk?
22   Remember, your three causes of action are declaratory
23   judgments, so it puts it in a little different position
24   than normal -- I mean, than the normal case.  I don't
25   think *MedImmune* helps you on that.  I went back to
```

```
 1                        PROCEEDINGS                       14
```

 2   *MedImmune* because you cite it for that purpose.  The cases
 3   that *MedImmune* cites are, you know, somebody shouldn't
 4   have to risk being arrested by handing out pamphlets or
 5   leaflets, something like that.  It was sort of somebody
 6   who has a Hobson's choice:  violate the law or don't do
 7   the action.  That's not what we're talking about here.
 8   What's the imminence?  And, again -- I'm just thinking
 9   this through; I don't want to change any of your
10   discussions -- but what's the imminence of the validity of
11   your federal license being in jeopardy?
12            MR. PEPPERMAN:  Well, the situation in which we
13   find ourselves is that the Department of Financial
14   Services has publicly challenged the validity of our
15   federal licenses.
16            THE COURT:  Well, they wrote a letter, right?
17   That's what you're talking about.  They wrote a letter;
18   they said we don't know about this.
19            MR. PEPPERMAN:  Well, they did it in three
20   contexts; in the order that they entered on November 8,
21   the DFS order, Exhibit D; the reservation of rights they
22   made before this court on November 9; the letter that they
23   sent to the OCC on November 13, which immediately received
24   widespread press attention in the Wall Street Journal, the
25   New York Times, and other things.

```
 1                        PROCEEDINGS                         15
 2              The bank finds itself in a position where it's
 3   operating under the shadow of a looming challenge from its
 4   former state regulator to the validity of the licenses
 5   that permit it to operate daily in the state of New York.
 6   In the meantime, having converted its licenses, the bank
 7   wants to go forward with planning processes to sort of put
 8   in place that it needs to operate in accordance with the
 9   supervisory requirements and expectations of the OCC.  If
10   those licenses are going to be challenged and --
11              THE COURT:  Well how are those licenses going to
12   be challenged?  There's an order that presumably was given
13   to the press by the or at least I would think, I would
14   hope, was publicly filed by the DFS.  Somebody apparently
15   picked it up.  But where do you see that your OCC license
16   is at risk?
17              MR. PEPPERMAN:  Well, your Honor, what we see is
18   the reservation of rights when it was made today, the
19   Department of Financial Services is reserving the right at
20   any day to challenge the validity of those licenses and
21   claim that if the licenses were improperly issued during
22   the pendency of the time when the bank was operating under
23   federal licenses instead should have been complying with
24   New York State requirements.  And we're forced in a
25   position where we're either going to come into work every
```

```
 1                          PROCEEDINGS                          16
 2   day and say, "Is this the day that the DFS sues to
 3   invalidate the license?" or having already commenced a
 4   legal action, we can get a decision from this court on the
 5   validity of the licenses that makes clear our ability to
 6   operate going forward.  I mean, we would like nothing more
 7   than to resolve these issues and know that we can go
 8   forward under our federal licenses without the threat of
 9   challenge from the Department of Financial Services.
10             THE COURT:  All right.  I understand.  Thank
11   you.  And, again, I'm just trying to understand the
12   issues.  I don't mean to put my thumb on the scales of
13   discussions.
14             Let me end by where I began in the conference in
15   early November, and that is I think there's less here than
16   meets the eye.  Why don't the parties talk to each other,
17   see where we are; and then at the end of January, we'll
18   have a response from the DFS, either a motion or an answer
19   to the amended complaint.  If the parties have not
20   resolved it, we'll go forward on that basis.  I tend to
21   think these are legal issues, but if the DFS wants to
22   think about that in terms of its response, that's fine.
23   And I may be wrong.
24             Why don't we set a conference in mid-February?
25   We'll see where we are.  If there's a motion, I may cancel
```

```
 1                          PROCEEDINGS                    17
 2   that conference; or for that matter, obviously, if this
 3   settles before then, there won't be a conference.  But
 4   let's meet in mid-February, see where we are in the case.
 5            February 20, 2018, 9:30 AM.  If you need me
 6   before then, just write, and I'll bring you in.
 7            All right.  Talk to each other.  I really do
 8   think this should be amenable to resolution between the
 9   parties.  Anything else I can do for plaintiff?
10            MR. PEPPERMAN:  No, your Honor.  Thank you.
11            THE COURT:  Anything else I can do for defense?
12            MR. SANDERS:  No, your Honor.
13            THE COURT:  All right.  Thank you all for coming
14   in.
15            (Whereupon, the matter is adjourned.)
16
17
18
19
20
21
22
23
24
25
```

```
 1                                                              18
 2
 3                      C E R T I F I C A T E
 4
 5           I, Carole Ludwig, certify that the foregoing
 6   transcript of proceedings in the case of The Bank of Tokyo-
 7   Mitsubishi UFJ, LTD v. Vullo, Docket #17-cv-08691-SHS, was
 8   prepared using digital transcription software and is a true
 9   and accurate record of the proceedings.
10
11
12
13   Signature_____Carole Ludwig_____
14                  Carole Ludwig
15   Date:    December 11, 2017
16
```