

Office of the
Comptroller of the Currency

Washington, DC 20219

**COMPTROLLER'S LICENSING MANUAL**

# Federal Branches and Agencies



November 2014

Updated October 2017

LM- FBA

# Contents

**Introduction** ................................................................................................. 1
    Background ..................................................................................... 2
    Activities Requiring Approval or Notice – Rules of General Applicability ................ 3
    Expedited Review ............................................................................ 5

**Initial and Additional Establishments** ........................................................ 6
    Key Policies ................................................................................... 6
    Summary of Process ......................................................................... 8
    Specific Requirements ...................................................................... 9
    Procedures: Initial Establishments ...................................................... 10
    Procedures: Additional Intrastate Establishments .................................... 18
    Procedures: Additional Interstate Establishments .................................... 26

**Acquisitions** ............................................................................................. 35
    Key Policies ................................................................................. 35
    Summary of Process ....................................................................... 36
    Specific Requirements .................................................................... 37
    Procedures .................................................................................. 38

**Conversion or Contraction of Operations** ................................................. 45
    Key Policies ................................................................................. 45
    Summary of Process ....................................................................... 48
    Specific Requirements .................................................................... 49
    Procedures: Conversions (State-to-Federal License) ................................. 50
    Procedures: Conversions (Federal Agency or Limited Federal Branch to Federal Branch) ...................................................................................... 55
    Preconversion Examination .............................................................. 58
    Procedures: Contraction of Operations ................................................ 60

**Relocations** .............................................................................................. 61
    Key Policies ................................................................................. 61
    Summary of Process ....................................................................... 62
    Specific Requirements .................................................................... 63
    Procedures .................................................................................. 63

**Fiduciary Powers** ..................................................................................... 68
    Key Policies ................................................................................. 68
    Summary of Process ....................................................................... 69
    Surrender or Revocation of Fiduciary Powers ........................................ 70
    Procedures: New Powers .................................................................. 70
    Procedures: Surrender ..................................................................... 73

**Voluntary Liquidation**................................................................**74**
    Key Policies .......................................................... 74
    Summary of Process ............................................. 74
    Specific Requirements ......................................... 75
    Procedures ............................................................ 78

**Capital Equivalency Deposit**......................................**82**
    Key Policies .......................................................... 82
    Summary of Process ............................................. 82
    Closing of Account .............................................. 84
    Procedures ............................................................ 84

**Other Changes in Activities or Operations** ...............**86**
    Summary of Process ............................................. 86
    Specific Requirements ......................................... 86
    Procedures: Change in Corporate Title, Mailing Address, or
    Home State Designation ...................................... 88
    Procedures: Change in Control ........................... 89
    Procedures: Operating Subsidiary and Noncontrolling Investments ......................... 90
    Procedures: Conversion to a State-Licensed Operation............................................ 94

**Glossary** ..................................................................................**96**

**References** ..............................................................................**99**

**Table of Updates Since Publication** ..............................**102**

# Introduction

This booklet of the *Comptroller's Licensing Manual* consolidates the Office of the Comptroller of the Currency's (OCC) policies and procedures regarding the establishment, operations, and other corporate activities of federally licensed offices of foreign banks, which include federal branches, limited federal branches, and federal agencies. This booklet does not cover subsidiaries for foreign banks, which is covered in the "Related Organizations" booklet of the *Comptroller's Handbook*. Throughout this booklet, references to federal branches and agencies also include limited federal branches, unless otherwise noted. In addition, this booklet

- provides a general background on legislative developments that affect the corporate activities of foreign banks in the United States.
- outlines which corporate activities of foreign banks require approval from or notice to the OCC and provides specific filing guidance.
- specifies which filings may receive expedited review, lists the criteria for a foreign bank to be considered an eligible filer, and describes the streamlined application process.

Foreign banks seeking or considering federal branch activities not specifically addressed in this booklet are encouraged to consult the OCC's Northeastern District Licensing Division (LIC/NE). The OCC advises foreign banks whether they should first send written proposals to the OCC for consideration regarding the proposed activities.

This booklet is arranged according to the following sections:

- "Introduction"
- "Initial and Additional Establishments"
- "Acquisitions"
- "Conversion or Contraction of Operations"
- "Relocations"
- "Fiduciary Powers"
- "Voluntary Liquidation"
- "Capital Equivalency Deposit"
- "Other Changes in Activities or Operations"

Each section of this booklet contains key policies, a summary of the process, specific requirements, and procedures. The "Glossary" and "References" sections appear at the end of this booklet. Refer to other booklets of the *Comptroller's Licensing Manual*, as applicable:

- "General Policies and Procedures" for a discussion of general filing instructions and procedures.
- "Public Notice and Comments" for guidance on publishing a notice of an application, and, if applicable, procedures for responding to comments and hearings.
- "Background Investigations" for guidance on biographical and financial reports.

# Background

## General

12 CFR 5 and 12 CFR 28 contain the procedural and substantive regulations for foreign banks seeking to conduct banking activities in the United States through federal branches and agencies. Except as otherwise provided by the International Banking Act (IBA) of 1978, as amended, other federal laws or regulations, or OCC policy, a federal branch or agency generally is authorized to operate under the same rights and privileges and is subject to the same duties, restrictions, penalties, liabilities, conditions, and limitations that apply to a national bank in the same location. The OCC's corporate activities, policies, procedures, and regulations relevant to national banks generally are applicable to federal branches and agencies, unless the OCC has provided otherwise.

## Statutory Framework

The IBA provides a federal licensing option that allows foreign banks to establish federal branches or federal agencies supervised by the OCC. The IBA requires foreign banks seeking to establish or expand their federally licensed U.S. operations to apply for and obtain OCC approval.[1] Under the IBA, federal branches and agencies generally have the same rights and responsibilities as national banks operating at the same location and are subject to the same laws, regulations, policies, and procedures that apply to national banks. A federal branch, for example, may conduct a full range of banking activities, including trading and investment activities, accepting wholesale and foreign deposits, granting credit, and acting as a fiduciary. There are important differences, however, between a federal branch or agency and a full-service bank. (Updated October, 2017)

### Comprehensive Consolidated Supervision

The IBA requires the OCC to consider whether a foreign bank seeking to establish an interstate federal branch or agency in the United States is working toward comprehensive consolidated supervision (CCS) in the foreign bank's home country. For other types of requests, the OCC may consider CCS as one of the factors the agency evaluates as part of the OCC's review.

The Board of Governors of the Federal Reserve System (FRB) conducts a CCS review when a foreign bank first seeks to establish a presence in the United States or when a CCS determination has not been made for a foreign bank seeking to establish an additional office in the United States.

In deciding whether a foreign bank is subject to CCS, the FRB determines whether the foreign bank's home country supervisor receives sufficient information on the worldwide

---

[1] In certain instances, per OCC regulations, foreign banks may provide a notice instead of an application. These instances are detailed in this booklet in the appropriate sections. This booklet likewise notes in other sections that foreign banks may need to submit regulatory filings to other banking agencies.

operations of the foreign bank. The information must allow the home country supervisor to assess the foreign bank's overall financial condition and compliance with laws and regulations. If the FRB does not conclude that a foreign bank is subject to CCS, the FRB and the OCC may approve an application by the foreign bank if the home country supervisor is actively working to establish arrangements for CCS and all other factors in the application are consistent with approval.

### Restrictions on Deposits and Deposit Insurance

The IBA prohibits a foreign bank from establishing any branch in the United States that accepts domestic retail deposits of less than the Federal Deposit Insurance Corporation's (FDIC) "standard maximum deposit insurance amount" (SMDIA), unless the branch is an insured branch as defined in section 3(S) of the Federal Deposit Insurance Act, or unless the Comptroller of the Currency determines by order or regulation that the branch is not engaged in domestic retail deposit activities requiring deposit insurance protection, taking account of the size and nature of depositors and deposit accounts.[2] The amount of the SMDIA is equivalent to the maximum amount of deposit insurance for accounts in banks insured by the FDIC.[3] Uninsured branches of foreign banks are permitted, however, to accept deposits of less than the SMDIA from limited sources, such as from individuals who are not citizens or residents of the United States at the time of the initial deposit.

### Other Factors

When approving an application to establish a federal branch or agency, the OCC must include in its approval any conditions imposed by the FRB.

FDIC filings or approval may be required for grandfathered, insured federal branches.

## Activities Requiring Approval or Notice – Rules of General Applicability

## Approval

A foreign bank must file an application with LIC/NE for prior approval if it plans to

- establish an initial or additional[4] federal branch or agency;

---

[2] Branches with federal deposit insurance that were in operation or had applied for deposit insurance before December 19, 1991, are grandfathered and are permitted to retain deposit insurance, subject to certain restrictions.

[3] See 12 USC 1821(a)(1)(E).

[4] A prior notice is available for the establishment of an additional intrastate federal branch or agency if certain requirements are met. (See also 12 CFR 28.12(e) and the "Additional Intrastate Establishments" section of this booklet.)

- establish[5] a federal branch or agency through merger, acquisition, consolidation, or similar transaction with another foreign bank;
- convert a state branch or agency operated by a foreign bank, or a commercial lending company controlled by a foreign bank, into a federal branch or agency;
- convert from a federal agency or limited federal branch into a federal branch;
- relocate a federal branch or agency;
- exercise fiduciary powers at a federal branch; or
- acquire or establish an operating subsidiary of a federal branch or agency, or conduct a new activity in an existing operating subsidiary of a federal branch or agency.

## Notice

A foreign bank operating a federal branch or agency must notify the OCC if it changes its

- designation from a federal branch to a limited federal branch or federal agency.
- corporate title.
- control.
- mailing address.
- home state designation.

A notice also is required if a foreign bank operating a federal branch or agency

- converts to a state-licensed branch, agency, commercial lending company, or representative office.
- voluntarily liquidates.
- closes some, but not all, of its federal branch or agency offices.
- makes a noncontrolling equity investment.

## Filing With the FRB

Nothing in this booklet relieves a foreign bank of any requirement to obtain the approval of the FRB as may be necessary under the FRB's Regulation K, 12 CFR 211.

The OCC is aware of the potential for causing a foreign bank applicant unnecessary burden because of the dual regulatory authority contained in the IBA. To avoid duplication in transactions for which both regulatory agencies require a filing, the OCC accepts a filing made by the applicant at the FRB in lieu of the one required by this booklet. The OCC reserves the right to require additional information if it is needed to reach an informed decision.

---

[5] An after-the-fact notice or approval is available for acquisition of, or merger or consolidation with, a foreign bank that has an office in the United States, provided certain procedures are followed. Such procedures, if followed, allow a foreign bank to proceed with the transaction before an application to establish the federal branch or agency has been filed or acted on, or to provide an after-the-fact notice within 14 days of the transaction. (See 12 CFR 28.12(g) and (h) and the "Acquisitions" section of this booklet.)

With the exception of applications eligible for expedited review, the rules of general applicability contained in the "General Policies and Procedures" booklet of the *Comptroller's Licensing Manual* apply generally to corporate filings involving federal branches and agencies.

# Expedited Review

An eligible foreign bank qualifies for expedited review of the following corporate activities (see the "Glossary" section of this booklet for the definition of an eligible foreign bank):

- Relocation or establishment of an additional intrastate federal branch or agency.
- Establishment of a de novo interstate federal branch or agency.
- Conversions, as defined in 12 CFR 28.11(f)(4) or 12 CFR 28.11(f)(6).
- Establishment of a federal branch or agency through a merger, acquisition, consolidation, or similar transaction with another foreign bank that has an office in the United States, if, among other things, the resulting bank is an eligible foreign bank.
- Fiduciary powers.

Upon receipt of a filing, the OCC determines the applicant's eligibility for expedited review and promptly informs the applicant whether it is eligible. The OCC may remove a filing from expedited review if the proposed transaction raises a significant supervisory, compliance, legal, or policy issue. (See 12 CFR 5.13 and the "Public Notice and Comments" booklet of the *Comptroller's Licensing Manual* for additional information on reasons an application may not be eligible for expedited review.)

Eligible foreign banks are generally permitted to use a streamlined application to establish a federal branch or federal agency. A streamlined application allows an applicant to omit several questions. The OCC may request additional information and a complete application if the proposed transaction raises a significant supervisory, compliance, legal, or policy issue.

# Initial and Additional Establishments

The policies and procedures in this section apply to requests from foreign banks seeking to establish initial or additional federal branches or agencies.

This section should be used in conjunction with the *Comptroller's Licensing Manual* booklets referenced in the "Introduction" section of this booklet. Also refer to the "Fiduciary Powers" booklet of the *Comptroller's Licensing Manual* whenever an initial or additional federal branch plans to engage in fiduciary activities.

## Key Policies

To establish and operate an initial or additional federal branch or agency, a foreign bank must submit an application or notice, as appropriate, and obtain approval from the OCC. The foreign bank applicant must publish notice of the application in a newspaper of general circulation in the community in which the foreign bank proposes to establish the federal branch or agency. The public comment period is 30 days, and interested parties may submit written comments during this period.

### Initial Branches and Agencies

To operate an initial federal branch or agency, a foreign bank must receive a license from the OCC. This license is similar to a national bank charter. The OCC licenses the initial federal branch or agency through a conditional approval. Additional federal branches or agencies can be established under the license, just as additional branches of national banks are established under a national bank's charter.

A foreign bank maintaining multiple federal branch or agency licenses has the option of consolidating some or all of its offices under a single license. The foreign bank may also choose to maintain multiple licenses. In either situation, the OCC evaluates the consolidated risk profile of the foreign bank's federally licensed operations.

A foreign bank seeking to establish an initial federal branch or agency submits an application. Requests for fiduciary powers are considered separately, but a foreign bank seeking to exercise fiduciary powers may submit the request and applicable information with its application. A foreign bank receiving preliminary conditional approval, in writing, from the OCC to exercise fiduciary powers may not do so until the OCC also issues the branch trust certificate. The "Fiduciary Powers" section of this booklet contains specific information on this process.

# Additional Branches and Agencies

## Intrastate Branches and Agencies

An eligible foreign bank with a federal license may establish additional intrastate branches or agencies by filing a written notice with the OCC at least 30 days in advance of the establishment. Public notice requirements apply. An ineligible foreign bank seeking to establish an additional intrastate branch or agency should follow the procedures for an initial establishment.

The notice includes a streamlined application requesting identifying information, financial information, and information about the activities to be conducted at the office. Each branch exercising fiduciary powers must receive separate approval from the OCC. If applicable, the notice should contain a request for fiduciary powers and the required information. The "Fiduciary Powers" section of this booklet contains specific information on this process.

During the notice period, the OCC reviews the information submitted and requests additional information, if needed. If approved, the conditional approval letter is issued on the 30th day after the OCC receives the filing or, if the public comment period has not expired, at the end of that period. The OCC may, however, require the foreign bank to file an application if the notification raises significant supervisory, compliance, legal, or policy issues. For example, a foreign bank applicant submitting a notice detailing activities not currently conducted by the licensed branch may be asked to file an application. Applicants are advised to contact LIC/NE before submitting a notice if the activities or character of the additional branch differ in any way from the licensed branch. In rare cases, the OCC may waive the 30-day period if immediate action is required.

## Interstate Branches and Agencies

An eligible foreign bank seeking to establish an interstate federal branch or agency that does not raise any significant supervisory, compliance, legal, or other concerns may submit a streamlined application. The OCC deems the application conditionally approved as of the 45th day after the OCC receives the filing or 15 days after the close of the public comment period, whichever is later, unless the OCC notifies the foreign bank before that date that the filing is not eligible for expedited review. In the event that the FRB approves the application before the end of the OCC review period, the OCC approval is deemed final. Generally, federal laws provide the authority for proposals for interstate branching by foreign banks to the same extent that the laws apply to interstate branching by national banks; however, foreign banks have additional authority under 12 USC 3103(a)(7) that is not tied to national bank branching rules.

As part of the review process, the OCC considers whether a foreign bank seeking to establish an additional federal branch or agency outside of its home state is subject to CCS.

After the OCC approves a de novo interstate branch or agency, the foreign bank is considered located in that state and may use the intrastate notification procedures for any additional branches or agencies in that state.

# Summary of Process

The OCC's licensing process for a foreign bank that seeks to open an initial or additional federal branch or agency generally consists of three phases: (1) prefiling discussions; (2) filing, processing, and deciding the application or notice; and (3), if approved, the opening of the federal branch or agency.

## Prefiling Discussions

LIC/NE conducts a prefiling meeting with a foreign bank interested in establishing an initial or additional federal branch or agency to discuss the OCC's licensing policies and filing requirements. If asked, the OCC may forgo the prefiling meeting for a foreign bank with existing federal branches, agencies, or national bank subsidiaries and previous banking experience in the United States

## Application Filing, Processing, and Decision

### Filing

After the prefiling meeting, the foreign bank files the application or notice and publishes notice of the proposal.

### Processing

In evaluating an application to establish an initial or additional federal branch or agency, the OCC draws heavily on the agency's supervisory experience with the applicant foreign bank and the experiences of other state, federal, and foreign bank supervisors.

### Decision

In an initial or additional establishment, the OCC generally considers

- financial and managerial resources and future prospects of the applicant foreign bank and the proposed federal branch or agency.
- effect of the proposed branch or agency on competition in U.S. domestic and foreign commerce.
- convenience and needs of the community to be served.
- whether the foreign bank is subject to CCS by its home country supervisor, or whether the FRB has determined that the home country supervisor is working actively toward CCS.
- approval or consent from the foreign bank's home country supervisor.

The OCC also considers whether adequate controls for the detection of money laundering are in place at the foreign bank.

# Opening a Federal Branch or Agency

Following preliminary conditional approval, the foreign bank is permitted to organize the federal branch or agency and establish its CED account. (See the "Capital Equivalency Deposit" section of this booklet.) The OCC conducts a preopening examination at least two weeks before the federal branch or agency is scheduled to open for business to verify that the federal branch or agency has met all requirements for commencing the business of banking in the United States. If the federal branch or agency has met the requirements for opening, the OCC issues the final approval letter and provides a license certificate. If the examination discloses numerous exceptions or significant deviations from the originally approved proposal, however, the opening may be delayed or the preliminary conditional approval may be revoked.

### Revocation of Preliminary Conditional Approval

The OCC generally does not look favorably on proposals that materially alter the plans set forth in an application that has received preliminary conditional approval. The OCC may revoke preliminary conditional approval if, after receiving approval and before opening an initial or additional federal branch or agency, a foreign bank makes changes that significantly alter the plans detailed in the application or notice. Proposed changes that normally require filing another application are considered significant. The OCC revokes preliminary conditional approval if it discovers material violations of law, misrepresentations, or any fraudulent activity by the applicant foreign bank's officers or directors.

# Specific Requirements

## Identification of Management Team

The OCC considers the selection of a qualified general manager to be one of the foreign bank applicant's most important decisions affecting the success of an initial federal branch or agency. The general manager must have experience, competence, and the willingness and ability to be active in directing the activities of the federal branch or agency in a safe, sound, and legal manner.

The names, experience, and qualifications of the proposed general manager and other officers of the proposed federal branch or agency are necessary for the OCC's evaluation of the application. The OCC performs background investigations as deemed appropriate to determine if the proposed officers possess satisfactory banking experience and integrity for the positions proposed.

In most cases, an applicant does not need to submit extensive management information with applications for additional branches or agencies. The OCC looks to the leadership of existing licensed branches or agencies for sound management of the affairs of any additional branches

or agencies. An exception to this policy is an application or notice accompanied by a request for fiduciary powers from an applicant whose licensed federal branches or agencies currently engage in little or no exercise of fiduciary activities. In this case, additional management information may be appropriate.

