UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/25/19

---

THE BANK OF TOKYO-MITSUBISHI UFJ, LTD.,

          Plaintiff,

v.

MARIA VULLO, in her official capacity as Superintendent Financial Services of the New York State Department of Financial Services,

          Defendant.

1:17-cv-08691-SHS

## STIPULATION AND [PROPOSED] ORDER OF DISMISSAL

WHEREAS, on November 8, 2017, Plaintiff The Bank of Tokyo-Mitsubishi UFJ, Ltd., n/k/a/ MUFG Bank, Ltd. ("Plaintiff"), filed the above-captioned action (the "Action") against Defendant Maria Vullo, in her official capacity as Superintendent of Financial Services of the New York State Department of Financial Services ("Defendant");

WHEREAS, on December 6, 2017, Plaintiff filed an amended complaint in the Action (the "Amended Complaint");

WHEREAS, on January 31, 2018, Defendant filed an answer to the Amended Complaint and asserted counterclaims against Plaintiff (the "Counterclaims");

WHEREAS, on March 19, 2018, Plaintiff filed a motion to dismiss the Counterclaims for failure to state a claim upon which relief can be granted, which is currently pending; and

WHEREAS, after engaging in arm's-length negotiations, the Parties have agreed to settle, compromise, and resolve all disputes between them;

**NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED** by and between the Parties hereto, through their respective counsel, and subject to the Order of the Court, as follows:

1. Plaintiff stipulates to the dismissal of the Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).

2. Defendant stipulates to the dismissal of the Counterclaims with prejudice pursuant to Federal Rule of Civil Procedure 41.

3. Plaintiff and Defendant have agreed to dismiss their respective claims with prejudice in reliance on, and subject to the terms of, the Settlement Agreement annexed hereto as Exhibit A, which is incorporated into this Stipulation and [Proposed] Order. The Court shall retain jurisdiction of the Action with respect to Plaintiff and Defendant solely for the purpose of enforcing the terms of the Settlement Agreement. *See Kokkonen* v. *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381-82 (1994).

4. Plaintiff and Defendant shall bear their own costs and attorneys' fees in the Action.

2

STIPULATED AND AGREED TO THIS 24th DAY OF JUNE, 2019.

Richard C. Pepperman II
Beth D. Newton
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
(212) 558-4000
peppermanr@sullcrom.com
newtonb@sullcrom.com

Robert A. Long, Jr.
Henry B. Liu
Jonathan Y. Mincer
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
rlong@cov.com
hliu@cov.com
jmincer@cov.com

*Attorneys for Plaintiff*

LETITIA JAMES
Attorney General of the
State of New York
By: Jonathan D. Conley
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-8108
jonathan.conley@ag.ny.gov

*Attorney for Defendant*

Dated: N.Y., N.Y.
June 25, 2019

So Ordered
Sidney H. Stein
U.S.D.J.

3

Dated: New York, N.Y.
      June \_\_\_\_, 2019

                                      **SO ORDERED.**

                                      _____
                                      Hon. Sidney H. Stein
                                      United States District Judge

**EXHIBIT A**

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into and effective as of June 24, 2019 (the "Effective Date"), by and between MUFG Bank, Ltd., f/k/a The Bank of Tokyo-Mitsubishi UFJ, Ltd. ("MUFG Bank"), on the one hand, and Linda Lacewell, in her official capacity as Acting Superintendent of Financial Services of the New York State Department of Financial Services (the "Acting Superintendent" and, together with the New York State Department of Financial Services, "DFS"), and Letitia James, in her official capacity as New York State Attorney General (the "New York Attorney General" and, together with the Office of the New York State Attorney General, "NYAG"), on the other. MUFG Bank, DFS, and NYAG are referred to individually as a "Party" and collectively as the "Parties."