# Field Investigations

The OCC normally does not conduct a field investigation for an additional federal branch or agency application, but the OCC may conduct a field investigation for an initial federal branch or agency application from a foreign bank not known to the OCC or operating in the United States under a state license. The OCC decides on a case-by-case basis whether to conduct a field investigation.

As part of the field investigation, the OCC may review relevant materials, interview bank management, explore matters related to the foreign bank's operations in the United States and abroad, and meet with management to discuss findings. The findings from a field investigation, if conducted, are important in the OCC's overall analysis and review of the application.

# National Historic Preservation Act and National Environmental Policy Act

An applicant foreign bank must consider the implications of National Historic Preservation Act (NHPA) and National Environmental Policy Act (NEPA) in the establishment of a federal branch or agency and certify whether the proposal would affect a historic district, site, building, structure, or object, or the quality of the human environment. (For a discussion of the NHPA and NEPA requirements, see the "General Policies and Procedures" booklet of the *Comptroller's Licensing Manual*.)

# Capital Equivalency Deposit

A federal branch or agency is required to set up a CED account before opening for business. (See the "Capital Equivalency Deposit" section of this booklet.)

# Procedures: Initial Establishments

### Prefiling

**Applicant**

1. Requests information about establishing an initial federal branch or agency from LIC/NE.

**LIC/NE**

2. Enters inquiry into the Corporate Applications Tracking System (CATS).

3.  If necessary, holds exploratory meeting or conference call with applicant.

4.  Provides information about the establishment process and refers foreign banks that request instructions to the appropriate sections of this booklet and to other relevant booklets of the *Comptroller's Licensing Manual*.

**Applicant**

5.  Reviews information and, if necessary, requests a prefiling meeting.

**LIC/NE**

6.  Schedules a prefiling meeting with representatives of the foreign bank. Invites Director of International Banking Supervision–Field Operations (hereafter referred to as Supervisory Office or SO) and District Counsel. Notifies Director of International Banking Supervision–Headquarters (IBS HQ) and Headquarters Licensing (HQ LIC) specialist.

7.  Consults with the FRB or respective Federal Reserve Bank to determine whether the FRB has any preliminary issues with the proposal.

8.  At the meeting, provides the following general information, as applicable, to the foreign bank:

    •  The OCC's and FRB's roles in licensing federal branches and agencies.
    •  Key policies and specific requirements affecting the licensing process.
    •  How to file the application and what to expect during processing from the OCC.
    •  Common problems associated with initial federal branch and agency applications.
    •  Standard conditions for approval.
    •  How the OCC will supervise the federal branch or agency after it opens.

9.  In coordination with SO, asks the foreign bank for information about

    •  its U.S. and global operations.
    •  how the proposed federal branch or agency would fit into the bank's global strategy.
    •  any potential impediments to accessing information about the foreign bank, as deemed necessary, to supervise the federal branch or agency.
    •  how the bank will ensure compliance with Enhanced Prudential Standards (EPS) and any other requirements of the Dodd–Frank Wall Street Reform and Consumer Protection Act of 2010, as applicable. (Updated 7/15/2015)

**Applicant**

10. Provides information about the foreign bank's condition and qualifications. Gives an overview of the proposal with particular emphasis on any unique aspects.

**LIC/NE**

11. Answers questions posed by those attending the meeting. If an answer requires further research or discussion among IBS HQ, LIC/NE, SO, HQ LIC, or District Counsel, informs the representative that a response will be forthcoming following the meeting.

12. Prepares a memorandum of the meeting and retains it in a pending file. Provides an electronic copy of the memorandum to SO.

13. If the prefiling discussion reveals significant policy, legal, or supervisory issues, coordinates with HQ LIC, SO, and others, as appropriate, to discuss processing.

14. Updates CATS.

## Filing

## Applicant

1. Submits, with return receipt requested, one original and four copies of the application with supporting information to LIC/NE. If applicant plans to exercise fiduciary powers, submits a letter of intent with the application. (See the "Fiduciary Powers" section of this booklet.)

2. Publishes a notice of the application in a newspaper of general circulation in the community in which the proposed federal branch or agency would be located. (See the "Public Notice and Comments" booklet of the *Comptroller's Licensing Manual*.)

## Review

## LIC/NE

3. Initiates the filing and enters information into CATS.

4. Closes out the prefiling inquiry in CATS and relates it to the new application filing.

5. Establishes the official file to maintain all original documents relating to the application.
6. Initiates background checks as appropriate. (See the "Background Investigations" booklet of the *Comptroller's Licensing Manual*.)

7. Reviews the application for relevant information about the foreign bank, including its ownership, subsidiaries, and financial condition, to determine whether the filing contains all information necessary to reach a decision. If the application is incomplete, requests that the information from the representative be provided by a specific date.

8. Acknowledges receipt of the application within five business days of receipt.

9.  Forwards copies of the application to District Counsel and other OCC divisions as deemed appropriate, and requests that comments be provided within 15 days. Of specific interest are any significant legal or other issues that would prevent the application from moving forward.

10. Contacts HQ LIC if the proposal would

    - affect significantly the quality of the human environment, or
    - affect any district, site, building, or structure listed in, or eligible for listing in, the National Register of Historic Places. (See the "General Policies and Procedures" booklet of the *Comptroller's Licensing Manual* for NHPA- and NEPA-related processing.)

11. Notifies designated IBS HQ analyst. Requests that IBS HQ analyst send notice of the filing and a request for comments to applicant's home country supervisor. Requests that the home country supervisor

    - provide a brief description of the bank regulatory system in the applicant bank's country of incorporation.
    - discuss the regulatory system's powers and functions.
    - discuss the extent to which the regulatory system supervises or regulates the bank on a comprehensive consolidated basis.
    - discuss whether the home country has or is developing a legal regime to address money laundering or is participating in multilateral efforts to combat money laundering.
    - assess ability to share information and review information-sharing arrangements, if they exist.
    - discuss the frequency and scope of direct or indirect supervisory examinations of banks in its country.
    - discuss the functions of the central bank and its relationship to private or public banks.
    - state that applicant is duly organized and exists under local law and is authorized to transact banking business.
    - grant permission or provide non-objection for applicant to operate a federal branch or agency, provide a statement that such permission is not required, or recommend that the OCC not approve the application based on supervisory concerns.

    If the OCC is familiar with the home country supervisor and its approach to supervision, portions of this step may be omitted.

12. Forwards a copy of the application to SO and requests a reply within 15 days. Of specific interest are SO's comments about potential supervisory issues or the need to conduct a field investigation.

13. If applicable, requests a field investigation and determines its scope. If not applicable, skips to step 26.

14. Requests that SO assign an NBE to conduct a field investigation.

15. Ensures the NBE has received a copy of the application. Notes any areas highlighted by LIC/NE, IBS HQ, SO, or other OCC divisions for particular attention.

16. Provides the examiner-in-charge with a scope memo and instructions.

**NBE**

17. Calls the representative of the foreign bank to schedule the investigation and interviews with persons identified by SO or LIC/NE.

18. Before conducting the investigation, reviews the application and notes which areas were singled out as warranting particular attention.

19. Notifies SO and LIC/NE of the start date and determines the date for submission of the completed letter report. If a trip to the applicant foreign bank's home country is necessary, coordinates with IBS HQ and LIC/NE and factors this into the date for completion of the report.

20. Interviews the identified officers to determine each one's

- proposed role (specifically) in the proposed federal branch or agency and his or her qualifications for that role.
- knowledge of the proposal, including potential customers and services, market area, competition, and financial projections.
- strengths and weaknesses.
- knowledge of any information that might affect adversely the potential success of the proposed federal branch or agency.
- insight into the ownership structure and principal shareholders of the foreign bank applicant.

21. In discussing an officer's qualifications and expected role in the proposed federal branch or agency, may discuss any matters deemed appropriate, such as

- management and business experience, including
  – number of people supervised.
  – direct hiring or firing authority in current or previous positions.
  – type of management reports needed to keep the head office informed.
- credit management experience, including
  – knowledge of the elements of good lending, insider activities, and specific lending areas (for example, commercial, retail, and real estate).
  – level of loan review, support and collection experience.
- liquidity risk management experience, including
  – knowledge of the definition of liquidity and its purpose.
  – knowledge of the head office's strategic funding plan, including the proposed

federal branch or agency's role.
– understanding of legal restrictions on securities purchases.
– understanding of net due to or due from positions.
- marketing experience.
- Bank Secrecy Act, Anti-Money Laundering and Office of Foreign Assets Control (OFAC) reporting requirements.

22. Meets with foreign bank management representatives at the conclusion of the investigation to inform them of the findings. The meeting includes a discussion of deficiencies and appropriate suggestions but does not render a conclusion on the likelihood of an approval of the pending application.

23. Prepares and forwards the written report to LIC/NE, copying SO, within the decided time period. The report should be in memorandum format, summarizing briefly the findings and conclusions and addressing specifically any problems or areas of concern. The report should also include a recommendation on the dollar amount of the CED if determined that it should be higher than the required minimum.

24. Keeps the contents of the field investigation report confidential from anyone outside of the OCC.

25. Retains all investigation work papers and a copy of the written report.

26. If applicable, forwards the field investigation request to SO and requests that it assign a National Bank Examiner (NBE) to conduct the field investigation. Also notifies the representative that it will conduct a field investigation. (See the "Field Investigation" subsection of the "Initial and Additional Establishments" section of this booklet.)

27. Analyzes the application and assesses

- the effect of the proposed federal branch or agency on competition and on U.S. domestic and foreign commerce.
- the financial and managerial resources, proposed management, and future prospects of the applicant foreign bank and the proposed federal branch or agency.
- the convenience and needs of the community to be served.
- the legality of the proposal.
- the reasonableness of the operating plan.
- whether the foreign bank and its U.S. affiliates comply with applicable U.S. laws, including Dodd–Frank, and foreign laws. (Updated 7/15/2015)
- whether the foreign bank has furnished to the OCC
  – information required to assess the application adequately.
  – adequate assurances that the OCC will have access to necessary information on the operations or activities of the foreign bank or any of its affiliates to determine and enforce compliance with the IBA and other applicable federal banking statutes.

- whether the foreign bank is subject to CCS by its home country supervisor, or whether the FRB has determined that the home country supervisor is working actively toward CCS.
- the recommendation or consent of the home country supervisor.

The OCC also considers whether adequate controls for the detection of money laundering are in place at the foreign bank.

28. If applicable, receives and reviews the field investigation report.

## Public Comments and Hearings

**LIC/NE**

29. If a member of the public requests a copy of the application, files a public comment, or requests a hearing, refers to the "Public Notice and Comments" booklet of the *Comptroller's Licensing Manual* and determines whether the comments are material. Proceeds as appropriate.

## Decision

**LIC/NE**

30. Contacts the FRB to discuss any issues about the application and any conditions contemplated by the FRB.

31. Prepares confidential memorandum and decision letter recommending a decision to the delegated official. Ensures that relevant management in IBS concurs with the proposed decision.

32. After the FRB has issued its decision on the application and all conditions contained in the FRB's Board Order have been included in the OCC's decision letter, sends the official file to HQ LIC for decision.

33. Goes to step 38.

**HQ LIC**

34. Makes CATS entries.

35. Reviews the file and all relevant information; solicits comments from other OCC divisions, as appropriate; makes a recommendation, and forwards the official file to the appropriate official for decision.

36. Notifies LIC/NE of the decision.

37. Makes CATS entries and returns the official file to LIC/NE.

**LIC/NE**

38. In coordination with SO, notifies applicant foreign bank, IBS HQ, and the FRB by phone and letter of the OCC's decision, and if applicable, sends a copy of the decision letter to other interested parties. Also sends a copy of the letter to the administrative assistant of the Director, Licensing Activities, for publication.

39. Forwards to SO copies of the confidential memorandum and decision letter (including any attachments), updated CATS comments, and any additional material highlighting supervisory or licensing concerns.

40. Makes CATS entries.

41. If application is denied, reviews the file for completeness and forwards it to Central Records.

## Organization

**Applicant**

42. Submits three originally signed CED agreements to LIC/NE. (See the "Capital Equivalency Deposit" section of this booklet.)

**LIC/NE**

43. Reviews the original CED agreement and approves the depository bank. Executes each of three CED agreements. Returns two copies of the CED agreement for the foreign bank's and depository bank's files. Retains one copy for the OCC's official file.

## Preopening Examination

**Applicant**

44. Informs LIC/NE at least 45 days in advance of the desired opening date.

**LIC/NE**

45. Contacts SO to schedule preopening examination and provides SO with a scope memo.

**SO**

46. Performs a preopening examination to verify that

- appropriate CED is established in the approved depository bank.

- proper controls for detection of money laundering are in place.
- minimum policies and procedures have been adopted.
- all other conditions of the preliminary approval have been satisfied and that the federal branch or agency is ready to open for business.

47. Informs the foreign bank of any matters to be resolved before opening the federal branch or agency.

48. Provides LIC/NE with a copy of the preopening examination report.

## Authorization

**Applicant**

49. If the OCC raised issues at the preopening examination, notifies LIC/NE when such matters are resolved.

**LIC/NE**

50. Notifies the foreign bank by telephone and official letter that it is authorized to open. Forwards the federal branch or agency license to the foreign bank. Requests that IBS HQ send an individual notice of licensing to the bank's home country supervisor.

**Applicant**

51. Notifies LIC/NE of the opening by telephone on the first day of operations.

## Close Out

**LIC/NE**

52. Makes CATS entries.

53. Reviews the file for completeness and forwards it to Central Records.

# Procedures: Additional Intrastate Establishments

## Prefiling

**Applicant**

1. Requests information about establishing an additional intrastate federal branch or agency from LIC/NE.

**LIC/NE**

2.  Enters inquiry into CATS.

3.  If necessary, holds exploratory meeting or conference call with applicant.

4.  Provides information about the establishment process and refers a foreign bank that requests instructions to the appropriate sections of this booklet and to other relevant booklets of the *Comptroller's Licensing Manual*.

**Applicant**

5.  Reviews information and, if necessary, requests a prefiling meeting.

**LIC/NE**

6.  Schedules a prefiling meeting with representatives of the foreign bank if requested. Invites SO and District Counsel. Notifies IBS HQ analyst and HQ LIC specialist.

7.  Determines if the applicant is an eligible foreign bank.

8.  Consults with FRB to determine if the FRB has any preliminary issues with the proposal.

9.  At the meeting, provides the following general information, as applicable, to the foreign bank:

    - Key policies and specific requirements of the licensing process.
    - Whether the applicant is an eligible foreign bank and qualifies for a 30-day prior written notice (30-day notice).
    - How to file the notice and what to expect from the OCC during processing.
    - Common problems associated with additional intrastate federal branch and agency applications.
    - Standard conditions for approval.
    - How the OCC supervises the federal branch or agency after it opens.

10. In coordination with SO and IBS, asks the foreign bank for information about

    - its U.S. and global operations.
    - how the proposed federal branch or agency would fit into the bank's global strategy.
    - any potential impediments, such as home country secrecy laws, that would prevent access to information about the foreign bank, as deemed necessary, to supervise the federal branch or agency.
    - how the bank will ensure compliance with EPS and any other requirements of Dodd–Frank, as applicable. (Updated 7/15/2015)

**Applicant**

11. Provides information about the foreign bank's condition and qualifications and an overview of the proposal with particular emphasis on any unique aspects.

12. For eligible foreign banks, if appropriate, requests permission to file a 30-day notice for an additional intrastate federal branch. Provides written justification for the request either at the time of the meeting or shortly thereafter.

13. For eligible foreign banks, if immediate action is required, requests a waiver of the 30-day notice period to establish an additional intrastate branch.

**LIC/NE**

14. Answers questions posed by those attending the meeting. If an answer requires further research or discussion among IBS HQ, LIC/NE, SO, HQ LIC, or District Counsel, informs the representative that a response will be forthcoming following the meeting.

15. Prepares a memorandum of the meeting and retains it in a pending file. Forwards a copy of the memorandum to SO.

16. If the prefiling discussion reveals significant supervisory, compliance, legal, or policy issues, coordinates with HQ LIC, SO, and others, as appropriate, to discuss processing.

17. If applicable, reviews request for waiver of 30-day notice requirement for an additional branch.

18. If applicable, reviews the request for a 30-day notice for an additional federal branch. As part of this review, analyst considers

    - whether the applicant is an eligible foreign bank.
    - whether the additional branch would engage in activities or operations not currently performed by existing branches or agencies.

19. If applicable, sends e-mail explaining whether a 30-day notice is acceptable or whether an emergency exists to warrant a waiver of the 30-day requirement.

20. If applicable, obtains concurrence from appropriate delegated official on acceptability of a 30-day notice or waiver of such notice.

21. Responds to the foreign bank regarding any request for a 30-day notice, forwards a copy to SO, and retains a copy in the pending file.

22. Updates CATS.

## Filing

**Applicant**

1. If applicant is an eligible foreign bank and has previously received permission from the OCC, submits one original and four copies of the notice with supporting information to LIC/NE 30 days before establishment. Also publishes a notice of the application in a newspaper of general circulation in the community in which the proposed federal branch or agency would be located. The applicant should publish the notice at least 30 days before establishment. (See the "Public Notice and Comments" booklet of the *Comptroller's Licensing Manual*.)
   If not an eligible foreign bank, follows application procedures for initial federal branches. If planning to exercise fiduciary powers, submits a letter of intent with the notice.

## Review

**LIC/NE**

2. Initiates and enters information into CATS.

3. Closes out the prefiling inquiry in CATS and relates it to the new notice filing.

4. Establishes the official file to maintain all original documents relating to the notice.

5. Initiates background checks as appropriate. (See the "Background Investigations" booklet of the *Comptroller's Licensing Manual*.)

6. Reviews the notice and relevant information about the foreign bank—including its ownership, subsidiaries, and financial condition—to determine whether the filing contains all information necessary to reach a decision. If the notice is incomplete, requests that the information from the representative be provided by a specific date.

7. Determines whether the applicant bank qualifies for a 30-day notice if such a determination was not made during the prefiling phase. If the foreign bank is not qualified to file a notice, notifies the representative of the foreign bank that the notice is being removed from expedited review and requests that an application be submitted within a specified time period.

8. Acknowledges receipt of the notice within five business days of receipt.

9. Forwards a copy of the notice to District Counsel and other OCC divisions, as appropriate, and requests that comments be provided within 15 days. Of specific interest is whether there are significant legal or other issues that could prevent the notice from moving forward.

10. Contacts HQ LIC if the proposal would

- affect significantly the quality of the human environment, or
- affect any district, site, building, or structure listed in, or eligible for listing in, the National Register of Historic Places. (See the "General Policies and Procedures" booklet of the *Comptroller's Licensing Manual* for NHPA- and NEPA-related processing.)

11. Notifies designated IBS HQ analyst. Requests that IBS HQ analyst send notice of the filing and a request for comments to the applicant's home country supervisor. Requests that the supervisor

- provide a brief description of the bank regulatory system in the applicant bank's country of incorporation.
- discuss the regulatory system's powers and functions.
- discuss the extent to which the regulatory system supervises or regulates the bank on a comprehensive consolidated basis.
- discuss whether the home country has or is developing a legal regime to address money laundering or is participating in multilateral efforts to combat money laundering.
- if no information-sharing agreement is in place with the foreign supervisor, discuss procedures for sharing supervisory information with foreign supervisors and the supervisor's confidentiality policies.
- discuss the frequency and scope of direct or indirect supervisory examinations of banks in its country.
- discuss the functions of the central bank and its relationship to private and public banks.
- state that the applicant is duly organized and existing under local law and is authorized to transact banking business.
- grant permission for the applicant to operate a federal branch or agency, provide a statement that such permission is not required, or recommend that the OCC not approve the application based on supervisory concerns.

If the OCC is familiar with the home country supervisor and its approach to supervision, portions of this step may be omitted.