WHEREAS, on November 7, 2017, the United States Office of the Comptroller of the Currency ("OCC") granted final approval of (i) applications by MUFG Bank to convert its state-licensed branches in New York, Illinois, and California and its state-licensed agency offices in Texas to federally-licensed branches and agency offices; and (ii) an application by Mitsubishi UFJ Trust and Banking Corporation ("MUTB" and, together with MUFG Bank, "MUFG") to convert its state-licensed branch in New York to a federally-licensed branch, and issued federal licenses to MUFG Bank's branches and agency offices in New York, Illinois, California, and Texas and MUTB's branch in New York;

WHEREAS, on November 8, 2017, DFS issued an Order Pursuant to the New York Banking Law and Financial Services Law, captioned *In the Matter of The Bank of Tokyo-Mitsubishi UFJ, Ltd. and The Bank of Tokyo-Mitsubishi UFJ, Ltd., New York Branch* (the "DFS Order"), which, among other things, asserted that MUFG Bank and its two New York branches must submit to DFS's continued supervisory authority "unless and until any such conversion to an OCC license becomes legally effective" and "carry out [their license] conversion in a manner that is in full compliance with the [New York] Banking Law, including Section 605 of the [New York] Banking Law, and all other applicable laws of the State of New York";

WHEREAS, on November 8, 2017, MUFG Bank filed a complaint (the "Complaint") initiating the action captioned *The Bank of Tokyo-Mitsubishi UFJ, Ltd.* v. *Maria Vullo*, No. 1:17-cv-08691, against DFS in the United States District Court for the Southern District of New York (the "Action"), seeking a temporary restraining order and preliminary injunction prohibiting DFS from enforcing the DFS Order and from exercising any visitorial power or other regulatory authority over MUFG Bank's banking operations;

WHEREAS, on December 6, 2017, MUFG Bank filed an amended complaint in the Action (the "Amended Complaint"), asserting additional claims and requesting the following additional relief: (i) a declaratory judgment that the federal licenses of MUFG Bank's New York branches are valid and effective; (ii) a declaratory judgment that federal law preempts DFS's threatened enforcement action against those branches and an injunction prohibiting DFS from bringing such an action; and (iii) a declaratory judgment that federal law preempts the DFS Order and an injunction prohibiting DFS from taking any action under that order;

WHEREAS, on December 7, 2017, MUFG Bank withdrew its request for a temporary restraining order and preliminary injunction based on representations by DFS that it would not seek to exercise any supervisory authority over MUFG Bank's banking operations while the federal licenses issued to MUFG Bank's branches and agencies were in effect;

WHEREAS, DFS denies all allegations, assertions and claims in the Complaint and the Amended Complaint;

WHEREAS, on January 31, 2018, DFS filed an answer to the Amended Complaint (the "Answer") that, among other things, challenged the validity of the federal licenses issued by the OCC to MUFG Bank's New York branches, and also asserted counterclaims against MUFG Bank (the "Counterclaims"), including (i) six claims seeking monetary penalties for alleged violations by MUFG Bank and MUFG Bank's New York branches of provisions of the New York Banking Law for conduct occurring prior to November 7, 2017; and (ii) a claim for a declaratory judgment that DFS has authority to bring an "adjudicatory proceeding" against MUFG Bank and MUFG Bank's New York branches under the New York Banking Law based on conduct that occurred before the OCC issued federal licenses to MUFG Bank's New York branches;

WHEREAS, MUFG Bank denies all allegations, assertions and claims in the Answer and Counterclaims;

WHEREAS, on March 19, 2018, MUFG Bank filed a motion to dismiss the Counterclaims for failure to state a claim upon which relief can be granted (the "Motion to Dismiss"), which is pending before the Court;

WHEREAS, after engaging in arm's-length negotiations to avoid the expense, burden, and uncertainty of litigation or any future controversy between MUFG Bank and DFS, the Parties have agreed to settle, compromise, and resolve the disputes between them on the terms set forth in this Agreement;

NOW THEREFORE, in consideration of the mutual covenants, promises, and payments set forth in this Agreement, the sufficiency of which each Party acknowledges, it is hereby stipulated and agreed by and between the Parties hereto, through their respective counsel, as follows:

1. **Certain Additional Defined Terms.** As used in this Agreement, the following terms shall have the following meanings:

    a. "2013 Consent Order" means the Consent Order Under New York Banking Law § 44 entered into as of June 19, 2013 between MUFG Bank and DFS.

    b. "2014 Consent Order" means the Consent Order Under New York Banking Law §§ 39 and 44 entered into as of November 18, 2014 between MUFG Bank and DFS.

    c. "Conversion" means the conversion of the branches and agency offices of MUFG from state-licensed branches and agency offices in New York, Illinois, California,

and Texas to federally-licensed branches and agency offices, as approved by the OCC on November 7, 2017.

d. "Court" means the United States District Court for the Southern District of New York.

e. "DFS Released Parties" means DFS and its respective present, former, or future predecessors, successors, and divisions, and any and all of their present, former, or future Superintendents, officers, employees, managers, principals, agents, attorneys, heirs, servants, representatives, and assigns.

f. "MUFG Released Parties" means MUFG and any past, present, or future parent, subsidiary, or affiliate of MUFG, including without limitation Mitsubishi UFJ Financial Group, Inc. and its subsidiaries, together with their respective present, former, or future predecessors, successors, and divisions, and any and all of their present, former, or future officers, directors, employees, managers, principals, agents, attorneys, heirs, servants, representatives, and assigns.

g. "NYAG Released Parties" means NYAG and its present, former, or future predecessors, successors, and divisions, and any and all of their present, former, or future Attorneys General, officers, employees, managers, principals, agents, attorneys, heirs, servants, representatives, and assigns.

h. "Released Conduct" means any and all conduct or alleged conduct by the MUFG Released Parties committed on or before the date of this Agreement, relating in any way to the compliance of the MUFG Released Parties with New York banking laws and regulations, including, but not limited to, the New York Banking Law, the New York Financial Services Law, and all DFS regulations. Released Conduct includes, but is not limited to, (i) the conduct alleged in the Counterclaims and the conduct referenced in either the 2013 Consent Order or the 2014 Consent Order and (ii) any conduct committed on or before the date of this Agreement that is similar to any conduct referenced in (i).

i. "Released Parties" means the DFS Released Parties, the MUFG Released Parties, and the NYAG Released Parties.

2. **Settlement Payment**. In consideration of the mutual promises and agreements in this Agreement and the mutual releases and covenants not to sue contained herein, MUFG Bank shall pay or cause to be paid to the New York State Treasury the sum of $33 million U.S. dollars (the "Settlement Payment") within three (3) business days of the Effective Date of this Agreement. Payment of the Settlement Payment shall be made by wire transfer via the following wire instructions:

-3-

| NAME OF BANK: | JPMorgan Chase Bank, N.A. |
| --- | --- |
| BANK ABA NO.: | 021000021 |
| ACCOUNT NAME: | NYS Department of Financial Services - Banking Division |
| SWIFT CODE: | CHASUS33 |
| ACCOUNT NO. | 573801703 |

3. **Releases**.