12. Forwards a copy of the notice to SO and requests it provide comments within 15 days. Of specific interest are SO's comments about potential supervisory issues or the need to conduct a field investigation.

13. Decides to conduct a field investigation if any of the following apply:

- The applicant is not known to the OCC.
- The applicant was previously requested to terminate its activities in the United States by either the OCC or the FRB.

- Issues the applicant discloses are deemed to be best resolved through a field investigation.
- SO raises concerns about the proposal that warrant a field investigation.
- Proposed activities of the additional branch vary significantly from existing U.S. operations.

14. Requests a field investigation and determines its scope.

15. Forwards the field investigation request to SO and requests that it assign an NBE to conduct the field investigation. Also notifies the representative that it will conduct a field investigation. (See the "Field Investigation" procedures of this booklet.)

16. Analyzes the notice and assesses

- the potential effects of the proposed federal branch or agency on competition and on the U.S. domestic and foreign commerce.
- the financial and managerial resources, proposed management, and future prospects of the applicant foreign bank and the proposed federal branch or agency.
- the convenience and needs of the community to be served.
- the legality of the proposal.
- the reasonableness of the operating plan.
- whether the foreign bank and its U.S. affiliates comply with applicable U.S. laws, including Dodd–Frank, and foreign laws. (Updated 7/15/2015)
- whether the foreign bank has furnished to the OCC
  – information required to assess the application adequately.
  – adequate assurances that the OCC will have access to necessary information on the operations or activities of the foreign bank or any of its affiliates to determine and enforce compliance with the IBA and other applicable federal banking statutes.
- whether the foreign bank is subject to CCS by its home country supervisor, or whether the FRB has determined that the home country supervisor is actively working toward CCS.
- the recommendation, consent, or non-objection of the home country supervisor.

The OCC also considers whether adequate controls for the detection of money laundering are in place at the foreign bank.

17. If applicable, receives and reviews the field investigation report.

18. If supervisory issues are raised or other concerns exist, notifies the applicant by phone and letter that the filing is being removed from expedited review, and gives the reasons for the removal. Requests additional information as necessary.

## Public Comments and Hearings

**LIC/NE**

19. If a member of the public requests a copy of the notice, files comments, or requests a hearing, refers to the "Public Notice and Comments" booklet of the *Comptroller's Licensing Manual* and determines whether the comments are material. Proceeds as appropriate.

## Decision

**LIC/NE**

20. Contacts the FRB to discuss any issues about the notice and any conditions the FRB may be contemplating for its approval.

21. Prepares confidential memorandum and decision letter recommending a decision for the delegated official. Ensures that Director of IBS and Deputy Comptroller concur with the proposed decision.

22. Decides the notice within applicable time frames under delegated authority or forwards the official file to HQ LIC for decision. A notice for an additional intrastate federal branch must be decided on the 30th day after the OCC receives the filing or on the expiration of the public comment period, unless the OCC notifies the foreign bank before that date that the filing is no longer eligible for expedited review.

23. Goes to step 28.

**HQ LIC**

24. Makes CATS entries.

25. Reviews the file and all relevant information; solicits comments from other OCC divisions, as appropriate; makes a recommendation; and forwards the official file to the appropriate official for decision.

26. Notifies LIC/NE of the decision.

27. Makes CATS entries and returns the official file to LIC/NE.

**LIC/NE**

28. In coordination with SO, notifies the applicant foreign bank, IBS HQ, and the FRB of the decision by phone and letter. If applicable, sends a copy of the decision letter to any interested parties. Also sends a copy of the letter to the administrative assistant of the

Director, Licensing Activities, for publication.

29. Sends SO copies of the confidential memorandum, the decision letter (including any attachments), updated CATS comments, and any additional material highlighting supervisory or licensing concerns.

30. Makes CATS entries.

31. If denied, reviews the file for completeness and forwards it to Central Records.

## Organization

**Applicant**

32. Submits three originally signed CED agreements to LIC/NE. (See the "Capital Equivalency Deposit" section of this booklet.)

**LIC/NE**

33. Reviews the original CED agreement and approves the depository bank. Executes each of three CED agreements. Returns two copies of the CED agreement for the foreign bank's and depository bank's files. Retains one copy for the OCC's official file.

## Preopening Examination

**Applicant**

34. Informs LIC/NE at least 45 days in advance of the desired opening date.

**LIC/NE**

35. Contacts SO to schedule preopening examination and provides to SO a scope memo.

**SO**

36. Performs a preopening examination to verify that

- appropriate CED is established in the approved depository bank.
- proper controls for detection of money laundering are in place.
- minimum policies and procedures have been adopted.
- all other conditions of the preliminary approval have been satisfied and that the federal branch or agency is ready to open for business.

37. Informs the foreign bank of any matters to be resolved before opening the federal branch or agency.

38. Provides LIC/NE with a copy of the preopening examination report.

## Authorization

### Applicant

39. If the OCC raised issues at the preopening examination, notifies LIC/NE in writing when such matters have been resolved.

### LIC/NE

40. Notifies the foreign bank by telephone and official letter that it is authorized to open. Forwards the federal branch or agency license to the foreign bank. Requests that IBS HQ send an individual notice of licensing to the bank's home country supervisor.

### Applicant

41. Notifies LIC/NE of the opening by telephone on the first day of operations.

## Close Out

### LIC/NE

42. Makes CATS entries.

43. Reviews the file for completeness and forwards it to Central Records.

# Procedures: Additional Interstate Establishments

## Prefiling

### Applicant

1. Requests information about establishing an additional interstate federal branch or agency from LIC/NE.

### LIC/NE

2. Enters inquiry into CATS.

3. If necessary, holds exploratory meeting or conference call with applicant.

4. Provides information about the establishment process and refers a foreign bank that requests instructions to the appropriate subsections of this booklet and to other relevant booklets of the *Comptroller's Licensing Manual*.

**Applicant**

5. Reviews information and, if desired, requests a prefiling meeting.

**LIC/NE**

6. Schedules a prefiling meeting with representatives of the foreign bank, if meeting is requested. Invites SO and District Counsel. Notifies IBS HQ analyst and HQ LIC specialist.

7. Determines if the applicant is an eligible foreign bank.

8. Consults with FRB to determine if the FRB has any preliminary issues with the proposal.

9. At the meeting, provides the following general information, as applicable, to the foreign bank:

   - The OCC's and FRB's roles in licensing federal branches and agencies.
   - Key policies and specific requirements affecting the licensing process.
   - Whether the applicant is an eligible foreign bank and thus qualifies for expedited approval procedures and a streamlined application.
   - How to file the application and what to expect from the OCC during processing.
   - Common problems associated with additional interstate federal branch and agency applications.
   - Standard conditions for approval.
   - How the OCC will supervise the federal branch or agency after it opens.

10. In coordination with SO, solicits from the foreign bank information about

   - its U.S. and global operations.
   - how the proposed federal branch or agency would fit into the bank's global strategy.
   - any potential impediments to accessing information about the foreign bank, as deemed necessary, to supervise the federal branch or agency.
   - how the bank will ensure compliance with EPS and any other requirements of the Dodd–Frank, as applicable. (Updated 7/15/2015)

**Applicant**

11. Provides information about the foreign bank's condition and qualifications and an overview of the proposal, with particular emphasis on any unique aspects.

12. Eligible foreign banks, if appropriate, may request permission to file a streamlined application under expedited time frames.

**LIC/NE**

13. Answers questions from those attending the meeting. If an answer requires further

research or discussion among IBS HQ, LIC/NE, SO, HQ LIC, or District Counsel, informs the representative that a response will be forthcoming following the meeting.

14. Prepares a memorandum of the meeting and retains it in a pending file. Forwards a copy of the memorandum to SO.

15. If the prefiling discussion reveals significant policy, legal, or supervisory issues, coordinates with HQ LIC, SO, and others, as appropriate, to discuss processing.

16. If applicable, reviews the request for streamlined application and expedited approval procedures. As part of this review, analyst considers

- whether the applicant is an eligible foreign bank.
- whether the additional interstate branch would engage in activities or operations not currently performed by existing branches or agencies.

17. If applicable, prepares e-mail explaining whether streamlined application and expedited approval procedures are acceptable.

18. If applicable, receives concurrence from appropriate delegated official that streamlined application and expedited approval procedures are acceptable.

19. Responds to foreign bank's request for streamlined application and expedited approval procedures, if appropriate; forwards copy to SO, and retains a copy in the pending file.

20. Updates CATS.

## Filing

**Applicant**

1. If applicant is an eligible foreign bank, submits one original and four copies of the application with supporting information at least 45 days before establishment. If applicant has previously received permission from the OCC, submits a streamlined application. If applicant does not qualify for expedited time frames, the OCC notifies the applicant that the application will be processed under standard time frames. If fiduciary powers are planned, a letter of intent should be submitted with the application.

2. Publishes a notice of the application in a newspaper of general circulation in the community in which the proposed federal branch or agency would be located. (See the "Public Notice and Comments" booklet of the *Comptroller's Licensing Manual*.)

## Review

**LIC/NE**

3. Initiates and enters information into CATS.

4.  Closes out the inquiry in CATS and relates it to the new application filing.

5.  Establishes the official file to maintain all original documents relating to the application.

6.  Initiates background checks as appropriate. (See the "Background Investigations" booklet of the *Comptroller's Licensing Manual*.)

7.  Reviews the application, relevant information about the foreign bank, including its ownership, subsidiaries, and financial condition, to determine that the filing contains all information necessary to reach a decision. If the application is incomplete, requests that the information from the representative be provided by a specific due date.

8.  If filed under streamlined application procedures, determines that the applicant bank qualifies if such a determination was not made during the prefiling phase. If the foreign bank is not qualified for a streamlined application, notifies the representative and requests that any omitted portions of the application be submitted within a specified time period.

9.  Acknowledges receipt of the application within five business days of receipt.

10. Forwards a copy of the application to District Counsel and other OCC divisions, as deemed appropriate, and requests comments be provided within 15 days. Of specific interest are any significant legal or other issues, including interstate branching issues, that would prevent the application from moving forward.

11. Contacts HQ LIC if the proposal would

    - affect significantly the quality of the human environment; or
    - affect any district, site, building, or structure listed in, or eligible for listing in, the National Register of Historic Places. (See the "General Policies and Procedures" booklet of the *Comptroller's Licensing Manual* for NHPA- and NEPA-related processing.)

12. Notifies designated IBS HQ analyst. Requests that IBS HQ analyst send notice of the filing and a request for comments to the applicant's home country supervisor. Requests that the supervisor

    - provide a brief description of the bank regulatory system in the country of incorporation of the applicant bank.
    - discuss its powers and functions.
    - discuss the extent to which it supervises or regulates the bank on a comprehensive consolidated basis.
    - discuss whether the home country has or is developing a legal regime to address money laundering or is participating in multilateral efforts to combat money laundering.

- if no information-sharing agreement is in place with the foreign supervisor, discuss procedures for sharing supervisory information with foreign supervisors and the supervisors' confidentiality policies.
- discuss the frequency and scope of direct or indirect supervisory examinations of banks in its country.
- discuss the functions of the central bank and its relationship to private or public banks.
- state that the applicant is duly organized and existing under local law and is authorized to transact banking business.
- grant permission for the applicant to operate a federal branch or agency, provide a statement that such permission is not required, or recommend that the OCC not approve the application based on supervisory concerns.

If the OCC is familiar with the home country supervisor and its approach to supervision, portions of this step may be omitted.

13. Sends written request to the Secretary of the Treasury for consultation on the adequacy of the CED and requests that the Treasury Department provides comments within 15 days. (Updated 7/15/2015)

14. Forwards a copy of the application to SO and requests that it provide comments within 15 days. Of specific interest are SO's comments regarding potential supervisory issues or the need to conduct a field investigation.

15. Decides to conduct a field investigation if any of the following apply:

- The applicant is not known to the OCC.
- The applicant was previously requested to terminate its activities in the United States by either the OCC or the FRB.
- The applicant discloses in the application issues best resolved through a field investigation.
- SO raises issues with the proposal that warrant a field investigation.
- Proposed activities of the additional branch vary significantly from existing U.S. operations.

16. Requests a field investigation and determines its scope.

17. Forwards the field investigation request to SO and requests that it assign an NBE to conduct the field investigation. Also notifies the representative that it will conduct a field investigation. (See the "Field Investigation" procedures in this booklet.)

18. Analyzes the application and assesses

- the effect of the proposed federal branch or agency on competition and on U.S. domestic and foreign commerce.

- the financial and managerial resources, proposed management, and future prospects of the applicant foreign bank and the proposed federal branch or agency.
- the convenience and needs of the community to be served.
- the legality of the proposal.
- the reasonableness of the operating plan.
- whether the foreign bank and its U.S. affiliates comply with applicable U.S. laws, including Dodd–Frank, and foreign laws. (Updated 7/15/2015)
- whether the foreign bank has furnished to the OCC
  – information required to assess the application adequately.
  – adequate assurances that the OCC will have access to necessary information on the operations or activities of the foreign bank or any of its affiliates to determine and enforce compliance with the IBA and other applicable federal banking statutes.
- whether the foreign bank is subject to CCS by its home country supervisor, or whether the FRB has determined that the home country supervisor is actively working toward CCS.
- the recommendation or consent of the home country supervisor.

The OCC also considers whether adequate controls for the detection of money laundering are in place at the foreign bank.

19. If applicable, receives and reviews the field investigation report.

20. If supervisory issues are raised or other concerns are outstanding, notifies the applicant by phone and letter that the filing is being removed from expedited review and states the reasons for the removal. Requests additional information as necessary.

## Public Comments and Hearings

**LIC/NE**

21. If copies of the application are requested, public comments filed, or a hearing requested, refers to the "Public Notice and Comments" booklet of the *Comptroller's Licensing Manual* and determines whether the comments are material. Proceeds as appropriate.

## Decision

**LIC/NE**

22. Contacts the FRB to discuss any issues about the application and any conditions contemplated by the FRB for its approval.

23. Prepares confidential memorandum and decision letter recommending a decision to the delegated official. Ensures that Director of IBS and Deputy Comptroller concur with the proposed decision.

24. Decides the application within applicable time frames under delegated authority or forwards the official file to HQ LIC for decision. An expedited application for an interstate federal branch or agency must be decided 15 days after the close of the public comment period or the 45th day after the filing is received, whichever is later, unless the OCC notifies the foreign bank before that date that the filing is no longer eligible for expedited review.

25. Goes to step 29.

**HQ LIC**

26. Makes CATS entries.

27. Reviews the file and all relevant information; solicits comments from other OCC divisions, as appropriate; makes a recommendation, and forwards the official file to the appropriate official for decision.

28. Notifies LIC/NE of the decision.

29. Makes CATS entries and returns the official file to LIC/NE.

**LIC/NE**

30. In coordination with SO, notifies the applicant foreign bank, IBS HQ, and the FRB by phone and letter of the decision. If applicable, sends a copy of the decision letter to any interested parties. Also, sends a copy of the letter to the administrative assistant of the Director, Licensing Activities, for publication.

31. Forwards to SO a copy of the confidential memorandum, decision letter (including any attachments), updated CATS comments, and any additional material highlighting supervisory or licensing concerns.

32. Makes CATS entries.

33. If denied, reviews the file for completeness and forwards it to Central Records.

## Organization

**Applicant**

34. Submits three originally signed CED agreements to LIC/NE. (See the "Capital Equivalency Deposit" section of this booklet.)

**LIC/NE**

35. Reviews the original CED agreement and approves the depository bank. Executes each of

three CED agreements. Returns two copies of the CED agreement for the foreign bank's and depository bank's files. Retains one copy for the OCC's official file.

## Preopening Examination

**Applicant**

36. Informs LIC/NE at least 45 days in advance of the desired opening date.

**LIC/NE**

37. Contacts SO to schedule preopening examination and provides SO scope memo.

**SO**

38. Performs a preopening examination to verify that

- appropriate CED is established in the approved depository bank.
- proper controls for detection of money laundering are in place.
- minimum policies and procedures have been adopted.
- all other conditions of the preliminary approval have been satisfied and that the federal branch or agency is ready to open for business.

39. Informs the foreign bank of any matters to be resolved before opening the federal branch or agency.

40. Provides LIC/NE with a copy of the preopening examination report.

## Authorization

**Applicant**

41. If the OCC raised issues at the preopening examination, notifies LIC/NE in writing when such matters have been resolved.

**LIC/NE**

42. Notifies the foreign bank by telephone and official letter that it is authorized to open. Forwards the federal branch or agency license to the foreign bank. Requests that IBS HQ send an individual notice of licensing to the bank's home country bank supervisor.

**Applicant**

43. Notifies LIC/NE of the opening by telephone on the first day of operations.

## Close Out

**LIC/NE**

44. Makes CATS entries.

45. Reviews the file for completeness and forwards it to Central Records.

# Acquisitions

The policies and procedures in this section apply to a foreign bank that is considering the establishment of a federal branch or agency, directly or indirectly, through merger, acquisition, consolidation, or similar transaction.

This section should be used together with other sections of this booklet and other booklets of the *Comptroller's Licensing Manual* as referenced in the "Introduction" section of this booklet.

## Key Policies

Subject to OCC discretion, a foreign bank that plans to establish a federal branch or agency through the acquisition of, or merger or consolidation with, a foreign bank that has an existing U.S. bank subsidiary or a federal or state branch or agency may file an after-the-fact application with the OCC. Subject to OCC discretion, an eligible foreign bank may provide the OCC with an after-the-fact notice of the transaction. This booklet provides guidance about the use of the after-the-fact approval and notice processes. Changes in control for foreign banking offices are discussed in the "Change in Control" subsection of the "Other Changes in Activities or Operations" section of this booklet.

## After-the-Fact Application

Unless otherwise provided by the OCC, a foreign bank that plans to establish a federal branch or agency through the acquisition of, or merger or consolidation with, a foreign bank that has an existing U.S. bank subsidiary or a federal or state branch or agency may proceed with the proposed transaction before an application has been filed with or acted on by the OCC. The applicant can seek after-the-fact approval of the establishment if the foreign bank

- gives the OCC reasonable advance notice of the proposed transaction.
- commits in writing, before consummation of the proposed transaction, to comply with the OCC's after-the-fact application procedures.
- commits in writing to abide by the OCC's decision, including a decision to terminate the federal branch's or agency's activities.

## After-the-Fact Notice

Unless otherwise provided by the OCC, an eligible foreign bank that plans to establish a federal branch or agency through the acquisition of, or merger or consolidation with, a foreign bank that has an existing U.S. bank subsidiary or a federal or state branch or agency may proceed with the transaction and provide after-the-fact notice to the OCC within 14 days of the transaction if

- the resulting bank is an eligible foreign bank.
- no federal branch established by the transaction accepts FDIC-insured deposits.

# Decision Criteria

The decision criteria used in establishing a federal branch or agency resulting from a merger, acquisition, consolidation, or similar transaction generally includes considering

- the effect of the proposal on competition in the domestic and foreign commerce of the United States.
- the financial and managerial resources and future prospects of the applicant foreign bank and the proposed federal branch or agency.
- the compliance of the foreign bank and its U.S. affiliates with applicable laws.
- the determination of whether the foreign bank is subject to CCS by its home country supervisor, or whether the FRB has determined that the home country supervisor is actively working toward CCS.
- the convenience and needs of the community to be served.
- the submission of required information to allow the OCC to assess the application adequately.
- representations signed by authorized parties that the foreign bank will adhere to conditions that provided assurances that the OCC will have access to information on the operations or activities of the foreign bank or any of its affiliates necessary to determine and enforce compliance with the IBA and other applicable federal banking statutes.
- comments from foreign and other U.S. regulators.

The OCC also considers whether adequate controls for the detection of money laundering are in place and at the foreign bank.