   a. DFS, on behalf of itself, its predecessors and successors, and any and all present, former, or future Superintendents, principals, agents, managers, employees, officers, attorneys, heirs, assigns, servants, and other representatives, shall and hereby does irrevocably, unconditionally, and forever fully waive, release, and discharge the MUFG Released Parties to the fullest extent permitted by law from any and all claims, causes of action, proceedings, rights, demands, liabilities, penalties, violations, and/or obligations, of any type or nature whatsoever, whether known or unknown, asserted or unasserted, anticipated or unanticipated, suspected or unsuspected, concealed or unconcealed, foreseen or unforeseen, fixed or contingent, matured or unmatured, accrued or unaccrued, or liquidated or unliquidated, that DFS now has, ever had, could have had, or hereafter may have, based in whole or in part upon, arising out of, involving, concerning, or related directly or indirectly to Released Conduct and/or the Conversion (collectively, the "DFS Released Claims"). For the avoidance of doubt and for illustrative purposes only, the DFS Released Claims include, but are not limited to, (i) any claim related to the allegations in the Counterclaims involving conduct committed on or before the date of this Agreement, (ii) any claim involving conduct committed on or before the date of this Agreement related to the 2013 Consent Order, the 2014 Consent Order and/or the DFS Order, (iii) any claim alleging that MUFG violated any provision of the New York Banking Law or the New York Financial Services Law, or any DFS regulation, involving conduct committed on or before the date of this Agreement, (iv) any claim, whether or not asserted directly against the MUFG Released Parties, alleging under any source of law (including the federal Administrative Procedure Act) that the federal licenses of MUFG's branches and agencies are in any way invalid or ineffective, and/or (v) any claim, whether or not asserted directly against the MUFG Released Parties, alleging under any source of law (including the federal Administrative Procedure Act) that the Conversion was in any way unlawful, invalid or improper. For further avoidance of doubt, DFS releases and discharges MUFG Bank of any further obligations under the 2013 Consent Order, the 2014 Consent Order, or the DFS Order, and will not attempt to exercise any visitorial power or other supervisory, regulatory, or enforcement authority over MUFG or its branches or agencies. For further avoidance of doubt, the release set forth in this paragraph applies to the assertion of claims under any source of law in any forum, including, but not limited to, state or federal court proceedings, administrative or other adjudicatory proceedings, or administrative actions, fees or assessments.

b. NYAG, on behalf of itself, its predecessors and successors, and any and all present, former, or future Attorneys General, principals, agents, managers, employees, officers, attorneys, heirs, assigns, servants, and other representatives, shall and hereby does irrevocably, unconditionally, and forever fully waive, release, and discharge the MUFG Released Parties to the fullest extent permitted by law from (i) any claim related to the allegations in the Counterclaims involving conduct committed on or before November 7, 2017 and arising under New York Banking Law, New York Financial Services Law, or any DFS regulation, and/or (ii) any claim, whether or not asserted directly against the MUFG Released Parties, alleging under any source of law (including the federal Administrative Procedure Act) that the federal licenses of MUFG's branches and agencies are in any way invalid or ineffective and/or that the Conversion was in any way unlawful, invalid or improper (collectively, the "NYAG Released Claims").

c. MUFG Bank, on behalf of itself, its predecessors and successors, and any and all present, former, or future principals, agents, managers, directors, employees, officers, attorneys, heirs, assigns, servants, and other representatives, shall and hereby does irrevocably, unconditionally, and forever fully waive, release, and discharge the DFS Released Parties and the NYAG Released Parties to the fullest extent permitted by law from any and all claims, causes of action, proceedings, rights, demands, liabilities, penalties, violations, and/or obligations, of any type or nature whatsoever, whether known or unknown, asserted or unasserted, anticipated or unanticipated, suspected or unsuspected, concealed or unconcealed, foreseen or unforeseen, fixed or contingent, matured or unmatured, accrued or unaccrued, or liquidated or unliquidated, that MUFG Bank now has, ever had, could have had, or hereafter may have, based in whole or in part upon, arising out of, involving, concerning, or related directly or indirectly to DFS's (i) attempts to exercise visitorial power or other supervisory, regulatory, or enforcement authority over the New York branches of MUFG Bank involving conduct committed on or before the date of this Agreement; and/or (ii) challenge to the Conversion (collectively, the "MUFG Bank Released Claims" and, together with the DFS Released Claims and the NYAG Released Claims, the "Released Claims"). For the avoidance of doubt, the release set forth in this paragraph applies to the assertion of claims under any source of law in any forum, including, but not limited to, state or federal court proceedings, administrative or other adjudicatory proceedings, or administrative actions, fees or assessments.

d. Each of the Released Claims is given as consideration for, and in reliance on, the validity and effectiveness of the other Released Claims. Accordingly, the MUFG Bank Released Claims shall be deemed valid and effective only to the extent and in circumstances that the DFS Released Claims and NYAG Released Claims are deemed valid and effective. Likewise, the DFS Released Claims and NYAG Released Claims shall be deemed valid and effective only to the extent and in circumstances that the MUFG Bank Released Claims are deemed valid and effective.