# Summary of Process

## General

The OCC's licensing process is based on the type of establishment proposed. For mergers, consolidations, or similar transactions, there usually will be a prefiling phase to determine whether an after-the-fact filing is available as well as a processing and decision phase.

## Prefiling Discussions

The OCC normally requires a foreign bank applicant to initiate prefiling discussions if it plans to seek an after-the-fact approval or file an after-the-fact notice related to an acquisition of a federal branch or agency, directly or indirectly, or through merger, consolidation, or similar transaction. Foreign bank applicants seeking to acquire federal branches holding FDIC-insured deposits should contact LIC/NE. The grandfathered status of an insured branch cannot be transferred unless the FDIC makes certain determinations. If the resulting bank is a foreign bank with an existing federal branch or agency, the OCC may waive a prefiling meeting.

# Publication Requirements

The publication requirement in 12 CFR 5.8 only applies if the resulting federal branch is FDIC-insured. The OCC has authority, however, to require publication if it determines that public comment is appropriate. For example, the application presents widespread implications for banks or consumers or the filing presents novel or complex issues. (See the "Public Notice and Comments" booklet of the *Comptroller's Licensing Manual*.)

# Streamlined Applications

An applicant that qualifies for after-the-fact application procedures may be able to file a streamlined application. In such a case, submission of detailed financial data on the resulting foreign bank may be omitted. In addition, depending on the proposed structure of the transaction, the OCC's filing requirements may be reduced further. For example, if each foreign bank that is party to an acquisition operates a federal branch or agency and will continue to do so under the same corporate form, in lieu of a streamlined application, the OCC may accept a copy of other filings required by the FRB. When the OCC has supervisory concerns or if the resulting bank is unknown to the OCC, however, a streamlined application may not be acceptable. The applicant is encouraged to consult early with LIC/NE to determine what portions of the OCC application should be submitted.

# **Specific Requirements**

## Fiduciary Powers

If an existing federal branch has been authorized previously to exercise fiduciary powers and no change in the fiduciary activities is anticipated by the resulting foreign bank, then no reauthorization is necessary and the federal branch may continue to exercise its fiduciary powers. Specific prior OCC approval must be obtained for a federal branch to exercise fiduciary powers if the OCC has not previously authorized such powers for that branch. (See the "Fiduciary Powers" section of this booklet.)

## CED

The applicant foreign bank may be required to revise the resulting federal branch or agency's CED agreement upon consummation of the transaction. The applicant should discuss this requirement with its SO.

## Other

The applicant foreign bank also must comply with requirements of other regulatory agencies, including the FDIC (in the case of insured branches).

# Procedures

## Prefiling Meeting

**LIC/NE**

1. Refers a foreign bank that requests instructions to the appropriate subsections of this booklet.

2. If necessary, holds exploratory meeting or conference call with applicant.

**Applicant**

3. Gives the OCC reasonable advance notice of pending acquisition, merger, or consolidation.

4. Requests a prefiling meeting to discuss filing procedures, including the eligible foreign bank criteria and possibility of filing an after-the-fact notice or an after-the-fact application, or requests a waiver of the prefiling meeting.

**LIC/NE**

5. Determines if the resulting bank is an eligible foreign bank.

6. Contacts the FRB to discuss any issues with the proposed filing.

7. Conducts or waives the prefiling meeting.

## After-the-Fact Notice

**Applicant**

1. If the proposed resulting bank is an eligible foreign bank and no federal branch established by the transaction accepts FDIC-insured deposits, submits a letter to the OCC requesting permission to file a notice within 14 days after consummation of the merger, acquisition, consolidation, or similar transaction.

**LIC/NE**

2. Initiates and enters information into CATS.

3. Establishes the official file to maintain all original documents relating to the filing.

4. Reviews request to ensure completeness and confirms that resulting bank is an eligible foreign bank and would not have federal branches that accept FDIC-insured deposits.

5. Acknowledges receipt of request within five business days of receipt and advises that a letter will be sent to the applicant bank once a determination is made about the request.

6. Consults with HQ LIC, District Counsel, IBS HQ, or other OCC divisions, as deemed appropriate.

7. If applicant is eligible, and there are no supervisory or other concerns, prepares confidential memo and letter recommending that the OCC grant the applicant's request to file an after-the-fact notice. Or notifies applicant that the OCC requires an application before consummating the transaction. If an application will be required, refers to procedures for "Acquisitions, Filing an Application" section of this booklet.

8. Grants request for after-the-fact notice under delegated authority.

9. Notifies SO, the applicant foreign bank, and the FRB of the decision by phone and letter.

10. Makes CATS entries.

11. Forwards to SO copies of the confidential memorandum and decision letter (including any attachments), updated CATS comments, and any additional material highlighting supervisory or licensing concerns.

## Filing the Notice

**Applicant**

12. Sends one original and four copies of the notice and supporting information to LIC/NE within 14 days of consummating the transaction.

## Review

**LIC/NE**

13. Updates information in CATS.

14. Initiates background checks if management is being changed at the federal branch or agency. (See the "Background Investigations" booklet of the *Comptroller's Licensing Manual*.)

15. Reviews notice and relevant information about the resulting foreign bank, including its ownership, subsidiaries, and financial condition, to determine that the filing is complete. If submission is incomplete, requests the information from the representative, specifying a response date.

## Authorization

**LIC/NE**

16. Once notice is deemed complete, sends applicant final authorization letter. Notifies and sends copy to SO and other interested parties as applicable.

## Close Out

**LIC/NE**

17. Makes CATS entries.

18. Forwards notice file to Central Records.

## Filing an Application

**Applicant**

1. A foreign bank may submit a letter requesting permission to proceed with the acquisition, merger, or consolidation before an application has been filed or acted on. The letter must give the OCC reasonable advance notice of the proposed transaction and must contain the applicant's agreement to

   - comply with the OCC's application procedures within a reasonable period of time.
   - abide by the OCC's decision on the application, including a decision to terminate activities of the federal branch or agency.

   If the applicant is filing an application before the acquisition, merger, consolidation, or similar transaction, applicant may skip to step 11.

**LIC/NE**

2. Initiates and enters information into CATS.

3. Establishes the official file to maintain all original documents relating to the filing.

4. Reviews request to ensure completeness.

5. Acknowledges receipt of request within five business days of receipt and advises that a letter will be sent to the applicant bank once a determination is made with respect to the request.

6. Consults with District Counsel, IBS HQ, or other OCC divisions, as deemed appropriate.

7. Prepares recommendation and letter for delegated official recommending that the OCC

grant the applicant's request to file an after-the-fact application, or notifies applicant that the OCC requires an application before the acquisition, merger, consolidation, or similar transaction.

8.  Grants request for after-the-fact application under delegated authority.

9.  Notifies SO, the applicant foreign bank, and the FRB by phone and letter.

10. Makes CATS entries.

**Applicant**

11. Sends one original and four copies of the application and supporting information within a reasonable period of time after consummation or sends one original and four copies of the application before consummation. If fiduciary powers are desired and not currently exercised, submits a letter of intent with the Acquisitions application. (See the "Fiduciary Powers" section of this booklet.)

12. If branch is FDIC-insured, also publishes a notice of the application in a newspaper of general circulation in the community in which the proposed federal branch would be located. (See the "Public Notice and Comments" booklet of the *Comptroller's Licensing Manual*.)

**LIC/NE**

13. Updates CATS.

14. Acknowledges receipt of the application within five business days of receipt.

15. Initiates background checks if management is being changed at the federal branch or agency. (See the "Background Investigations" booklet of the *Comptroller's Licensing Manual*.)

16. Reviews application and relevant information about the resulting foreign bank, including its ownership, subsidiaries, and financial condition, to determine that the filing is complete. If submission is incomplete, requests the information from the representative, specifying a response date.

17. If application is filed using a streamlined application, determines whether the applicant qualifies. If the foreign bank is not qualified for a streamlined application, notifies the representative and requests that any omitted portions of the application be submitted within a specified time period.

18. Solicits comments from District Counsel, IBS HQ, or other OCC divisions, as deemed appropriate, and requests that comments be provided within 15 days.

19. Contacts IBS HQ analyst to send notice of the application and a request for comments to the applicant's home country supervisor. Requests that the supervisor

- provide a brief description of the bank regulatory system in the country of incorporation of the resulting foreign bank.
- discuss its powers and functions.
- discuss the extent to which it supervises or regulates the resulting foreign bank on a comprehensive consolidated basis.
- discuss whether the home country has or is developing a legal regime to address money laundering or is participating in multilateral efforts to combat money laundering.
- discuss the frequency and scope of direct or indirect supervisory examinations of banks in its country.
- discuss the functions of the central bank and its relationship to private or public banks.
- if no information-sharing agreement is in place with the foreign supervisor, discuss procedures for sharing supervisory information with the foreign supervisor and the supervisor's confidentiality policies.
- state that the applicant is duly organized and existing under local law and is authorized to transact banking business.
- grant permission for the applicant to operate a federal branch or agency, provide a statement that such permission is not required, or recommend that the OCC not approve the application based on supervisory concerns.

To the extent the OCC is familiar with the home country supervisor and its approach to supervision, portions of this step may be omitted.

20. Forwards a copy of the application to SO and requests that comments be provided within 15 days. Of specific interest are SO's comments about potential supervisory issues.

21. Analyzes the application and assesses

- the financial and managerial resources, proposed management, and future prospects of the resulting foreign bank and its effect on the federal branch or agency.
- the legality of the proposal.
- if applicable, whether the resulting foreign bank and its U.S. affiliates comply with applicable U.S. laws, including Dodd–Frank, and foreign laws. (Updated 7/15/2015)
- whether the resulting foreign bank has furnished to the OCC
  - information required to assess the application.
  - adequate assurances that the OCC will have access to necessary information on the operations or activities of the foreign bank or any of its affiliates to determine and enforce compliance with the IBA and other applicable federal banking statutes.
- Recommendation or consent of the home country supervisor, if applicable.

The OCC also considers whether adequate controls for the detection of money laundering are in place at the foreign bank.

Finally, the OCC may consider whether the foreign bank is subject to CCS by its home country supervisor or whether the FRB has determined that the home country supervisor is actively working toward CCS.

## Public Comments and Hearings

### LIC/NE

22. If a copy of the application is requested, public comments filed, or a hearing requested, refers to the "Public Notice and Comments" booklet of the *Comptroller's Licensing Manual* and determines whether the comments are material. Proceeds as appropriate.

## Decision

### LIC/NE

23. Contacts the FRB to discuss any issues about the resulting foreign bank's application.

24. Prepares a confidential memorandum and decision letter recommending a decision to the delegated official.

25. Decides the application under delegated authority or forwards the official file to HQ LIC for decision. If decided under delegated authority, goes to step 29. If referred to HQ LIC, goes to step 26.

### HQ LIC

26. Reviews the file and all relevant information; solicits comments from other OCC divisions, as appropriate; makes a recommendation; and forwards the official file to the delegated official.

27. Notifies LIC/NE of the decision. Forwards decision letter to the administrative assistant of the Director, Licensing Activities.

28. Makes CATS entries and returns the official file to LIC/NE.

### LIC/NE

29. Notifies SO, the resulting foreign bank, and the FRB by phone and letter of the decision. If applicable, also sends a copy of the decision letter to any interested parties. Forwards decision letter to the administrative assistant of the Director, Licensing Activities, for publication. Issues new license certificate to resulting foreign bank. For additional requirements regarding CED documentation, refer to the "Federal Branches and Agencies

Supervision" booklet of the *Comptroller's Handbook*.

30. Makes CATS entries.

31. Forwards to SO copies of the confidential memorandum and decision letter (including any attachments), updated CATS comments, and any additional material highlighting supervisory or licensing concerns. If conditionally approved, goes to step 33 to continue processing.

32. If denied, makes CATS entries, reviews the file for completeness and refers resulting foreign bank to the "Voluntary Liquidation" section of this booklet. Coordinates termination of the federal branch or agency license with IBS HQ and the FRB as deemed appropriate. Goes to step 37.

## Authorization

### Applicant

33. Notifies LIC/NE of the effective date and requests final authorization. If applicable, provides documents to confirm all conditions have been met.

### LIC/NE

34. Reviews the official file and determines that all requirements have been met or conditions imposed in the decision letter have been satisfied.

35. Notifies the applicant by telephone of any outstanding issues.

36. Sends applicant final authorization letter. Notifies and sends copy to SO and other interested parties as applicable.

## Close Out

### LIC/NE

37. Makes CATS entries.

38. Forwards application file to Central Records.

# Conversion or Contraction of Operations

This section describes the OCC's policies, procedures, and filing requirements for a foreign bank planning to change its U.S. operation(s) by

- converting from a state branch or agency operated by a foreign bank, or a commercial lending company controlled by a foreign bank, into a federal branch, limited federal branch, or federal agency;
- converting its federally licensed operation from either a federal agency into a federal branch, or from a limited federal branch into a federal branch; or
- contracting the activities of its federally licensed operation from either a federal branch to a limited federal branch or a federal agency.[6]

A foreign bank proposing either to convert its state-licensed operation or to expand the activities of its federally licensed operation must file an application with and receive prior approval from the OCC. A foreign bank proposing to contract the activities of its federally licensed operation must provide only after-the-fact notice to the OCC.

These procedures do not apply when a foreign bank is seeking to convert its federally licensed U.S. operations to a state license. In such instance, refer to the "Other Changes in Activities or Operations" section of this booklet.

## Key Policies

The OCC approves conversions of an office of a foreign bank if the approval does not violate the provisions of applicable federal and state law and the proposal satisfies OCC's decision criteria. Applicants should contact the FDIC about the insured status of any grandfathered branch as part of a conversion.

## State-to-Federal License Conversion

The OCC has streamlined the conversion process and affords expedited review for eligible foreign banks that wish to convert from a state license. This streamlined application process is available generally in a conversion proposal when the banking powers of the desired type of federal license are commensurate with those of the state license. Proposals for conversion to a type of federal license that involves more banking powers than those permissible under the state license are considered on a case-by-case basis to determine if expedited review or a streamlined filing can be permitted.

A foreign bank may satisfy the eligible foreign bank definition even if it does not have an existing federally licensed office, so long as each state branch and agency satisfies the applicable eligibility criteria.

---

[6] The OCC may also require that an applicant provide notice of contraction from a limited federal branch to federal agency.

A state branch or agency considering a license conversion that is subject to an outstanding enforcement action, or has notice of a pending enforcement action by its current federal and/or state supervisor, should discuss its conversion proposal with the OCC before submitting an application. Generally, the OCC will not consider a conversion application submitted while a material enforcement action is pending.[7]

Notwithstanding the general principles outlined in this manual, depending on the facts and circumstances of a particular application, the OCC may consider additional factors that it deems relevant, such as the interests or policies of the home country regulator with respect to the proposed conversion (including, for example, the potential effects of the conversion on resolution planning) the presence of exceptional or exigent circumstances, or in the case of an unusual transaction.[8]

Generally, public notice under 12 CFR 5.8 does not apply to conversions, unless the OCC determines that the application presents a significant or novel policy, supervisory, or legal issue and that a public notice is necessary.

If a conversion from a state to federally licensed operation is not consummated within six months from the date of an approval, the OCC may withdraw its approval.

# Federal Agency or Limited Federal Branch to Federal Branch Conversion

Proposals for converting an office from a federal agency or a limited federal branch to a federal branch could qualify for expedited review. Therefore, the foreign bank is encouraged to discuss its plans with LIC/NE before filing an application.

# Contraction of Activities

Proposals for converting an office from a federal branch to a limited federal branch or federal agency are considered management decisions. The OCC requires written notice within 10 days after the contraction of activity.

---

[7] An action is considered "pending" if, before the branch or agency files its conversion application with the OCC, the branch regulator has commenced and notified the branch of—but not finalized—the action. (Updated October 2017)

[8] See 12 CFR 5.2(b). In the case of exceptional or exigent circumstances or unusual transactions, it may be necessary for the OCC to license activities on an emergency basis based on the record before it. The OCC may condition an approval issued in the case of such circumstances to require the foreign bank to adhere to the terms of the condition in the decision letter, which may require the bank to wind down the operations of the converted branch and surrender its license.

# Decision Criteria

## General

The OCC may deny an application from a foreign bank wanting to convert its state license to a federal license or expand its federally licensed operations if

- applicant's financial condition poses supervisory concern;
- safety or soundness concerns exist;
- proposal is inconsistent with applicable law, regulation, or OCC policy; or
- applicant is trying to escape supervisory action by its current regulator.

The OCC may impose special conditions for approvals to convert a state license to a federal license or to expand the activities of an existing federally licensed operation to protect the safety and soundness of the federal branch or agency, prevent conflicts of interest, provide customer protections, ensure that approval is consistent with the statutes and regulations, or provide for other special supervisory or policy considerations.

## State-to-Federal License Conversion

In a conversion from a state to a federal license, the OCC generally considers

- financial and managerial resources and future prospects of the applicant foreign bank and of the converting state branch or agency.
- condition of the U.S. office(s) of the foreign bank and the history of compliance with applicable U.S. laws.
- required information submitted by the applicant to allow the OCC to assess the application adequately.
- legality of the proposal.
- whether the proposal involves an FDIC-insured institution and that institution's Community Reinvestment Act (CRA) record of performance.
- comments from other appropriate regulatory agencies.

In evaluating a proposal to convert an existing state-licensed foreign bank office to a federal branch or agency, the OCC draws heavily on information received from the office's current U.S. supervisor and other confidential and supervisory information available to the OCC. The OCC consults with the converting entity's current U.S. supervisor to obtain information on the current condition of the converting entity and any corrective programs instituted by the supervisor.

## Federal Agency or Limited Federal Branch to Federal Branch Conversion

In a conversion from a federal agency into a federal branch or from a limited federal branch into a federal branch, the OCC generally considers

- financial and managerial resources and future prospects of the applicant foreign bank and the federal branch or agency.
- compliance by the foreign bank's U.S. affiliates, including the office proposing a change in status, with applicable laws.
- submission of required information to allow the OCC to assess the application adequately.
- comments from foreign and other U.S. regulators.

In evaluating an application to expand the activities of an existing limited federal branch or federal agency, the OCC draws heavily on its own supervisory experience with the foreign bank.

# Summary of Process

## State-to-Federal License Conversion

The application process for a conversion from a state to a federal license generally consists of prefiling discussions; filing, processing, and deciding the application; and consummating the proposal. The OCC application includes information on the foreign bank applicant as well as the operations of its U.S. office(s).

## Federal Agency or Limited Federal Branch to Federal Branch Conversion

The application process for a conversion from a federal agency or limited federal branch license to a federal branch license consists of filing, processing, and deciding the application.

## Contraction of Activities

Proposals for converting an office from a federal branch to a limited federal branch or federal agency only require the foreign bank to send a notice within 10 days after the contraction of operations.

## Expedited Review

An application for a conversion from a state to federal license or expansion of activities qualifies for expedited review, if the applicant is an eligible foreign bank. (See the "Glossary" section of this booklet and 12 CFR 28.12(e) and 12 CFR 28.12 (f).) Under expedited review, such applications are deemed approved by the OCC 30 days after filing with the OCC, unless the OCC notifies the bank before that date that the filing is not eligible for expedited review.

A foreign bank without federally licensed operations that is seeking to convert a state-licensed branch or agency to a federal license could receive expedited review and qualify for

a streamlined application. To do so, each of its state-licensed operations must meet the criteria set forth under 12 CFR 28.12(f), and the filing must not present significant supervisory, compliance, legal, or policy issues.

# Specific Requirements

## Plans

For any conversion of an office of a foreign bank, the OCC requires that the applicant explain the reason for the desired change, any planned changes in its U.S. operations, and a statement of the legal basis for the proposed change in activity. The OCC also may require that a written legal opinion be included with the application. The legal opinion should address whether the proposed change conforms with applicable state and federal law.