e. Notwithstanding anything to the contrary herein, nothing in subsections (a), (b), or (c) above shall release a Party hereto from its obligation to perform the terms, conditions, covenants, and promises of this Agreement, or from any claim, loss, cause of action, cost, expense, attorney's fees, damages, or liability that arises out of the breach at any time of any obligation imposed by this Agreement upon such Party.

f. The term "unknown" referred to in subsections (a) and (c) above includes claims that a Party does not foresee, know or suspect to exist in its favor. MUFG Bank and DFS fully understand that facts relating to any matter covered by this Agreement might be found hereafter to be other than or different from the facts now believed by it to be true, which, if known at the time of executing this Agreement, may have materially affected the settlement and release contemplated herein. MUFG Bank and DFS, in intending to fully and finally resolve, settle and release all matters discussed herein, expressly accept and assume the risk of such possible differences in fact, waive any and all rights, demands, liabilities, or claims that might arise as a result of such different or additional claims or facts, and agree that this Agreement, including the releases in this Agreement, will nevertheless remain in effect. MUFG Bank and DFS expressly waive, with respect to the releases set forth in this Agreement, any rights, benefits, and protections afforded by California Civil Code Section 1542, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

MUFG Bank and DFS further knowingly and intentionally waive the benefits or protections of any statute, common law, or other doctrines of similar effect to California Civil Code Section 1542 under the law of any state or other jurisdiction.

g. For the avoidance of doubt, nothing in this Agreement or the Stipulation and (Proposed) Order of Dismissal described in Section 5 below shall compromise or limit MUFG Bank's right and ability to defend itself on any federal or state ground in the event of any future attempt by DFS, NYAG, or any other instrumentality of the State of New York to (i) exercise any visitorial power or other supervisory, regulatory, or enforcement authority over MUFG Bank or its branches and agencies, (ii) challenge the validity or effectiveness of the federal licenses issued by the OCC to MUFG Bank's branches and agencies, or (iii) bring any other claim against MUFG Bank or its branches and agencies that is barred by this Agreement. Nor shall anything in this Agreement or the Stipulation and (Proposed) Order of Dismissal described in Section 5 below compromise or limit DFS's or NYAG's right and ability to defend themselves on any federal or state ground in the event of

any future attempt by MUFG Bank or its branches and agencies to bring any claim against DFS, NYAG, or any other instrumentality of the State of New York that is barred by this Agreement. Nor shall anything in this Agreement or the Stipulation and (Proposed) Order of Dismissal described in Section 5 below compromise or limit NYAG's ability to enforce New York law against the MUFG Released Parties for any conduct occurring after November 7, 2017.

4. **Covenants**. In furtherance of and in addition to the Releases in Section 3 above, and in each case in exchange for the consideration set forth in this Agreement, the Parties agree that they shall be and hereby are forever barred and enjoined from commencing, instituting, or prosecuting any action or other proceeding, in any forum, asserting any of the following claims, as applicable:

   a. DFS covenants to the MUFG Released Parties not to initiate or prosecute any action, lawsuit, administrative or other adjudicatory proceeding, arbitration, mediation, or claim in any forum relating to any DFS Released Claim. DFS further covenants to the MUFG Released Parties not to attempt to exercise visitorial powers or other supervisory, regulatory, or enforcement authority over MUFG or its branches or agencies.

   b. NYAG covenants to the MUFG Released Parties not to initiate or prosecute any action, lawsuit, administrative or other adjudicatory proceeding, arbitration, mediation, or claim in any forum (1) challenging MUFG's federal licenses or alleging the Conversion was unlawful, invalid, or improper, or (2) against any MUFG Released Party (including, for the avoidance of doubt, MUTB) relating to any other NYAG Released Claim.

   c. MUFG Bank covenants to the DFS Released Parties and the NYAG Released Parties not to initiate or prosecute any action, lawsuit, arbitration, mediation, or claim in any forum relating to any MUFG Bank Released Claim.

   d. The covenants contained in this Section 4 shall survive this Agreement indefinitely, regardless of any statute of limitations or other time bar.