## Background Investigations

If additional management is being proposed to oversee the changed or expanded activities and LIC/NE deems it appropriate, a background investigation of the new management is conducted. (See the "Background Investigations" booklet of the *Comptroller's Licensing Manual*.)

## Fiduciary Powers

If the institution seeking to convert from a state to federal license has existing fiduciary powers or plans to exercise them following the conversion, it must request and obtain prior OCC approval to do so. (See the "Fiduciary Powers" section of this booklet.) Similarly, if a current federal agency or limited federal branch that does not have fiduciary powers but plans to exercise fiduciary powers after converting to a federal branch, it must request and obtain prior OCC approval to do so. The only exception is for a limited federal branch currently exercising fiduciary powers that plans to convert its operations to a federal branch with fiduciary powers. In that case, such powers transfer to the converted office, and no separate request or approval is required.

## Preconversion Examination

### State-to-Federal License Conversion

For conversions from a state to a federal license, the OCC may conduct a preconversion examination, if deemed necessary. The OCC normally does not conduct a preconversion examination for a conversion application accorded expedited review. If the foreign bank applicant's U.S. operation(s) is (are) in satisfactory condition, the OCC generally does not perform a preconversion examination. The OCC may discuss the proposal with the applicant's current regulator(s) and accept and rely on the current banking regulator's examination rating. If there are supervisory concerns, however, the OCC may conduct a preconversion examination. The decision to conduct a preconversion examination is made on

a case-by-case basis. The information obtained in the investigation may be shared with other regulators.

## Federal Agency or Limited Federal Branch to Federal Branch Conversion

The OCC normally does not conduct preconversion examinations on applications involving the conversion from a federal agency or a limited federal branch to a federal branch.

# CED

A CED is required upon conversion from a state license to a federal license. (See the "Capital Equivalency Deposit" section of this booklet.)

# Other

Proposals for expansion of activities may require an application with the FRB. A foreign bank considering a contraction of activities for its insured federal branch may need to observe additional procedures and requirements promulgated by the FDIC. A foreign bank considering contracting the operations of its federal branch to a limited federal branch should seek FRB guidance before notifying the OCC of its proposed plan.

# Procedures: Conversions (State-to-Federal License)

## Prefiling

**LIC/NE**

1. Refers foreign bank requesting instructions to the "General Policies and Procedures" booklet of the *Comptroller's Licensing Manual* and the appropriate sections of this booklet.

2. Contacts the institution's state and federal supervisors to determine if applicant meets eligible foreign bank criteria and if there are any issues associated with the proposal.

3. If the filing presents policy, legal, or novel issues, contacts District Counsel and HQ LIC, as appropriate, to discuss processing.

**Applicant or LIC/NE**

4. Requests an optional prefiling meeting to review procedures for a conversion of a foreign bank office and to discuss the factors that may influence the OCC's review of the application.

**LIC/NE**

5.  Prepares summary memorandum on all prefiling communications. Retains all pertinent information in the pending file.

6.  Notifies applicant if it meets eligible foreign bank criteria and qualifies for expedited review and a streamlined application.

## Filing the Application

**Applicant**

7.  Sends one original and four copies of the application to LIC/NE.

## Review

**LIC/NE**

8.  Enters information into CATS.

9.  Establishes the official file to maintain all original documents.

10. Contacts the institution's state and federal supervisors by phone or letter, if deemed necessary, to

    -   obtain their supervisory background and comments.
    -   determine whether the institution is subject to an agreement, other enforcement proceeding, or order.
    -   obtain applicant's most recent three reports of examination.
    -   determine how the foreign banking organization ensures compliance with EPS and any other requirements of Dodd–Frank, as applicable. (Updated 7/15/2015)

11. Reviews the application and relevant information about the foreign bank—including its ownership, subsidiaries, and financial condition—to determine that the filing contains all information needed to reach a decision. If the application is incomplete, requests that the information from the representative be provided by a specific due date.

12. Acknowledges receipt of the application within five business days of receipt.

13. If the filing presents policy, legal, or supervisory issues, contacts HQ LIC to discuss processing.

14. Within five business days of receipt, solicits comments from the District Counsel, SO, IBS HQ, and any other OCC divisions, as appropriate. Comments should be submitted within 10 days.

15. Reviews comments received from other OCC divisions and determines whether the applicant is still eligible for expedited review.

   - If so, continues processing.
   - If not, contacts the applicant immediately and notifies it by phone and letter that it is no longer qualified for expedited review. Explains the specific reason(s).

16. Reviews recent examination reports and other supervisory information pertaining to the condition of the converting institution. Determines if an OCC preconversion examination is needed, and

   - if needed, notifies SO to schedule it with the institution (normally within 60 days from date of receipt of the conversion application). Specifies matters to be considered and notifies applicant. (See the "Preconversion Examination" procedures in the next section of this booklet.) Notifies applicant that it no longer qualifies as an eligible bank, if applicable; or
   - if a preconversion examination is not needed, documents the file with reason the examination was not performed.

17. Analyzes the application and assesses
   - financial and managerial resources and future prospects of the foreign bank, and their effects on the proposed federal branch or agency.
   - legality of the proposal.
   - if applicable, whether the foreign bank and its U.S. affiliates comply with applicable U.S. laws, including Dodd–Frank, and foreign laws. (Updated 7/15/2015)
   - whether the foreign bank has furnished to the OCC
     – information required to assess the application.
     – adequate assurances that the OCC will have access to necessary information on the operations or activities of the foreign bank or any of its affiliates to determine and enforce compliance with the IBA and other applicable federal banking statutes.
   - information obtained from the entity's current U.S. regulator.

   The OCC may also consider whether the foreign bank is subject to CCS by its home country supervisor, or whether the FRB has determined that the home country supervisor is actively working toward CCS.

## Decision

**LIC NE**

18. Prepares a confidential memorandum recommending a decision to the delegated official. Drafts the decision letter.

19. Decides application under delegated authority or forwards the official file to HQ LIC for decision. Expedited applications are deemed approved as of the 30th day after the

application is received, unless the application has been removed from expedited review for specific reasons.

20. If decided under delegated authority, goes to step 25.

**HQ LIC**

21. Makes CATS entries.

22. Reviews the file and all relevant information, makes a recommendation, and forwards the official file to the appropriate official for decision.

23. Notifies LIC/NE of the decision. Forwards decision letter to the administrative assistant of the Director, Licensing Activities.

24. Makes CATS entries and returns the official file to LIC/NE.

**LIC/NE**

25. Notifies SO, the applicant foreign bank, and any interested parties of the decision.
26. Sends the applicant a decision letter, and copies the SO.

27. Makes CATS entries.

28. If denied, goes to step 38.

## Authorization

**Applicant**

29. Notifies LIC/NE of the effective date of conversion and (if applicable) provides documents to confirm all conditions have been met.

30. Submits three originally signed CED agreements to LIC/NE. (See the "Capital Equivalency Deposit" section of this booklet.)

**LIC/NE**

31. Executes each of the three CED agreements. (See the "Capital Equivalency Deposit" section of this booklet.)

32. If applicable, forwards any documents regarding conditions and requirements to SO for review and comment.

33. Reviews the official file and determines that all requirements and conditions outlined in the decision letter have been satisfied.

34. Notifies the applicant by telephone of any outstanding issues.

35. Prepares and mails an official authorization of the conversion to the applicant, together with the appropriate License Certificate. Retains a copy in the official file.

36. Notifies SO.

37. Makes CATS entries.

## Close Out

**LIC/NE**

38. Reviews the file for completeness and forwards it to Central Records.

Case 1:17-cv-08691-SHS   Document 45-1   Filed 05/26/18   Page 58 of 105

Version 1.2                                    **Conversion or Contraction of Operations** > Procedures:
                                               Conversions (Federal or Limited Federal Branch to Federal Branch)

# Procedures: Conversions (Federal Agency or Limited Federal Branch to Federal Branch)

## Prefiling Meeting

### LIC/NE

1. Refers a foreign bank that requests instructions to this section of this booklet.

2. Consult with SO and the FRB, as appropriate, to determine if there are any issues with the applicant bank or the proposal.

3. Determines if applicant is an eligible foreign bank and notifies applicant if it is eligible for expedited review and a streamlined application.

### Applicant

4. Determines whether a prefiling meeting is needed to discuss filing procedures.

### LIC/NE

5. Conducts the prefiling meeting as needed and discusses reasons for upgrade.

6. Prepares summary memorandum on all prefiling communications. Retains all pertinent information in the pending file.

## Filing the Application

### Applicant

7. Submits one original and four copies of the application to LIC/NE.

## Review

### LIC/NE

8. Initiates and enters information into CATS.

9. Establishes the official file to maintain all original documents relating to the application.

10. Reviews the application to ensure it contains all of the information necessary to reach a decision. If the application is incomplete, requests that the information from the representative be provided by a specific due date.

11. Acknowledges receipt of the application within five business days of receipt.

Case 1:17-cv-08691-SHS   Document 45-1   Filed 05/26/18   Page 59 of 105

Version 1.2                                    **Conversion or Contraction of Operations** > Procedures:
                                               Conversions (Federal or Limited Federal Branch to Federal Branch)

12. If the proposal raises legal or other issues, solicits comments from District Counsel or other OCC divisions, as deemed appropriate, and requests that comments be provided within 10 business days.

13. Contacts IBS HQ to send notice of the application and a request for comments to applicant's home country supervisor. Requests that the supervisor share any concerns about the foreign bank's proposal to expand its activities in the United States.

14. Forwards a copy of the application to SO and requests that comments be provided within 10 days. Of specific interest are SO's comments on potential supervisory issues.

15. Initiates background checks if additional management is being proposed to oversee the expanded activities. (See the "Background Investigations" booklet of the *Comptroller's Licensing Manual*.)

16. Analyzes the application and assesses

   - financial and managerial resources, proposed management, and future prospects of the foreign bank and its effect on the proposed federal branch.
   - legality of the proposal.
   - if applicable, whether the foreign bank and its U.S. affiliates comply with applicable U.S. laws, including Dodd–Frank, and foreign laws. (Updated 7/15/2015)
   - whether the foreign bank has furnished to the OCC
     – information required to assess the application.
     – adequate assurances that the OCC will have access to necessary information on the operations or activities of the foreign bank or any of its affiliates to determine and enforce compliance with the IBA and other applicable federal banking statutes.
   - whether adequate controls for the detection of money laundering exist at the foreign bank.
   - recommendation or consent of the home country supervisor, if applicable.

17. Determines whether applicant is still eligible for expedited review.

   - If so, continues processing.
   - If not, contacts applicant immediately and notifies it that it is no longer qualified for expedited review. Explains the specific reason(s).

The OCC may also consider whether the foreign bank is subject to CCS by its home country supervisor, or whether the FRB has determined that the home country supervisor is actively working toward CCS.

## Decision

18. Contacts the FRB to discuss any issues on the conversion application filed with them by the foreign bank.

Case 1:17-cv-08691-SHS   Document 45-1   Filed 05/26/18   Page 60 of 105

Version 1.2                                    **Conversion or Contraction of Operations** > Procedures:
                                            Conversions (Federal or Limited Federal Branch to Federal Branch)

19. Prepares a confidential memorandum and decision letter recommending a decision to the delegated official.

20. Decides the application under delegated authority or forwards the official file to HQ LIC for decision. Expedited applications must be decided within 30 days of receipt, or the bank must be notified before the 30th day that the application has been removed from expedited review for specific reasons. If referred to HQ LIC, goes to step 22.

**HQ LIC**

21. Makes CATS entries.

22. Reviews the file and all relevant information; solicits comments from other OCC divisions, as appropriate; makes a recommendation; and forwards the official file to the delegated official.

23. Notifies LIC/NE of the decision.

24. Makes appropriate entries in CATS and returns the official file to LIC/NE. If conditional approval or denial, also sends documents for publication.

**LIC/NE**

25. Notifies SO, the foreign bank's representative, and the FRB by phone and letter of the decision. If conditional approval, also sends documents to the administrative assistant of the Director, Licensing Activities, for publication.

26. Forwards to SO a copy of the confidential memorandum and decision letter (including any attachments), updated CATS comments, and any additional material highlighting supervisory or licensing concerns.

27. Makes entries in CATS and reviews the file for completeness.

**Applicant**

28. Advises LIC/NE of the effective date. If applicable, provides documents to evidence all conditions and requirements have been met.

## Close Out

**LIC/NE**

29. Sends any documents to SO for feedback.

30. Reviews the official file to ensure that all requirements and conditions outlined in the decision letter have been satisfied.

31. Notifies applicant by telephone of any outstanding issues.

32. Prepares and mails official authorization of the conversion to applicant together with the appropriate License Certificate. Retains a copy in the official file.

33. Updates CATS with effective date.

34. Forwards the official file to Central Records.

# Preconversion Examination

## Assignment and Planning

### LIC/NE

1. Requests SO to assign an NBE for the field investigation.

2. Provides a preconversion examination request (scope) to the NBE along with relevant materials; that is, proposed license number, examination reports, copies of the application and any amendments, biographical information, and any information on areas that LIC/NE considers to warrant particular attention.

### NBE

3. Calls spokesperson to schedule the examination (normally completed within 60 days from date of receipt of the conversion application).

4. Notifies SO and LIC/NE of the start date and determines the date for submission of the completed report.

5. Before conducting the examination:

   - Reviews conversion application and any other information forwarded with the request.
   - Schedules necessary interviews.
   - Reviews any special instructions in the request.

## On-Site Review

### NBE

6. Performs the preconversion examination.

7. Determines the institution's condition based on

- whether management ensures compliance with applicable federal and state banking laws, rulings, and regulations.
- whether management exhibits strategic planning skills that reflect a reasonable prospect for the successful operation of the proposed federal branch or agency.
- management's soundness, based on the condition of the institution and on management's ability to recognize and correct problems.
- if the institution is FDIC-insured, whether its record of CRA performance is at least satisfactory or not otherwise problematic.
- whether institution's operations reflect sound credit skills and funds management.
- judgment that institution's compliance with federal banking laws, regulations, and rulings will be satisfactory.

8. Schedules meeting with management (this may include management from the foreign bank's home country) at the conclusion of the visit to inform it of the findings.

9. Discusses with senior management the results of the examination, highlighting the deficiencies, recommendations, and suggestions. Requests that management respond to major criticisms or take corrective action before consummating the conversion. (Institution's response should be submitted to LIC/NE.)

10. Assigns preliminary Risk Management, Operational Controls, Compliance, and Asset Quality (ROCA) ratings, Risk Assessment System (RAS) assessments, and, if applicable, a CRA assessment.

- Preliminary ratings are not disclosed to management. Composite rating is disclosed in the preconversion examination report.
- If the preconversion examination reveals concerns, the OCC may request additional information or clarification from the converting institution.

11. Observes restrictions against informing anyone outside the OCC of the contents of the examination report.

## Report Preparation

**NBE**

12. Prepares billing information in accordance with 12 CFR 8.6.

13. Prepares recommendation on the conversion request and forwards the written report (in memorandum format) to LIC/NE. Also sends the preconversion examination billing information to LIC/NE, and

- briefly summarizes findings and conclusions and specifically addresses any problems or area(s) of concern.
- retains the conversion application information, all examination work papers, and a copy of the written report.

# Procedures: Contraction of Operations

## Filing the Notice

**Applicant**

1. Submits written notice within 10 days after converting the federal branch into a limited federal branch or federal agency.

## Review

**LIC/NE**

2. Initiates and enters information into CATS.

3. Establishes the official file to maintain all original documents relating to the notice.

4. Reviews the notice.

5. Advises SO of the notification.

6. Sends acknowledgment letter to the foreign bank (and a copy to SO), advising that at the next on-site examination, the OCC will verify that the operations of the limited federal branch or federal agency conform to the requested type of license.

## Close Out

**LIC/NE**

7. Forwards file to Central Records.

# Relocations

The policies and procedures in this section apply to foreign banks seeking to change the physical location of their federal branch or agency, whether intrastate or interstate, consistent with relevant federal banking laws. Expedited review is available for intrastate relocations.

A foreign bank planning to relocate its federal branch or agency must file an application with, and receive prior approval from, the OCC.

## Key Policies

A proposal to relocate generally does not require a prefiling meeting, unless it involves relocation from one state to another (interstate relocation). An application to relocate within a state (intrastate relocation) is filed, processed, decided, and effected within a relatively short period of time if the foreign bank qualifies for expedited review as described under the "Summary of Process" subsection of this booklet. The OCC decides applications for relocations by federal branches or agencies in accordance with the provisions of pertinent federal and state law.

### Decision Criteria

The OCC evaluates a relocation based on

- submission of required information to allow the OCC to assess the application adequately.
- any supervisory issues with the federal branch or agency or with the relocation.

For an interstate relocation, applicant must comply with all understandings and commitments contained in any Approval Order issued by the FRB.

### Standard Requirements

If the OCC approves a relocation request, the federal branch or agency must relocate within 18 months from the approval date, or the approval automatically terminates, unless the OCC grants an extension. The foreign bank should advise the OCC promptly of any changes to the original application between the time of the OCC's decision and the relocation.

### Special Conditions

The OCC may impose special conditions on its approval if conditions are needed to protect the safety and soundness of the federal branch or agency; prevent the risk of conflicts of interest; assure compliance with applicable laws; or for other supervisory, compliance, or policy considerations.

# Summary of Process

The foreign bank applicant submits an application to the OCC and publishes, on the date the application is filed or as soon as practical before or after the date of filing, a public notice containing specific information on the relocation application. The OCC reviews each application for compliance with applicable laws and regulations and considers any comments received within the comment period.

## Expedited Review

Expedited review is available for an eligible foreign bank proposing an intrastate relocation. It is not available for interstate relocations. Under expedited review, an application for an intrastate relocation is deemed approved on the seventh day after the close of the public comment period unless the OCC

- notifies applicant before that time that the filing is not eligible for expedited review;
- approves, conditionally approves, or denies the application; or
- advises applicant that the filing presents significant policy, legal, or supervisory issues and is being removed from expedited review.

The OCC notifies applicant promptly and provides a written explanation whenever it decides to remove an application from expedited review. When an application is removed from expedited review because of information obtained from a public comment, the OCC also informs the commenter.

## Short-Distance Relocations

A federal branch or agency relocating within the distance parameters outlined in the "Glossary" section of this booklet for a short-distance relocation generally receives expedited review and a shortened publication period. The OCC decides short-distance relocations within seven days after the close of the public comment period.

## Standard Review

After the close of the public comment period, the OCC considers all appropriate information and makes a decision to approve, conditionally approve, or deny the application. A standard review means that the federal branch or agency must receive a written decision from the OCC, and the application will not be approved automatically through the passage of a specified amount of time.

# Specific Requirements

## General Publication Requirements

Pursuant to 12 CFR 5.8, each foreign bank that proposes to relocate a federal branch or agency must publish notice of the application in a newspaper of general circulation in the community in which the applicant proposes to engage in business on the date of filing or as soon as feasible before or after the filing date. The comment period is 15 days for short-distance relocations and 30 days for all other relocation applications.

Applicant must mail or otherwise deliver to LIC/NE promptly after publication a statement containing the date of publication, the name and address of the newspaper that published the public notice, a copy of the public notice, and any other information the OCC requires.

## State Law Considerations

The relocation must comply with applicable state laws, as determined by the OCC. When a foreign bank proposes to relocate a federal branch or agency outside its current designated home state, applicant foreign bank should contact LIC/NE for specific guidance.

## NHPA and NEPA

Applicant foreign bank must consider the implications of the NHPA and NEPA in its relocation of its federal branch or agency and certify whether the proposal would affect a historic district, site, building, structure, or object, or the quality of the human environment. The OCC considers historical preservation and environmental factors in deciding relocation requests for a federal branch or agency. (For a discussion of the NHPA and NEPA requirements, see the "General Policies and Procedures" booklet of the *Comptroller's Licensing Manual*.)