5. **Dismissal of Claims in the Action**. Within three (3) business days after the Effective Date of this Agreement, MUFG Bank and DFS shall cause to be filed with the Court a Stipulation and (Proposed) Order of Dismissal, substantially in the form of Exhibit A hereto, dismissing all claims asserted in both the Amended Complaint and the Counterclaims. Each of MUFG Bank and DFS will bear its own attorney's fees, costs, and other expenses in connection with the Action.

6. **No Admission**. Each Party denies any claim of wrongdoing by the other Parties, and DFS and NYAG do not admit that the federal licenses of MUFG's branches and agencies are valid and effective or that the Conversion was valid, lawful and proper. The Parties further agree that this Agreement and all negotiations, statements, and proceedings in connection herewith (i) shall not be construed or deemed to be evidence of an admission or concession on the part of any Party, or any other person or entity, of any liability, negligence, fault or

wrongdoing, and shall not be offered or received in evidence in any action or proceeding (except in connection with enforcing this Agreement), or be used or referred to in any way as an admission, concession, or evidence of any liability or wrongdoing of any nature or of the validity of any Released Claims; and (ii) shall not be construed or referred to as, or deemed to be evidence of, an admission or concession that any Party or any other person or entity has or has not suffered any damage or that any Party bears any responsibility for any alleged damages, penalties, fines, or forfeitures, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal or that any Party has acquiesced in or conceded the allegations, assertions, or arguments of another Party.

7. **Representations and Warranties.**

    a. Each Party represents and warrants that the person executing this Agreement on its behalf is authorized to do so. In particular, the Acting Superintendent represents and warrants that she has the authority to release and discharge the DFS Released Claims, and the New York Attorney General represents and warrants that she has the authority to release and discharge the NYAG Released Claims.

    b. Each Party represents and warrants that (i) it has an interest in and ownership of the claims that it is releasing sufficient to grant the releases of those claims contemplated hereby, (ii) it has received adequate consideration for the promises, releases, and covenants not to sue contained in this Agreement, and (iii) it has not assigned the claims, issues, causes of action, or other matters alleged or released and discharged by this Agreement.

8. **Expenses and Fees.** Each Party will pay and be solely responsible for all of the fees, expenses, costs, and disbursements of it and its respective agents, representatives, and counsel that have arisen, that could have arisen or that may arise in connection with the Action, including related to the settlement contemplated herein.

9. **Breach.** The Parties acknowledge and agree that (i) any breach of this Agreement will result in immediate and irreparable injury for which there is no adequate remedy available at law; and (ii) in addition to any other remedies available, specific performance and injunctive relief are appropriate remedies to compel performance of this Agreement.

10. **Notice and communications.** Any notice or other communication regarding this Agreement shall be provided by Federal Express and electronic mail to the designees of the Parties specified below. A courtesy copy of any such communication shall also be provided to the Parties' designated counsel.

    a. On behalf of MUFG Bank:

        i. Jennifer L. Heil
           Associate General Counsel – Managing Director
           MUFG Americas Legal Department
           1251 Avenue of the Americas

-8-

        New York, New York 10020

    ii. Courtesy copy to:

        Richard C. Pepperman II
        Sullivan & Cromwell LLP
        125 Broad Street
        New York, New York 10004

b. On behalf of DFS:

    i. Nathaniel J. Dorfman,
       General Counsel & Deputy Superintendent
       New York State Department of Financial Services
       One State Street,
       New York, New York 10004

c. On behalf of NYAG:

    i. Christopher D'Angelo
       Chief Deputy Attorney General for Economic Justice
       New York Attorney General's Office
       28 Liberty Street
       New York, New York 10005

11. **Defense.** This Agreement may be pleaded as a complete defense to any subsequent action or other proceeding arising out of, relating to, or having anything to do with, any and all of the claims, counterclaims, judgments, issues, defenses, or other matters alleged or specifically released and discharged by this Agreement, except as otherwise provided herein.