# Procedures

### Prefiling

**LIC/NE**

1.  Refers applicant foreign bank that requests instructions to this section of this booklet.

**Applicant or LIC/NE**

2.  Requests a prefiling meeting to review procedures for relocations of federal branches and agencies and factors that may influence the OCC's review of the application. If proposing an interstate relocation in compliance with the legal requirements in 12 CFR 5.30 and 5.40, advises applicant that an application must also be made to the FRB.

**LIC/NE**

3.  If any prefiling discussions or meetings reveal significant policy, legal, or supervisory issues, immediately contacts District Counsel, HQ LIC, and SO, as appropriate, to discuss processing.

4.  Prepares memorandums on all prefiling discussions. Retains memorandums and other information in a pending file.

## Filing the Application and Publication

**Applicant**

5.  Submits, return receipt requested, one original and four copies of an application to LIC/NE requesting permission to relocate.

6.  Publishes a notice within three days before or after the date of filing. The public comment period for short-distance relocations is shortened from 30 to 15 days.

7.  Checks Web site of the State Historic Preservation Officer (SHPO) to determine if desired location is listed as a historic property. Requests clearance from SHPO indicating the property is not eligible for listing.

## Review

**LIC/NE**

8.  Enters information into CATS.

9.  Establishes the official file to maintain all original documents.

10. Reviews application to determine that the filing contains all information necessary to reach a decision. If application is for an interstate relocation, confirms that applicant also files with the FRB. If application is incomplete, requests information from the representative by a specific due date.

11. Determines if the foreign bank is an eligible foreign bank per 12 CFR 28.12(f) and qualifies for expedited review under 12 CFR 28.12(e)(1).

    *   If not eligible, prepares and sends a letter to applicant providing notice of standard processing within five business days of receipt of the application. The letter must include the explanation of the reasons for the decision.
    *   If eligible, acknowledges filing within five business days of receipt.

12. If the filing presents significant policy, legal, or supervisory issues, contacts HQ LIC to discuss processing.

13. Within five business days of receipt,

- notifies SO. Requests that comments from SO be submitted within 15 days (or five business days for a short-distance relocation that qualifies for expedited review).
- if a legal issue has been identified or a legal opinion was submitted with the filing, forwards relevant materials to District Counsel with comments due within 15 calendar days (or five business days for a short-distance relocation that qualifies for expedited review).
- solicits comments from other OCC divisions, as appropriate, with responses due within 15 days (or five business days for a short-distance relocation that qualifies for expedited review).
- contacts HQ LIC if the proposal would
  - affect significantly the quality of the human environment; or
  - affect any district, site, building, or structure listed in, or eligible for listing in, the National Register of Historic Places (See the "General Policies and Procedures" booklet of the *Comptroller's Licensing Manual* for NHPA and NEPA-related processing).
- if issues are raised, informs applicant immediately in writing that it no longer qualifies for expedited review and identifies the specific reason(s).
- updates CATS and official file as appropriate.

## Public Comments and Hearings

### LIC/NE

14. If a copy of the application is requested, public comments filed, or a hearing requested, refers to the "Public Notice and Comments" booklet of the *Comptroller's Licensing Manual*. Public comments should be forwarded to appropriate units for evaluation and advice. If an adverse CRA comment is received, notifies HQ LIC promptly. Proceeds as appropriate.

## Decision

### LIC/NE

15. For a federal branch or agency eligible for expedited review, verifies after the close of the public comment period, but before expiration of the processing period, that there are no reasons for disqualification for expedited review, and

- if applicant remains qualified, proceeds to the next step.
- if applicant is disqualified, immediately notifies applicant that it no longer qualifies for expedited review, identifies the specific reason(s), and requests any necessary information from applicant, specifying a response date.

16. Prepares a confidential memorandum and decision letter and forwards them to the appropriate delegated official.

17. Decides the application under delegated authority or forwards the official file to HQ LIC for decision. If the filing is non-delegated, goes to step 22. Applications eligible for expedited review are automatically deemed approved by the seventh day after the public comment period ends.

18. Notifies SO, IBS HQ, and applicant of the decision. Notifies interested parties, if applicable.

19. Sends applicant a decision letter and copies SO.

20. Makes CATS entries.

21. If application is denied, goes to step 32. Otherwise, goes to step 27.

**HQ LIC**

22. Makes CATS entries.

23. Reviews the file and all relevant information; solicits comments from other OCC divisions, as appropriate; makes a recommendation; and forwards the official file to the appropriate delegated official for decision.

24. Notifies LIC/NE of the decision.

25. Makes CATS entries.

26. Returns the official file to LIC/NE.

**Applicant**

27. Notifies LIC/NE of the desired relocation date at least 10 days before the planned effective date.

## Authorizations

**LIC/NE**

28. Reviews the official file and determines that all required actions have been completed.

29. Notifies the federal branch or agency by telephone of any remaining issues.

30. Prepares and mails an official authorization letter to the federal branch or agency on the planned relocation date. Retains a copy in the official file and forwards a copy to SO.

## Close Out

**LIC/NE**

31. Makes CATS entries.

32. Reviews the file for completeness and forwards it to Central Records.

# Fiduciary Powers

The policies and procedures in this section apply to a foreign bank interested in exercising fiduciary (trust) powers through its federal branch. Federal agencies are not permitted by law to exercise fiduciary powers. Also discussed in this section is the revocation of fiduciary powers by the OCC and procedures for a federal branch to surrender them voluntarily.

This section should be used in conjunction with *Comptroller's Licensing Manual* booklets referenced in the "Introduction" section of this booklet and to the "Fiduciary Powers" booklet of the *Comptroller's Licensing Manual*.

## Key Policies

The OCC requires foreign banks that operate a federal branch to seek prior approval before offering fiduciary services to the public. A state branch of a foreign bank seeking to convert to a federal branch must request and obtain prior OCC approval to exercise fiduciary powers, regardless of whether it currently exercises them. Additionally, a foreign bank that acquires a federal branch that does not currently exercise fiduciary powers, directly or indirectly, or through merger, acquisition, consolidation, or similar transaction, needs prior OCC approval before exercising fiduciary powers.

A federal branch may apply for fiduciary powers in conjunction with an establishment application or at any time after opening for business.

The OCC views the exercise of fiduciary powers primarily as a business decision of the foreign bank. The OCC generally grants permission to exercise fiduciary powers to federal branches operating in a satisfactory manner, provided

- proposed activities comply with applicable statutes and regulations, including federal law (12 USC 92a) and state and local statutes and regulations.
- the federal branch provides for and retains qualified fiduciary management.

The OCC requires that federal branches licensed for less than two years submit information discussing how the fiduciary powers would complement the bank's strategy as submitted at the time the federal license was granted. The OCC may request additional information depending on the condition of the federal branch.

## Decision Criteria

When deciding whether to approve, conditionally approve, or deny an application for fiduciary powers, the OCC considers the

- condition of the foreign bank.
- condition of the federal branch and its history of compliance with U.S. laws, if applicable.

- character and ability of proposed fiduciary management, including qualifications, experience, and competence.
- needs of the community to be served (see 12 USC 92(a)(i)).
- adequacy of the proposed operating plan.

The OCC may deny a request for fiduciary powers if federal branch activities do not comply with applicable state and federal laws (12 USC 92(a) and 12 CFR 9) or if the federal branch does not provide for and retain qualified fiduciary management.

# Summary of Process

A foreign bank submits an application for fiduciary powers in letter form to LIC/NE, providing specific information. The OCC sends an acknowledgment letter within five business days from receipt of the application and notifies the foreign bank in writing of its decision.

## Expedited Review

If the foreign bank is eligible and its filing qualifies for expedited review per 12 CFR 28.12(e)(5), the application is reviewed to ensure that all information has been submitted and that there are no new or novel policy issues. The OCC notifies an eligible foreign bank of the OCC's decision within 30 days of receipt of the application. If the applicant does not receive a decision within that time period and is not otherwise notified that the processing time has been extended, automatic approval is granted 30 days after the date the OCC receives an application. A foreign bank ineligible for expedited review may not exercise fiduciary powers until notified by the OCC in writing.

## Timing of Decision

Generally, a fiduciary powers request that is filed with an application to open an initial or additional federal branch is decided at the same time as the federal branch application. A fiduciary powers permit will not be issued, however, until the federal branch opens for business. The federal branch may exercise fiduciary powers once it receives the permit.

## Commencement of Activity

The federal branch must begin exercising fiduciary powers within 18 months of approval. It must request and receive OCC approval for any changes it wishes to make in the proposed trust management before commencing its fiduciary business.

# Surrender or Revocation of Fiduciary Powers

## Surrender

A foreign bank may discontinue and surrender voluntarily the fiduciary powers of its federal branch. To do so, it must notify LIC/NE and file a certified copy of a resolution adopted by its senior bank management to surrender trust powers. It also must return any trust permit previously issued.

The branch may be classified as inactive, or it may surrender its fiduciary powers altogether. In either case, the board of directors must arrange for a final audit of the fiduciary accounts. In addition, the OCC may conduct a closing investigation to determine if the branch has been discharged completely from its fiduciary obligations—that is, all accounts have been properly closed and distributed or transferred to substitute fiduciaries. The appropriate supervisory office decides whether to conduct a closing investigation.

After the OCC is assured that the federal branch is relieved of all fiduciary duties pursuant to state law and the trust permit has been returned, the OCC issues to the foreign bank a notice certifying that the federal branch is no longer authorized to exercise fiduciary powers. (See the "Voluntary Liquidation" section of this booklet.)

## Revocation

Pursuant to U.S. laws and regulations, the OCC may serve a foreign bank with a notice of its intent to revoke the authority of the federal branch to exercise fiduciary powers. When such powers are revoked, the federal branch must surrender the trust permit previously issued by the OCC.

# Procedures: New Powers

### Filing the Application

**LIC/NE**

1.  Refers a foreign bank that requests instructions to this section of this booklet.

**Applicant**

2.  Submits to LIC/NE an application requesting permission to exercise fiduciary powers.

    An expedited application must contain

    - a statement requesting full or limited powers (limited powers must be specified). The statement should also indicate whether the foreign bank intends to exercise fiduciary

- powers under a different name or through an operating subsidiary. If the latter, the operating subsidiary must file an application for fiduciary powers.
- the location(s) in which the services would be offered.
- a statement that the capital and surplus of the foreign bank are not less than that required by state law for state banks, trust companies, and other corporations chartered by that state that exercise comparable fiduciary powers.
- sufficient biographical information on the proposed trust management personnel, including educational and professional credentials and a five-year employment history, emphasizing their trust experience and discussing their ability to perform the proposed activities.
- a discussion of any use of a dual officer or staff. Address any potential conflict of interest arising from their dual roles and how they will be managed.
- any other information that the OCC may require to process the application.

For a standard application, the following additional items are required:

- A written opinion of the bank's counsel that the proposed fiduciary activities do not violate applicable law, including citations.
- For branches licensed less than two years, an operating plan for the trust department that contains, at a minimum, projected number of accounts, projected volume of assets under management, services, and target market.

## Review

**LIC/NE**

3. Enters information into CATS.

4. Establishes official file to maintain all original documents.

5. Reviews application and any other relevant information about the foreign bank.

6. Determines if the foreign bank is an eligible foreign bank and qualifies for expedited review per 12 CFR 28.12(e)(5) and (f), and

   - if not eligible, prepares and sends a letter to the applicant, providing notice of standard processing within five business days of receipt of the application.
   - if eligible, acknowledges filing within five business days of receipt.

7. Within five business days, solicits comments from SO and other OCC divisions, as appropriate. Preliminary comments should be submitted to LIC/NE within 15 days from the request.

8. Requests clarification or additional information from applicant, as necessary, and prepares the Expedited Review Form or confidential memorandum. If analyst cannot make decision within 30 days, removes application from expedited processing. Sends

letter to applicant stating specific reason for removal from expedited processing and informs applicant not to proceed until the OCC decides the application.

## Decision

**LIC/NE**

9.  For expedited review, submits completed Expedited Review Form and a decision letter to the appropriate delegated official for decision.

    For standard review, prepares and forwards a confidential memorandum and decision letter recommending a decision to the delegated official.

10. Decides application under delegated authority or forwards the official file to HQ LIC for decision. If nondelegated, goes to step 14. Expedited applications must be decided within 30 days.

11. Notifies SO, IBS HQ, and applicant of the decision and sends a decision letter.

12. Makes CATS entries.

13. If application is denied, goes to step 23.

**HQ LIC**

14. As appropriate, makes CATS entries.

15. Reviews the file and all relevant information, makes a recommendation, and forwards the official file to the appropriate delegated official for decision.

16. Notifies LIC/NE of the decision.

17. Makes CATS entries.

18. Returns the official file to LIC/NE.

**LIC/NE**

19. Notifies SO and applicant of the decision. Sends letter to both.

20. If denied, goes to step 23.

**Applicant**

21. Notifies the OCC within 10 days following the commencement of fiduciary activities.

## Close Out

**LIC/NE**

22. Makes CATS entries to indicate that fiduciary powers are effective.

23. Reviews the file for completeness and forwards it to Central Records.

# Procedures: Surrender

## Submission

**Applicant**

1.  Arranges for a final audit of the fiduciary account.

2.  Submits to LIC/NE a certified copy of a resolution adopted by senior management of the foreign bank, stating its decision to surrender the fiduciary powers of the federal branch.

3.  Returns to LIC/NE the OCC's original trust permit.

## Review

**LIC/NE**

4.  After ensuring that the federal branch is relieved of all fiduciary duties, issues a notice certifying that the federal branch is no longer authorized to exercise fiduciary powers.

5.  Makes CATS entries to indicate that trust powers are no longer authorized.

6.  Notifies and consults with SO to ensure that branch has satisfied all fiduciary obligations.

## Close Out

**LIC/NE**

7.  Reviews the file for completeness and forwards it to Central Records.

# Voluntary Liquidation

The policies and procedures in this section apply to foreign banks seeking proposes to close their federally licensed operations and liquidate voluntarily. A voluntary liquidation occurs when the senior management of the foreign bank decides to discontinue the operations of all of its federal branches or agencies and proceeds with a plan of liquidation to terminate the activities of the foreign bank's offices. A foreign bank that proposes to liquidate voluntarily must comply with the requirements in 12 CFR 28.22, 12 CFR 5.48, and this booklet. The foreign bank must file a notice with the OCC and publish a notice of its intent to cease operations in accordance with 12 USC 182.

This section should be used together with other sections of this booklet and other booklets of the *Comptroller's Licensing Manual* as referenced in the "Introduction" section of this booklet. Users should also refer to the "Acquisitions" section of this booklet if the liquidation occurs in connection with a merger, acquisition, consolidation, or similar transaction. A foreign bank closing some, but not all, of its federal branches or agencies should follow the branch closing requirements outlined in 12 CFR 28.23. See the "Branch Closings" booklet of the *Comptroller's Licensing Manual* for guidance and procedures on closing a federal branch or agency.

## Key Policies

The OCC generally requires that the provisions of 12 USC 181 and 12 USC 182 be followed in a liquidation of a foreign bank's federal branches or agencies. A federal branch or agency in voluntary liquidation must make regular reports to the OCC until the liquidation process is completed and its operations are terminated. The OCC monitors voluntary liquidations to ensure compliance with applicable statutes. The OCC requires maintenance of a CED by the federal branch or agency until the voluntary liquidation and final dissolution of the federal branch or agency is completed.

## Summary of Process

Once a foreign bank decides to liquidate all of its federal branches or agencies, it should submit a notice to LIC/NE of its intent and publish notice in a local newspaper with general circulation. In general, the assets of the federal branch or agency should not be distributed until after the required public notice period has ended. During a voluntary liquidation, the federal branch or agency must comply with normal OCC reporting requirements. The federal branch or agency should maintain its books and records in accordance with accepted accounting principles. Additionally, the federal branch or agency must make annual filings on the progress of the liquidation and submit a Final Report of Liquidation upon its completion. Foreign banks seeking an expedited liquidation process, resulting from a merger, acquisition, consolidation, or similar transaction, should contact LIC/NE for specific requirements and further guidance.

Upon completion of liquidation, the foreign bank should return the federal branch or agency license(s) and, if applicable, its trust permit(s) to the OCC with its Final Report of Liquidation. It also must return all OCC reports of examination or certify that they have been destroyed. The OCC notifies the foreign bank when it deems that all of the requirements of voluntary liquidation have been met and the operations of all of its federal branches or agencies are finally dissolved. The OCC does not release the CED to the foreign bank until all necessary requirements are met.

# Specific Requirements

## Expedited Liquidation

A foreign bank seeking an expedited liquidation process should contact LIC/NE for guidance. The OCC permits expedited liquidation of a foreign bank's federal branches or agencies for

- acquisition transactions whereby an acquiring U.S. bank purchases all the assets and assumes all the liabilities of the foreign bank's federal branches or agencies, including all contingent liabilities; or
- consolidation of the foreign bank's offices in the United States.

These transactions allow the liquidating federal branch or agency to surrender its license and dissolve immediately after the acquisition or consolidation has been consummated.

Generally, an expedited liquidation process is available for acquisitions or consolidations if

- the foreign bank's senior managers have resolved to liquidate the operations of the federal branches or agencies.
- the foreign bank has notified LIC/NE of its plans.
- the acquiring bank or consolidating foreign bank certifies to the OCC that the ownership of all the assets and liabilities, including all contingent liabilities, of the liquidating foreign bank's federal branches or agencies have been transferred.
- the foreign bank has published notice of the intent to dissolve the federal branches or agencies after the acquisition or consolidation transaction. (See the "Public Notice" section of this booklet for more information.)

## Standard Voluntary Liquidation

A foreign bank that wishes to close all of its federal branches or agencies through a voluntary liquidation may do so according to the procedures in this section. The foreign bank must file a written notice with LIC/NE that includes

- a resolution, adopted by senior management of the foreign bank, to liquidate the federal branches or agencies.

- certification from senior management that states that total assets exceed total liabilities, including contingent liabilities of the federal branches or agencies.
- a plan of liquidation.
- the anticipated date of closure to the public.

## CED

Generally, the OCC authorizes the release of the CED to a foreign bank following the completion of a voluntary liquidation and final dissolution of the foreign bank's federal branches or agencies.

The OCC continues to monitor each branch or agency's termination process to ensure compliance with applicable statutes pertaining to voluntary liquidation and the CED. Generally, the CED is held on deposit until all of the federal branches' or agencies' liabilities have been resolved. Persons wishing to file claims after liquidation of all of the federal branches or agencies and return of the CED must make them against the foreign bank in the appropriate jurisdiction.

## Disposition of Assets

The liquidating agent liquidates the assets of all of the federal branches or agencies for the benefit, first, of its depositors and other creditors or claimants, and then of the foreign bank. The agent may not dispose of the assets of the federal branches or agencies to favor some creditors over others (unless entitled by law to do so). A liquidating agent may not dispose of the assets of each federal branch or agency, or transfer them to the foreign bank, until all depositors' and creditors' claims have been identified and evaluated.

## Examinations or Field Investigations

The OCC may perform regular and special examinations or field investigations of a federal branch or agency in liquidation until the claims of all creditors have been satisfied and the liquidation process is completed pursuant to 12 CFR 28.22 and 5.48. The foreign bank is responsible for the cost of any regular or special examinations conducted by the OCC during the voluntary liquidation phase of the branch or agency.

## Fiduciary Responsibilities

Whenever a federal branch exercising fiduciary powers is in voluntary liquidation, the liquidating agent shall liquidate fiduciary accounts in accordance with 12 USC 92a(j) and 12 CFR 9.