12. **Entire Agreement; Benefit.** This Agreement constitutes the entire agreement of the Parties with regard to the matters set forth herein. Subject to the provisions of this Section 12, this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns. The Parties acknowledge and agree that MUTB and any Released Parties that are not Parties to this Agreement are express third-party beneficiaries of the releases contained in Section 3 of this Agreement (as applicable), and/or the covenants contained in Section 4 of this Agreement (as applicable), and are entitled to enforce rights under such sections to the same extent that such persons and entities could enforce such rights if they were Parties to this Agreement. Except as set forth in this Section 12, the Parties agree that this Agreement is not intended to, and does not, confer rights upon any other third party.

13. **Jointly Prepared; Interpretation.** This Agreement shall not be construed against the Party preparing it, but rather shall be construed as if the Parties jointly prepared the Agreement, and any ambiguity shall not be interpreted against any one Party. The

bold-faced paragraph captions in this Agreement are for convenience only and do not add to, detract from, or change the substantive language or terms of this Agreement. Except for specifically defined terms contained therein, the Whereas Clauses are not intended to limit the scope of the Releases in Section 3 or the Covenants in Section 4.

14. **No Oral Modification.** This Agreement cannot be changed, modified, or terminated except in a writing signed by the Parties hereto.

15. **Choice of Law.** This Agreement shall be governed by and construed in accordance with federal law to the extent applicable, and otherwise the laws of the State of New York, without regard to conflicts-of-law principles.

16. **Submission to Jurisdiction.** MUFG Bank and DFS irrevocably and unconditionally submit to the exclusive jurisdiction of, and laying of venue in, the United States District Court for the Southern District of New York ("SDNY") for the purposes of any suit, action, or other proceeding arising out of this Agreement. In particular, MUFG Bank and DFS submit to the exclusive jurisdiction of the Honorable Sidney H. Stein (SDNY) to resolve any dispute arising out of this Agreement.

17. **Severability.** Subject to Section 3.d above, if any provision of this Agreement is held to be invalid, illegal, or unenforceable, the validity, legality, or enforceability of the remaining provisions shall in no way be affected or impaired thereby.

18. **Counterparts; Electronic Signatures.** This Agreement may be executed in any number of actual, telecopied, or electronically mailed counterparts and by each of the different Parties on several counterparts, each of which when so executed and delivered will be an original. The executed signature page(s) from each actual, telecopied, or electronically mailed counterpart may be joined together and will constitute one and the same attachment.

19. **Acts Necessary to Effectuate Agreement.** Each Party agrees to perform such further acts and to execute and to deliver such further documents as may reasonably be necessary to carry out this Agreement.

20. **No Assignment.** Neither this Agreement nor any right, interest, or obligation hereunder may be assigned by any Party hereto without the prior written consent of the other Parties hereto, and any attempt to do so will be void, except for assignments and transfers effectuated by operation of law.

*[Signature pages follow]*

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by themselves or their duly authorized representatives as of the date hereof.

MUFG Bank, Ltd.

By: *(signed)*
Title: Stephen E. Cummings
Regional Executive for the Americas

New York State Department of Financial Services

By:
Title:

New York State Office of the Attorney General

By:
Title:

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by themselves or their duly authorized representatives as of the date hereof.

                MUFG Bank, Ltd.

By:       Stephen E. Cummings
Title:    Regional Executive for the Americas

New York State Department of Financial Services

*/s/ Linda A. Lacewell*

By: Linda A. Lacewell
Title: Superintendent

New York State Office of the Attorney General

By:
Title:

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by themselves or their duly authorized representatives as of the date hereof.

MUFG Bank, Ltd.

By: Stephen E. Cummings
Title: Regional Executive for the Americas

New York State Department of Financial Services

By:
Title:

New York State Office of the Attorney General

By: Christopher D'Angelo
Title: Chief Deputy Attorney General for Economic Justice