## Liquidating Agent

Senior management of the foreign bank must appoint a liquidating agent and publish notice of the intent to voluntarily liquidate and close the operations of all of its federal branches or

agencies, in accordance with 12 CFR 28.22(b) and 12 USC 182. The liquidating agent should reside in the United States during the liquidation process. Senior management of the foreign bank must continue to monitor each federal branch or agency and its liquidation through the liquidating agent.

The liquidating agent may be the general manager of a federal branch or agency, a management committee member of a federal branch or agency, or another responsible person designated by senior management. When applicable, the liquidating agent must post a bond in favor of all of the federal branches or agencies. After considering the nature and value of the assets to be liquidated, the bond must carry an amount deemed adequate by senior management of the foreign bank. The resolution adopted by senior management of the foreign bank must specify the dollar amount to be posted as a bond for the liquidating agent.

## Offshore Shell Branches

Before completion of a voluntary liquidation, the management and control of any offshore shell branch activity otherwise conducted through the federal branch or agency in liquidation must be transferred to other units of the foreign bank or terminated. The management and control by the federal branch or agency of any offshore shell branch activity ceases upon the completion of the liquidation and final dissolution of the federal branch or agency.

## Loan Production Offices

A federal branch that operates a loan production office must include it in the liquidation process of the federal branch.

## Public Notice

### Expedited Voluntary Liquidation

The public comment period for an expedited voluntary liquidation is 30 days, unless the OCC determines a shorter period is warranted. The notice must announce that the federal branch or agency is closing its operations and that creditors should present their claims for payment.

Notice of the application must be published in a newspaper of general circulation in the community in which the federal branch or agency is located. The public notice must be published three times, at intervals spaced throughout the 30-day comment period. The first publication should be on or about the date the application is filed with the OCC, but in no event more than three days before or after the date the application is filed. The applicant should submit to the OCC confirmation of the public notice as part of the voluntary liquidation notice.

## Standard Voluntary Liquidation

The foreign bank must publish daily for two months in a local newspaper notice of the impending closure of the federal branch or agency. If only weekly publication is available, the notice must be published for nine consecutive weeks. The notice must announce that the federal branch or agency is closing its operations and that creditors should present their claims for payment. The first publication of the liquidation notice should appear on or before the date the liquidation begins, and final publication should be before the date the federal branch or agency closes to the public.

# Reports

At the commencement of its liquidation, a federal branch or agency must submit to LIC/NE a report on its condition. This filing requirement is met by submitting to LIC/NE a Report of Assets and Liabilities of U.S. Branches and Agencies of Foreign Banks (Federal Financial Institutions Examination Council Form 002) and a report of all contingent liabilities as of the close of the last business day before the start of the liquidation. The Report of Assets and Liabilities must include a certified maturity schedule of all remaining liabilities, if any. The federal branch or agency in liquidation must continue to file the FFIEC Form 002, and its supplement, FFIEC Form 002S, if applicable, quarterly until the liquidation is complete.

Additionally, the liquidating agent for the federal branch or agency must submit quarterly to LIC/NE a Report of Progress of Liquidation, unless requested to file it more often, until the liquidation is complete and the federal branch or agency is fully dissolved. A copy of the report must be provided to SO.

# Other

Additional requirements apply if the voluntary liquidation involves an FDIC-insured federal branch. In such cases, the foreign bank should refer to 12 USC 1818(a)(6) and (q) and 12 CFR 307. The foreign bank should contact LIC/NE for guidance and instructions. If the liquidation occurs in connection with a merger, acquisition, consolidation, or other similar transaction of federal branch or agency operations in the United States, expedited procedures may be available.

# Procedures

## Inquiry

**LIC/NE**

1. Refers a foreign bank that requests instructions to this section of this booklet. Provides further guidance if the liquidating federal branch

   - has FDIC-insured deposits, or

- is being liquidated in connection with an acquisition or consolidation transaction when abbreviated procedures may be applicable.

If a foreign bank is closing some, but not all, of its federal branches or agencies, refers the foreign bank to the "Branch Closings" booklet of the *Comptroller's Licensing Manual*.

## Filing the Notice

**Applicant**

2. Provides a written notice to LIC/NE of its intention to liquidate voluntarily and close all of its federal branches or agencies. The notice should be signed by a senior officer of the foreign bank having the appropriate delegated authority to file such notice. The notice should include

- a resolution adopted by senior management of the foreign bank to liquidate all of the federal branches or agencies and appoint a liquidating agent. Resolution must specify the dollar amount to be posted as a bond for the liquidating agent.
- certification by senior management of the foreign bank stating that, as of the commencement date of liquidation, the total assets of all of the federal branches or agencies would exceed its liabilities, including contingent liabilities.
- an acceptable plan of liquidation.
- the anticipated date by which all of the federal branches or agencies would be closed to the public.

## Public Notice

**Applicant**

3. Publishes a notice of liquidation and submits a sealed certificate of publication to LIC/NE. For a standard liquidation, the notice must be published daily for two months in a local newspaper in which the federal branch or agency is located. If only weekly publication is available, the notice must be published for nine consecutive weeks. For an expedited liquidation, the notice must be published three times, at intervals, during a 30-day comment period.

## Processing the Notice

**LIC/NE**

4. Acknowledges receipt of the notice of liquidation and notifies SO.

5. Enters required information into CATS. An effective date is not entered until the final liquidation report is received.

6. Establishes the official file to maintain all original documents relating to the liquidation.

7. Reviews the proposed liquidation plan, forwards a copy to SO, and checks for compliance with 12 CFR 28.22.

## Liquidation Process

### Liquidating Agent or Committee

8. Posts a bond in favor of all of the federal branches or agencies. Considering the nature and value of assets to be liquidated, the bond must carry an amount deemed adequate by senior management of the foreign bank.

9. Sends LIC/NE and SO copies of the Report of Assets and Liabilities of U.S. Branches and Agencies of Foreign Banks (FFIEC 002) and its supplement (FFIEC 002S), if applicable, as of the close of the last business day before the start of liquidation. The report should include a certified maturity schedule of liabilities.

10. Carries out the liquidation process. Submits to LIC/NE and SO a copy of the quarterly liquidation progress report of each branch's or agency's assets and liabilities, including a maturity schedule of remaining liabilities. The report should include details of payments of all liabilities and the status of pending litigation or other court-ordered liabilities and be kept on file until the liquidation is complete.

### LIC/NE

11. May require an examination or field investigation at any time until the claims of all creditors have been satisfied.

12. Notifies the foreign bank or liquidating agent if an examination or field investigation is required. If applicable, sends a request letter to the liquidating agent, specifying the issues to be considered in an examination or field investigation.

## Conclusion of Liquidation

### Applicant

13. Upon completion of the liquidation process, submits to the OCC a Final Report of Liquidation and

   - all OCC reports of examination (or certification that all OCC reports have been destroyed), the federal branch or agency License Certificate(s), and trust permit(s) (if applicable).
   - certification by senior management of the foreign bank stating that all claims have been fully paid or settled and that all of the federal branches or agencies have ceased operations.

- a copy of the agreement with the landlord canceling the lease(s) (if applicable).
- certification that all FDIC requirements have been met in addition to a copy of the FDIC's termination of insurance letter, if the voluntary liquidation involves an insured federal branch.

**LIC/NE**

14. Enters the effective date of the Final Report of Liquidation into CATS. Entering the effective date of the liquidation into CATS causes the liquidating federal branch or agency to be placed on inactive status in the OCC's bank structure records. Publication in the Weekly Bulletin constitutes required OCC notice to other federal agencies.

15. Sends a letter to the foreign bank and a copy to SO acknowledging receipt of the Final Report of Liquidation, receipt of all required documents, and completion of the liquidation.

16. After consultation with SO and District Counsel, sends a letter to the depository bank authorizing release of the CED to the foreign bank, with a copy to the foreign bank and SO. This usually occurs within 30 days of receipt of the Final Report of Liquidation.

## Close Out

**LIC/NE**

17. When all required steps are completed, closes out the file and forwards it to Central Records. Informs SO to close out all supervisory files and forward them to Central Records.

# Capital Equivalency Deposit

The policies and procedures in this section apply to the establishment of CED accounts for a federal branch or agency.

## Key Policies

A CED serves the public interest, protects depositors, and helps maintain the federal branch or agency's sound financial condition. In the event of a liquidation of a federal branch or agency, CED assets may be used to pay appropriate claims, if necessary. All federal branches and agencies must establish a CED account before opening for business. The CED must be maintained in accordance with the requirements set forth in this section and 12 CFR 28.15.

## Summary of Process

Per 12 USC 3102(g) and 12 CFR 28.15, a federal branch or agency is required to establish and maintain a CED account with a Federal Reserve System member bank ("depository bank") in an amount equal to at least five percent of the total liabilities of the federal branch or agency, including acceptances but excluding accrued expenses, intercompany liabilities, liabilities of an international banking facility (IBF) to third parties and of a federal branch to an IBF, liabilities from repurchase agreements (on a case-by-case basis), and any amounts due to head office.[9]

The foreign bank must deposit its CED into an account in a bank that is located in the state in which the federal branch or agency is located. A member bank headquartered in another state but operating a branch in the state in which the federal branch or agency is located qualifies as a CED depository bank. A foreign bank with federal branches or agencies in more than one state may consolidate some or all of its CEDs into one such account, but the total amount of the consolidated CED continues to be calculated on an office-by-office basis. The OCC must approve the depository bank if it is a national bank, and the FRB must approve if the depository bank is a state member bank.

The CED must consist of any of the following eligible assets:

- Investment securities eligible for investment by national banks.
- U.S. dollar deposits payable in the United States or any other Group of 10 country.
- Certificates of deposit, payable in the U.S., and bankers' acceptances. The issuer of the certificate of deposit or banker's acceptance must have an adequate capacity to meet financial commitments for the projected life of the asset or exposure.
- Repurchase agreements.

---

[9] While the statute requires the CED to be in an amount that is not less than the greater of (1) the capital required to organize a national bank at the same location, or (2) 5 percent of the federal branch or agency's total liabilities, as a practical matter, only the latter criteria is relevant. There is no longer a statutory minimum capital requirement to organize a national bank in the National Bank Act.

- Similar assets the OCC deems eligible.

A foreign bank applicant establishing its CED is advised to contact LIC/NE for information on any relevant changes in the types of assets considered eligible for inclusion in the CED.

A CED agreement must be in place before an initial or additional federal branch or agency opens for business or before a state-licensed branch or agency converts to a federal license. This agreement is generally entered into by the foreign bank, the depository bank, and the OCC. Certain eligible foreign banks, however, may no longer be required to pledge assets to the OCC or to have the depository bank as a party to the agreement. The depository bank still must be furnished with a copy of the signed agreement and acknowledge its receipt. In addition, an eligible foreign bank must continue to hold the assets in a depository bank segregated in a safekeeping account and free of any liens.

The OCC generally provides written notice to those foreign banks that are deemed eligible foreign banks for purposes of establishing and maintaining their CED accounts. If the OCC does not advise foreign banks that they are eligible, the banks may make a written request to the OCC to be considered for such status.

The CED agreement governs the operation of the account, sets forth certain conditions, and stipulates that the instruments be held for the benefit of the OCC. A federal branch or agency needs the OCC's prior approval to reduce the aggregate value of the assets in the account. Eligible foreign banks that are not required to pledge the CED to the OCC, however, do not need prior approval to reduce the value of their CED. Instead, these foreign banks are responsible for managing their CED accounts and ensuring that eligible assets are deposited in the depository bank in an amount that satisfies their CED requirement.

The foreign bank collects the income on the eligible instruments and is permitted by the agreement to exchange funds or securities on a dollar-for-dollar basis without prior OCC approval.

If the OCC requires that the depository bank be a party to the agreement, authorized officers of the foreign and depository banks should complete and sign three original CED agreements and forward them to LIC/NE. The OCC retains one original and sends the two remaining documents to the foreign bank. The foreign bank is then responsible for providing one copy of the agreement to the depository bank.

Once established, the CED must be maintained in accordance with the requirements set forth in this section and 12 CFR 28.15. Requests for CED account withdrawals, changes in depository banks, or other matters affecting the CED account may require prior notice and should be discussed with the SO responsible for supervising the federal branch or agency.

# Closing of Account

With the OCC's prior approval, a foreign bank may close the CED account of its federal branch or agency after it voluntarily liquidates or converts from a federal to state license. The closing of the account follows established OCC procedures. (See the "Voluntary Liquidation" and "Other Changes in Activities or Operations" sections of this booklet.)

# Procedures

## Request

**LIC/NE**

1. Refers a federal branch or agency that requests instructions to this section of this booklet.

2. Discusses eligible foreign bank criteria and the qualification criteria for a depository bank consolidating CEDs, and identifies issues that could affect OCC processing.

**Applicant**

3. Consults with LIC/NE about the proposed depository bank, eligible foreign bank qualification, and consolidating CEDs.

4. Submits a written request to LIC/NE along with three CED agreements, each originally signed by representatives of the foreign bank and the depository bank.

5. For a foreign bank with existing offices in the United States, submits a request to be deemed an eligible foreign bank.

6. For a foreign bank with federal branches or agencies in more than one state and plans to consolidate its CEDs into one account, submits a request to consolidate its CEDs.

## Processing the Request

**LIC/NE**

7. Verifies that the proposed depository bank is a member bank of the Federal Reserve System and has an office in the same state as the federal branch or agency. If not, informs the federal branch or agency it must select a different depository bank. If the foreign bank is consolidating its CEDs, consults with District Counsel on the eligibility of the proposed depository bank.

8. Determines if there are any other reasons the proposed depository bank should not be approved.

9. If the proposed depository bank is a state member bank, consults with the appropriate FRB.

   For eligible foreign bank determination, consults with SO to determine if the foreign bank qualifies as an eligible foreign bank.

## Decision

**LIC/NE**

10. Sends to the federal branch or agency two CED agreements signed by all parties. One copy should be retained by the federal branch or agency and the other forwarded to the depository bank. The OCC retains one original signed copy for its official file.

    If a foreign bank is deemed an eligible foreign bank, sends written notice to the foreign bank with three copies of the appropriate CED agreement for signature by the foreign bank and acknowledgement by the depository bank.

    If a foreign bank is consolidating its CED agreements, sends three copies of a consolidated CED agreement to the foreign bank for signature by representatives from the foreign bank and the depository bank.

## Close Out

**LIC/NE**

11. Makes CATS entries and files documents in the federal branch or agency files.

# Other Changes in Activities or Operations

This section describes the OCC's policies and procedures not addressed elsewhere in this booklet for the following changes in activities or operations of a foreign bank operating a federal branch or agency:

- Changes in operations:
  – Corporate title.
  – Mailing address of the federal branch or agency.
  – Home state designation of the foreign bank.
  – Change in control of the foreign bank.
- Changes in activities:
  – Establishment of a loan production office.
  – Noncontrolling equity investment.
  – Acquisition or establishment of an operating subsidiary of a federal branch or agency, or conducting a new activity in an existing operating subsidiary of a federal branch or agency.
- Conversion to a state branch, state agency, or representative office.

## Summary of Process

A foreign bank must provide written notice within 10 days of the effective date of changes in title, mailing address, or home state designation to the Director for District Licensing, Northeastern District, Office of the Comptroller of the Currency, 340 Madison Ave., Fifth Floor, New York, NY 10017. Notices for changes in control should be sent to the same address within 14 calendar days after the foreign bank becomes aware of the change. Conversion to a state-licensed branch or agency requires prior notice to the OCC, generally, at the time the application to convert is filed with the state.

The general manager of a federal branch or agency should sign notices submitted to the OCC.

## Specific Requirements

## Change in Corporate Title

The notice of the change in the corporate title of the foreign bank must include the current and the former corporate title.

## Change in Mailing Address

A foreign bank must notify the OCC whenever it changes the mailing address of its federal branch or agency. The OCC also requires that the foreign bank notify them when it changes the mailing address of its corporate headquarters. A separate notice is not required if a

change in address of a federal branch or agency results from a corporate application with the OCC, such as a relocation.

# Change in Home State Designation

A foreign bank changing its home state designation must give the OCC notice of the change. A foreign bank may meet this requirement by providing to the OCC a copy of a notice or application to the FRB or an FRB determination for a change in home state designation.

# Change in Control

A foreign bank is required to provide a written notice to the OCC within 14 calendar days after the foreign bank becomes aware of the change in control, provided that after the change in control the foreign bank and its federal branches or agencies continue to operate in the same corporate form. A change in control notice is required when the acquiring entity, person, or group of entities or persons acting in concert would (1) directly or indirectly control or have the power to vote at least 25 percent of any class of voting securities of the foreign bank or (2) controls in any manner the election of a majority of the directors or trustees of the foreign bank. In such case, the foreign bank needs only to provide the OCC with a copy of any filing submitted to the FRB, as provided in 12 CRF 28.12(k). The OCC may request supplemental information as deemed appropriate.

An entity, person, or group of persons proposing to acquire control of a foreign bank operating a federal branch or agency is encouraged to contact LIC/NE.

# Loan Production Office

A federal branch may establish lending offices, make credit decisions, and engage in other representational activities at a site other than a federal branch office in accordance with 12 CFR 7.1003–1005.

# Noncontrolling Equity Investments

A well-capitalized and well-managed federal branch may make noncontrolling equity investments subject to the requirements of 12 CFR 5.36. (See the "Investment in Subsidiaries and Equities" booklet of the *Comptroller's Licensing Manual*.)

# Operating Subsidiaries

A federal branch or agency may acquire, establish, or maintain an operating subsidiary (pursuant to the requirements in 12 CFR 5.34) as if it were a national bank. (See the "Investment in Subsidiaries and Equities" booklet of the *Comptroller's Licensing Manual*.)

Case 1:17-cv-08691-SHS   Document 45-1   Filed 05/26/18   Page 91 of 105

Version 1.2                                   **Other Changes in Activities or Operations** > Procedures:
                                              Change in Corporate Title, Mailing Address, or Home State Designation

# Conversion to State-Licensed Operation

When a foreign bank decides to convert its federal branch or agency to a state-licensed operation, it must file written notice with the OCC before conversion. The notice must include a resolution from senior management of the foreign bank to surrender the federal branch or agency license and any trust powers previously granted by the OCC. The anticipated date of the conversion must also be provided. Before conversion, a federal branch or agency must return the federal branch or agency license and, if applicable, its fiduciary powers permit. The federal branch or agency must also either return all reports of examination or certify that they have been destroyed.

The conversion is not deemed final until the foreign bank obtains any appropriate regulatory approvals and returns official OCC documents. Upon conversion to a state-licensed operation and compliance with the OCC's requirements for the return of documents, the OCC will authorize the release of the CED to the foreign bank.

# Procedures: Change in Corporate Title, Mailing Address, or Home State Designation

**LIC/NE**

1. Refers a foreign bank that requests instructions to this section of this booklet.

**Applicant**

2. Submits a notice of the change, including the effective date, to LIC/NE within 10 days of the effective date. The OCC accepts a copy of any notice or application submitted to the FRB or state supervisors.

## Processing the Notice

**LIC/NE**

3. Establishes an official file that contains all original documents.

4. Sends a letter to the foreign bank acknowledging receipt and copies SO.

5. Makes CATS entries.

## Close Out

6. Sends official file to Central Records.

# Procedures: Change in Control

**LIC/NE**

1. Refers a foreign bank that requests instructions to this section of this booklet.

**Applicant**

2. Submits a notice of a change in its control to LIC/NE within 14 calendar days after the foreign bank becomes aware of the change in control. The OCC accepts a copy of any notice or application submitted to the FRB. If available, a copy of the FRB's decision for the change in control or ownership should be attached to the notice.

## Processing the Notice

**LIC/NE**

3. Establishes an official file that contains all original documents.

4. Makes CATS entries.

5. Reviews the material submitted and determines whether the new controlling owner has the financial capacity and integrity required by the OCC of an owner of a federal branch or agency. Performs background checks as deemed appropriate. (See the "Background Investigations" booklet of the *Comptroller's Licensing Manual.*)

6. Forwards any pertinent material submitted to the SO, District Counsel, IBS HQ, Enforcement and Compliance, and the FRB, as appropriate. Discusses with them any concerns, as appropriate.

7. Requests additional information, if necessary, to understand fully the operations and structure of the new owner. Multiple-tier ownership structures may necessitate obtaining financial and structural information on other legal entities.

8. Sends a letter to the foreign bank acknowledging receipt and copies SO.

## Close Out

9. Sends official file to Central Records.

# Procedures: Operating Subsidiary and Noncontrolling Investments

## After-the-Fact Notice

### Prefiling

**LIC/NE**

1. For an operating subsidiary, refers a federal branch or agency that requests instructions to 12 CFR 5.34, the "Investment in Subsidiaries and Equities" booklet of the *Comptroller's Licensing Manual*, and to this section of this booklet. For a noncontrolling investment, refers a federal branch that requests instructions to 12 CFR 5.36, the "Investment in Subsidiaries and Equities" booklet, and to this section of this booklet.

2. For an operating subsidiary, consults with the FRB to determine if the FRB has any issues with the proposed operating subsidiary or with the federal branch or agency filing an after-the-fact notice.

### Filing the Notice

**Applicant**

3. Submits a complete after-the-fact notice for an operating subsidiary or noncontrolling investment to LIC/NE. The notice must provide the information required in the operating subsidiary and noncontrolling investments procedures sections of the "Investment in Subsidiaries and Equities" booklet of the *Comptroller's Licensing Manual*.

4. The federal branch or agency must certify in the notice that it is well-capitalized and well-managed pursuant to 12 CFR 4.7(b)(1)(iii) and 5.34(d)(3)(ii). (See the "Glossary" section of this booklet.)

### Review

**LIC/NE**

5. Initiates and enters information into CATS.

6. Establishes the official file to maintain all original documents.

7. Reviews the notice and verifies that

   - for an operating subsidiary, the federal branch or agency is well-capitalized and well-managed; for noncontrolling investments, the federal branch is well-capitalized and well-managed.

- for an operating subsidiary, the description of the activity meets the regulatory criteria under 12 CFR 5.34(e)(5)(v) and the "Operating Subsidiary Guidelines" in the appendix of the "Investment in Subsidiaries and Equities" booklet of the *Comptroller's Licensing Manual*; for noncontrolling investments, the description of the activity meets the regulatory criteria of 12 CFR 5.34(e)(5)(v) and 5.36(e).
- it contains all the required notice criteria in step 3 and from the "Investment in Subsidiaries and Equities" booklet of the *Comptroller's Licensing Manual*.

8.  If the activity raises any question of permissibility, forwards a copy of the notice to District Counsel.

9.  If the notice is sufficient, sends an acknowledgment letter to the federal branch or agency and a copy to SO.

    If the notice relates to an investment in a company engaged in insurance activities (including a broker-dealer selling annuities that are considered insurance under state law), prepares a cover letter and forwards a copy of the notice to the insurance commissioner of the state in which the company holds a resident license or charter, as applicable.

    Proceeds to step 11.

10. If the notice is insufficient or filed incorrectly, contacts the federal branch or agency for clarification or the missing information.

11. Reviews any additional information. If the notice is sufficient, sends an acknowledgment letter to the federal branch or agency, providing a copy to SO.

## Close Out

**LIC/NE**

12. Makes CATS entries.

13. Reviews the file for completeness and forwards it to Central Records.

# Application

## Prefiling

**LIC/NE**

1.  For an operating subsidiary, refers a federal branch or agency that requests instructions to 12 CFR 5.34, the "Investment in Subsidiaries and Equities" booklet of the *Comptroller's Licensing Manual*, and this section of this booklet. For a noncontrolling investment, refers a federal branch that requests instructions to 12 CFR 5.36, the "Investment in Subsidiaries and Equities" booklet, and this section of this booklet.

2. Arranges a prefiling meeting with representatives of the federal branch or agency, if appropriate. Invites SO, District Counsel, and HQ LIC.

3. If any prefiling discussions or meetings reveal policy, legal, supervisory, or other novel issues, contacts HQ LIC to decide

   - if the application should be filed with HQ LIC (broad policy or legal issues).
   - if specific issues should be separated from the application to be handled by HQ LIC, while the application continues to be processed by LIC/NE.
   - when the filing should be forwarded to HQ LIC.

4. For a proposed operating subsidiary, consults with the FRB to determine if the FRB has any preliminary issues with the proposal.

5. Prepares a memorandum of policy or legal issues identified during the meeting and retains it in a pending file.

## Filing the Application

**Applicant**

6. Submits a complete operating subsidiary or noncontrolling investment application to LIC/NE. The application must provide the information required in the operating subsidiary and noncontrolling investment procedures sections of the "Investment in Subsidiaries and Equities" booklet of the *Comptroller's Licensing Manual*.

## Review

**LIC/NE**

7. Initiates and enters information into CATS.

8. Establishes the official file to maintain all original documents.

9. Sends a letter within five business days of receipt, notifying the federal branch or agency that its filing will be processed under the standard review process and that the activity cannot begin until the OCC provides written approval for the operating subsidiary or noncontrolling investment.

10. Reviews the filing and any other relevant information about the federal branch or agency. If the filing presents novel, legal, or policy issues, repeats step 3 and forwards a memo to HQ LIC.

11. Within five business days of receipt, notifies SO, District Counsel, and other OCC divisions, as appropriate, of the filing and solicits comments with a preliminary response required within 15 days after the filing date.

Case 1:17-cv-08691-SHS    Document 45-1    Filed 05/26/18    Page 96 of 105

Version 1.2                                    **Other Changes in Activities or Operations** > Procedures:
                                                Operating Subsidiary and Noncontrolling Investments

12. Requires the federal branch or agency to submit additional information or legal analysis, including a specific date for reply, if the activity of the proposed subsidiary or noncontrolling investment is unclear, the legality is in doubt, or additional information is necessary to make a decision about the permissibility of the proposed investment.

## Decision

**LIC/NE**

13. For a proposed operating subsidiary, contacts the FRB to discuss any issues about the application and any conditions contemplated by the FRB for its approval.

14. Prepares the confidential memorandum and decision letter, recommending a decision to the appropriate delegated official.

15. Decides application under delegated authority or forwards the official file to HQ LIC for decision. If referred to HQ LIC, proceeds to step 25.

16. For an operating subsidiary, notifies the federal branch or agency's representative and the FRB by telephone after the decision and sends the federal branch or agency a decision letter, with copies to SO and the FRB. If applicable, decision letter will include any written conditions or supervisory concerns.

17. If the application relates to an investment in a company engaging in insurance activities, forwards a copy of the application with a brief cover letter to the insurance commissioner of the state in which the company holds a resident license or charter, as applicable. Insurance activities include a broker or dealer selling annuities that are considered insurance under state law.

18. If denied, proceeds to step 25.

**HQ LIC**

19. Reviews the file and all relevant information and solicits comments from other OCC divisions, as appropriate.

20. Prepares and sends the confidential memorandum and decision letter, recommending a decision to the appropriate delegated official.

21. After decision, notifies LIC/NE, the federal branch or agency's representative by telephone of the decision and sends the federal branch or agency a decision letter, with a copy to SO. For an operating subsidiary, also notifies and provides copy of decision letter to the FRB. If applicable, decision letter will include any written conditions or supervisory concerns.

22. Makes CATS entries.

23. For approved and conditionally approved filings, returns the official file to LIC/NE for additional processing.

24. If denied, proceeds to step 25.

**Close Out**

**LIC/NE**

25. Makes CATS entries to close filing.

26. Reviews the file for completeness and forwards it to Central Records.

# Procedures: Conversion to a State-Licensed Operation

## Inquiry

**LIC/NE**

1.  Refers a foreign bank that requests instructions to this section of this booklet. Promptly advises SO about the foreign bank's inquiry.

## Filing the Notice

**Applicant**

2.  Submits to LIC/NE a notice of its intent to convert the federal branch or agency to a state-licensed operation and the anticipated date of the conversion. The notice must be filed in advance of the conversion and signed by a representative of the foreign bank having the appropriate authority to file such a notice. The notice should include

    - a resolution adopted by senior management of the foreign bank that agrees to surrender the federal branch or agency license, trust permit, if applicable, and reports of examinations or certification that the reports have been destroyed.
    - a copy of the conversion application filed with the state.
    - reason(s) for the conversion and the proposed effective date.

## Processing the Notice

**LIC/NE**

3.  Establishes the official file to maintain all original documents.

4.  Sends a letter to the foreign bank acknowledging receipt and copies SO.

5. Makes CATS entries.

## Applicant

6. Upon approval from the state to convert, submits to the OCC

- a copy of the approval letter from the state to convert.
- all OCC reports of examination, or certification that all OCC reports have been destroyed; the federal branch or agency license certificate; and the trust permit, if applicable.
- the effective date of the conversion.
- a request for release of the CED.

# Close Out

## LIC/NE

6. Enters the effective date of the conversion into CATS.

7. Sends a letter to the foreign bank and a copy to SO acknowledging receipt of other regulatory approvals and the return of required documents.

8. Sends a letter to the depository bank authorizing the release of the CED to the foreign bank, with a copy of the letter to the foreign bank.

9. Sends official file to Central Records. Informs SO to close out all supervisory files and forward them to Central Records.

# Glossary

**Capital equivalency deposit (CED):** A deposit required for a federal branch or agency pursuant to section 4 of the IBA (12 USC 3102(g)) and 12 CFR 28.15. A CED serves the public interest, protects depositors, and helps maintain the federal branch or agency's sound financial condition. In the event of a liquidation of a federal branch or agency, CED assets may be used to pay appropriate claims, if necessary. All federal branches and agencies must establish a CED account before opening for business. The CED must be maintained in accordance with the requirements set forth in this section and 12 CFR 28.15. Upon the opening of a federal branch or agency, a foreign bank must have U.S. dollar deposits or investment grade securities on deposit with a Federal Reserve System member bank in the state in which the federal branch or agency is located. A member bank headquartered in another state, but operating a branch located in the state in which the federal branch or agency is located, qualifies as a CED depository institution. Foreign banks operating federal branches or agencies in more than one state may consolidate some or all of their CEDs into one account.

**Commercial lending company:** Any organization, other than a bank or an organization operating under section 25 of the Federal Reserve Act (12 USC 601-604a), organized under the laws of any state, that maintains credit balances permissible for an agency and engages in the business of making commercial loans. (This includes any company chartered under Article XII of the banking law of the State of New York.)

**Comprehensive consolidated supervision (CCS):** Supervision of a foreign bank in such a manner that its home country supervisor receives sufficient information on the worldwide operations of the foreign bank. In deciding whether a foreign bank is subject to CCS, the FRB determines whether the information received allows the home country supervisor to assess the foreign bank's overall financial condition and compliance with laws and regulations.

**Control:** Indirect or direct control or power to vote 25 percent or more of any class of voting securities of another entity, or control in any manner of the election of a majority of the directors or trustees of another entity.

**Conversion:** One of the following actions:

- Conversion of a state branch or state agency operated by a foreign bank, or a commercial lending company controlled by a foreign bank, into a federal branch, limited federal branch, or federal agency.
- Conversion of a federal agency or a limited federal branch to a federal branch.

**Edge Corporation:** A corporation organized under section 25A of the Federal Reserve Act, 12 USC 611-631.

**Eligible foreign bank:** Described in 12 CFR 28.12(f), by which each federal branch and agency of the foreign bank, or in 12 CFR 28.11(f)(4), by which each state branch and agency

- has a composite rating of "1" or "2" under the interagency rating system for U.S. branches and agencies of foreign banks (see the "ROCA" definition in this "Glossary" section).
- is not subject to a cease and desist order, consent order, formal written agreement, prompt corrective action directive or, if subject to such an order, agreement, or directive, is informed in writing by the OCC that the federal branch or agency may be treated as an eligible foreign bank.
- has, if applicable, a CRA rating of "outstanding" or "satisfactory."

**Enhanced Prudential Standards:** Described in 12 CFR 252, by which bank holding companies and foreign banking organizations with total consolidated assets of $50 billion or more will establish certain standards for liquidity, risk management and capital. 12 CFR 252 also requires a foreign banking organization with a significant U.S. presence to establish an intermediate holding company over its U.S. subsidiaries (excludes a federal branch or agency). (Updated 7/15/2015)

**Establish a federal branch or agency:** One of the following actions:

- Open and conduct business through an initial or additional federal branch or agency.
- Acquire directly or indirectly through merger, consolidation, or similar transaction with another foreign bank, the operations of a federal branch or agency that is open and conducting business.
- Acquire a federal branch or agency through the acquisition of a foreign bank subsidiary that would cease to operate in the same corporate form following the acquisition.
- Convert a state branch or agency operated by a foreign bank, or a commercial lending company controlled by a foreign bank, into a federal branch or agency.
- Relocate a federal branch or agency within a state or from one state to another.
- Convert a federal agency or a limited federal branch into a federal branch.

**Federal agency:** An office or place of business, licensed by the OCC and operated by a foreign bank in any state, that may engage in the business of banking—including maintaining credit balances, cashing checks, and lending money—but may not accept deposits or exercise fiduciary powers.

**Federal branch:** An office or place of business, licensed by the OCC and operated by a foreign bank in any state, that may engage in the business of banking, including accepting certain deposits.

**Foreign bank:** An organization organized under the laws of a foreign country, or a territory of the United States (Puerto Rico, Guam, American Samoa, or the Virgin Islands), that engages directly in the business of banking in a foreign country.

**Group of 10:** Group of countries that have agreed to participate in the General Arrangements to Borrow. Member banks coordinate banking industry supervision through the Bank for International Settlements and monetary policy through the International Monetary Fund.

Founding members are Belgium, Canada, France, Germany, Italy, Japan, the Netherlands, Sweden, the United Kingdom, and the United States. Switzerland has joined as a member.

**Home state:** The state in which a foreign bank has a branch, agency, subsidiary commercial lending company, or subsidiary bank. If a foreign bank has an office in more than one state, the home state is selected by the foreign bank, or, in default of such selection, the state is selected by the FRB.

**Limited federal branch:** A federal branch that accepts only those deposits permissible for an Edge Corporation to receive.

**ROCA:** Rating system used by U.S. bank regulators to rate U.S. branches and agencies of foreign banking organizations. The acronym stands for risk management, operational controls, compliance, and asset quality. The individual components and the overall or composite ROCA rating are based on a scale from 1 to 5 in ascending order of supervisory concern. Thus, 1 represents the lowest level of concern and 5 the highest.

**Short-distance relocation:** Moving of a federal branch or agency within

- a 1,000-foot radius of the site if the federal branch or agency is located within a central city of a Metropolitan Statistical Area (MSA) designated by the Office of Management and Budget.
- a one-mile radius of the site if the federal branch or agency is not located within a central city but is located within an MSA.
- a two-mile radius of the site if the federal branch or agency is not located within an MSA.

# References

**Bank Secrecy Act**
| | |
|---|---|
| Law | 31 USC 5318 |
| Regulations | 31 CFR Part 103, et seq. |

**Capital Equivalency Deposit**
| | |
|---|---|
| Law | 12 USC 3102(g) |
| Regulation | 12 CFR 28.15 |

**Capital Requirements**
| | |
|---|---|
| Law | 12 USC 3102 |
| Regulations | 12 CFR Part 3, 28.14, and 28.20 |

**Change in Corporate Title**
| | |
|---|---|
| Law | 12 USC 3102 |
| Regulation | 12 CFR 28.17(a) |

**Change in Home State Designation**
| | |
|---|---|
| Law | 12 USC 3103(c) |
| Regulations | 12 CFR 28.11(n) and 28.17(d) |

**Change in Location—Policy and Procedures**
| | |
|---|---|
| Laws | 12 USC 30(b) and 3102 |
| Regulations | 12 CFR 5.30, 5.40, and 28.12(e)(1) |

**Change in Mailing Address**
| | |
|---|---|
| Laws | 12 USC 3101 et seq. |
| Regulation | 12 CFR 28.17(b) |

**Change in Ownership or Control**
| | |
|---|---|
| Laws | 12 USC 3102, 3105, and 3108(a) |
| Regulations | 12 CFR 28.11(d) and 28.25 |

**Conversion to State-Licensed Branch, Agency, or Representative Office**
| | |
|---|---|
| Laws | 12 USC 3101 et seq. and state law |
| Regulations | 12 CFR 5.70 and 28.17(c) |

**Corporate Powers and Investment Securities**
| | |
|---|---|
| Laws | 12 USC 24 and 3102 |
| Regulations | 12 CFR Part 1 and 28.13(a) |

**Establish a Federal Agency or Branch**
| | |
|---|---|
| Law | 12 USC 3102 |
| Regulations | 12 CFR 5.70, 28.11(f), and 28.12 |

**Examinations**
Laws                                            12 USC 161, 3102(b), and 3108(a)
Regulations                                           12 CFR 7.4000 and 28.18(c)

**Expedited Review**
Laws                                                         12 USC 3101 et seq.
Regulations                                           12 CFR 5.13 and 28.12(e)

**Failing to File Progress Reports**
Laws                                                  12 USC 164 and 3101 et seq.
Regulations                                              12 CFR 28.18 and 28.19

**Federal Branches and Agencies of Foreign Banks**
Laws                                                          12 USC 3101-3111
Regulations                                           12 CFR 5.70 and Part 28

**Fiduciary Powers**
Laws                                                      12 USC 92a and 3102
Regulations                              12 CFR 5.26, 28.12(e)(5), and Part 9

**Fiduciary Powers of Liquidating Agent**
Laws                                              12 USC 92(a)(i) and 3101 et seq.
Regulation                                                       12 CFR Part 9

**Fraudulent Statements**
Law                                                                18 USC 1001

**International Banking Act**
Laws                                                         12 USC 3101 et seq.
Regulations                                           12 CFR 5.70 and Part 28

**Interstate Branching**
Laws                                                  12 USC 3102(h) and 3103
Regulation                                                      12 CFR 28.12

**Liquidation Reports**
Laws                                                      12 USC 181 and 3102
Regulations                                           12 CFR 5.48 and 28.22(c)

**National Environmental Policy Act**
Law                                                                42 USC 4321

**National Historic Preservation Act**
Law                                                              16 USC 470(f)

**Notice of Filing**

| | |
|---|---|
| Laws | 12 USC 93(a) and 3101 et seq. |
| Regulations | 12 CFR 5.8 and 5.70 |

**Public Comments and Hearings**

| | |
|---|---|
| Regulations | 12 CFR 5.10 and 5.11 |

**Requirements and Procedures for Liquidation and Dissolution**

| | |
|---|---|
| Laws | 12 USC 181, 182, and 3101 et seq. |
| Regulations | 12 CFR 5.48, 9.16 and 28.22 |

**Termination of Insurance**

| | |
|---|---|
| Laws | 12 USC 1818(a)(2), (p) and (q) |
| Regulation | 12 CFR Part 307 |

**Theft, Embezzlement, or Misapplication**

| | |
|---|---|
| Law | 18 USC 656 |
| Regulation | 12 CFR Part 19 |

# Table of Updates Since Publication

| Version 1.0: Published November 19, 2014 | | | |
|---|---|---|---|
| **Version number** | **Date** | **Reason** | **Affected pages** |
| 1.1 | July 15, 2016 | Updated to reflect current procedures and organizational structure. | 11, 15, 19, 23, 27, 30, 41, 50–51, 54, 95, |
| 1.2 | October 27, 2017 | Further clarified statutory framework and license conversion policies. | 2, 46 |